ACCEPTED
15-25-00016-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/13/2025 11:51 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00016-CV

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/13/2025 11:51:40 AM
CHRISTOPHER A. PRINE
Clerk

IN RE MARTY BERRY AND AXIS MIDSTREAM HOLDINGS, LLC,
*Relators.*

Original Proceeding from Cause No. 24-BC11A-0025
In the Business Court of Texas, Eleventh Division

REAL PARTY IN INTEREST A. LAWRENCE BERRY'S
RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RELIEF

Barrett H. Reasoner
Texas Bar No. 16641980
Michael R. Absmeier
Texas Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
Conor P. McEvily
Texas Bar No. 24078970
cmcevily@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana St., Suite 5300
Houston, Texas 77002
Tel.: (713) 751-5214

*Counsel for Real Party In Interest*
*A. Lawrence Berry*

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Real Party in Interest A. Lawrence Berry ("Lawrence") files this response to Relators' Emergency Motion for Temporary Relief. Relators' motion should be denied.

## INTRODUCTION

Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied") filed the underlying proceeding in Harris County on October 31, 2024. *See* Relators' Appendix 24 ("R. Appx."). Powers and Allied sought temporary injunctive relief and asserted claims against Relators and Lawrence relating to two contracts: an Investment Agreement and a Compensation Agreement. *Id.* Lawrence removed the case to the Texas Business Court on November 15, 2024.

The parties are now in the midst of a temporary injunction hearing ("TI Hearing") that was originally set in December and has been scheduled since early January. The Business Court has already heard two days of live testimony, on January 29th and 30th. By agreement of the parties, the continuation of that TI Hearing is set for Friday, February 14th. Relators' motion is a last-minute attempt to delay the

completion of the hearing with a supposed "emergency" of its own making.

The Business Court has already considered and twice rejected Relators' "dominant jurisdiction" arguments after multiple rounds of briefing, a lengthy oral hearing, and an additional round of briefing at the Business Court's request. *See* R. Appx. 36; Supplemental Appendix 15 ("Supp. Appx."). Similarly, the Nueces Court has rejected Relators' after-the-fact attempts to inject the issues in this case into an unrelated Nueces County case, noting that "*Harris County is the venue for that dispute.*"[1] *See* R. Appx. 38, at 51:14-52:4; *see also* R. Appx. 39. Put simply, there is no risk of inconsistent rulings, let alone one substantial enough to constitute an "emergency." The motion should be denied.

## BACKGROUND

It is critical to note that the supposed "emergency" behind Relators' last-minute request for relief was manufactured ***by Relators***. Since December, Relators have tried to create the "interrelatedness" they now say warrants mandamus relief; but they waited until February 11, 2025—three days before the resumption of the TI Hearing—to file their

---

[1] Unless otherwise indicated, all emphasis here is added.

petition and Rule 52.10 motion. Relators should not be allowed to create their own "emergency" then use it to demand immediate relief.

## A. Axis and the LSP Project

Around 2018, Lawrence conceived the idea to create a state-of-the-art crude oil delivery facility near Corpus Christi called Lone Star Ports ("LSP Project"). Lawrence's brothers, Marty and Dennis Berry[2] partnered with him. In October 2018, the Berry brothers engaged Powers to structure and secure financing for the LSP Project. In May 2019, Lawrence, Marty, Dennis, and Powers signed an Investment Agreement that purportedly (1) grants Powers a 20% ownership interest in the overall LSP Project and (2) vests Allied Ports with management rights related to the LSP Project. *See* Supp. Appx. 1. Of the several entities formed related to the LSP Project, Axis Midstream Holdings, LLC ("Axis") holds intangible property of the LSP Project, including the permitting rights associated with Project's development. *See* R. Appx. 54.

---

[2] For ease of reference, the Berry parties are referred to by their first names.

4

**B.    Origins of the Unrelated Nueces County Lawsuit**

On November 27, 2023—a year before the underlying dispute arose—Lawrence filed a different, unrelated lawsuit, directly and derivatively on behalf of Becon, Inc.; LDMA Limited Partnership; and Berry GP, Inc.—against Marty, Mike Hummell and three Berry Entities[3] (as nominal defendants) complaining of various breaches of fiduciary duties and self-dealing transactions related to those three Berry Entities and seeking injunctive relief against those defendants. *See generally* Supp. Appx. 2 (the "Nueces County Lawsuit"). In the Nueces County Lawsuit, Lawrence alleges that:

- Marty, with the assistance of other management, falsified corporate records, providing third parties with purported resolutions showing unanimous board approval for actions, despite failing to ever fully disclose the transactions to or obtain consent from the board of directors, *see id.* ¶¶ 54-55;

- Marty, with the assistance of other management, colluded in secret to authorize $75 million in undisclosed and unauthorized self-

---

[3] Berry GP, Inc. ("Berry GP"); Berry Operating Company LLC; and Berry Contracting LP are defined in the Nueces County Lawsuit as the "Berry Entities." *See* Supp. Appx. 2 ¶ 1. The other Berry entities tangentially at issue in the Nueces County Lawsuit are LDMA Limited Partnership and Becon, Inc. (the parent companies of Berry GP). *See id.* ¶¶ 25-27. The Berry Entities operate a large organization of companies engaged in the construction, fabrication, and maintenance contracting industries throughout the United States. At the time the Nueces County Lawsuit was filed, the Berry Entities were owned in equal shares by Lawrence, Marty, and Dennis.

dealing loans between Berry GP and Marty and Dennis, *see id.* ¶¶ 37-41;

- Marty, with the assistance of other management, has been secretly usurping Berry GP corporate opportunities and engaging in self-dealing through a personally owned business, all without disclosure to or consent of the board, *see id.* ¶¶ 3, 72, 117; and

- Marty and the other defendants, in violation of the Berry GP bylaws, secretly attempted to sell a valuable Berry GP dock facility (unrelated to Axis or the LSP Project) without notice to or approval of the board of directors, *see id.* ¶¶ 3, 104.

In short, the Nueces County Lawsuit is purely an internal governance dispute between two owners of Berry GP—Lawrence and Marty[4]—regarding breaches of fiduciary duty, self-dealing, and ultra vires actions related to the management of Berry GP and its subsidiaries.

In the Nueces County Lawsuit, Lawrence does not assert claims against Powers or Allied Ports, who were not involved with the internal, self-dealing corporate transactions at issue. Nor does Lawrence assert claims related to the LSP Project. Indeed, Powers, Allied Ports, Axis, the LSP Project, and Powers' Agreements regarding the LSP Project are not mentioned anywhere in Lawrence's Petition. *See id.*

---

[4] Dennis Berry passed away in February 2024. His 1/3 ownership interest in Berry GP passed to his wife, Bonnie Berry ("Bonnie"). Neither Dennis nor Bonnie have ever been parties to the Nueces County Lawsuit.

6

On January 23, 2024, Marty and the three named Berry Entities counterclaimed against Lawrence. *See* R. Appx. 6 ("Counter-Petition"). They alleged mismanagement and conversion of funds regarding a series of Lawrence's companies referred to as "Orca." *See id.* ¶¶ 14-20. Orca is entirely unrelated to Axis or the LSP Project. Again, Powers, Allied Ports, Axis, the LSP Project, and Powers' Agreements regarding the LSP Project were not mentioned anywhere in this Counter-Petition. *See id.*

In early 2024, the Nueces County Court held a three-day hearing addressing whether the Defendants in that suit should be enjoined from (1) removing Lawrence from the Berry Entities' Board, and (2) selling real property wholly owned by the Berry Entities without first giving two weeks written notice of the proposed sale to the Board, consistent with the Berry Entities' operating agreements.[5] *See* Supp. Appx. 3, at 17:7-18:9; *see also* R. Appx. 56 ¶ 134. In the hundreds of pages of testimony and other evidence admitted over three days, Powers, Allied Ports, Axis, and Powers' Agreements regarding the LSP Project *were not even*

---

[5] Specifically, Lawrence put on evidence regarding Marty's attempts to sell a valuable Berry GP dock facility without disclosure to or approval by the Berry GP board of directors. *See* Supp. Appx. 3, at 88:13-91:21. It is undisputed that the dock facility at issue in the Nueces County Lawsuit has nothing to do with the LSP Project.

7

*mentioned.* And the LSP Project itself was mentioned only once in passing, in response to a background question regarding what Lawrence's assistant, Tonja Fulghum, was currently working on. *See* Supp. Appx. 4, at 268:1-2. Notably, under cross examination, Defendants never asked a single follow-up question regarding the LSP Project.

The Nueces County Court ultimately granted Lawrence's injunctive relief in part, enjoining Defendants from selling any of the Berry Entities' real property without 48-hours' notice to the Berry Entities' Board. *See* R. Appx. 7. This relief was limited only to the sale of the Berry Entities' real property and was targeted at the valuable Berry GP dock facility that Defendants had secretly tried to sell. This relief, like the entire case, had absolutely nothing to do with Axis (which is not a party to the Nueces County Lawsuit) or the LSP Project.

## C.     The Harris County Lawsuit Is Filed

On October 31, 2024, Powers and Allied Ports filed their Original Petition and Motion for a Temporary Restraining Order and Temporary Injunction against Axis, Lawrence, Marty, and Bonnie in the 215th District Court of Harris County, Texas, Cause No. 2024-76060 (the "Harris County Lawsuit"). *See* R. Appx. 24. Powers and Allied Ports filed

this suit after learning that Marty and Bonnie improperly attempted to call a meeting of Axis. *See id.* ¶ 22. Powers and Allied Ports secured a temporary restraining order on the same day and subsequently amended their petition and request for a temporary injunction, with the latest amendment on November 27, 2024. *See* R. Appx. 52.

The Harris County Lawsuit centers on two contracts that allegedly grant Powers partial ownership and certain control rights over Axis and the LSP Project. Powers and Allied Ports allege that Lawrence, Marty, and Bonnie each breached Powers' Investment Agreement and Consulting Agreement related to the LSP Project; they also allege that Marty and Bonnie tried to divest Powers and Allied Ports of their claimed 20% ownership interest in the LSP Project. *Id.* ¶¶ 25-31. Powers' Investment and Consulting Agreements both include mandatory forum-selection clauses, under which Powers, Lawrence, Marty, and Dennis agreed to the exclusive jurisdiction of Harris County for any dispute relating to Powers' ownership and management interests in Axis and the LSP Project. *See* Supp. Appx. 1. Those clauses each provide:

> Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether

9

in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding . . . Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts . . . and waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court . . .

*Id.* at 4.

## D. The Harris County Lawsuit Is Removed to the Business Court Whose Jurisdiction is Challenged

On November 8, 2024, Marty and Bonnie filed a Motion to Transfer Venue ("Motion to Transfer") and a Plea in Abatement/Motion to Abate ("Motion to Abate") in the Harris County Lawsuit. *See* R. Appx. 26; Supp. Appx. 5. After a short hearing on November 12, 2024—which did not delve into the merits of any pending motions or the merits of Powers and Allied Ports' claims—the 215th District Court extended the temporary restraining order in the Harris County Lawsuit to November 28, 2024. *See* Supp. Appx. 6. Lawrence removed the Harris County Lawsuit to the 11th Division of the Business Court of Harris County on November 15, 2024. *See* Supp. Appx. 7. Marty and Bonnie then filed a Motion to Remand on November 20, 2024, incorporating most of their arguments

10

from their previously filed Motion to Transfer and Motion to Abate. *See* Supp. Appx. 8.

Marty and Bonnie's various motions attacking the Harris County Lawsuit largely boiled down to challenging (1) Harris County as a proper venue for Powers' and Allied Ports' contractual claims regarding Axis and LSP Project ownership and control; and (2) the Business Court's jurisdiction to hear the Harris County Lawsuit, based on an argument that the Nueces County court had dominant jurisdiction over Powers' and Allied Ports' contract claims. *See* R. Appx. 26; Supp. Appx. 5, 8. Powers, Allied Ports, and Lawrence responded to these challenges, arguing that dominant jurisdiction ***cannot*** exist in Nueces County as a matter of law because (1) venue for the Axis and LSP Project-related claims is improper in Nueces County (and was only proper in Harris County); and (2) there was no substantial overlap between the Nueces County Lawsuit (as it existed in November 2024) and the Harris County Lawsuit that would support a finding of dominant jurisdiction. *See* Supp. Appx. 9-11.

## E. The Nueces County Defendants Amend Their Claims to Manufacture "Dominant Jurisdiction"

In a last-ditch effort to manufacture dominant jurisdiction in Nueces County, Marty and the Nueces County Defendants amended

their counterclaims in that suit to include references to Axis and LSP Project ownership. These amendments were made on December 3, 2024, just three days before the hearing on their Motions to Remand, Transfer, and Abate in the Harris County Lawsuit. *See* R. Appx. 29 ("Amended Counter-Petition"). Specifically, the Nueces County Defendants expanded their definition of "Berry Entities" to include RBT, Axis, Lone Star Ports, LLC, and Midway Junction Properties, LLC—all entities related to the LSP Project. *See* Supp. Appx. 12 ¶ 14. Further, the Nueces County Defendants (1) expanded the scope of their breach of fiduciary duty counterclaims against Lawrence to include allegations that Lawrence improperly transferred interests in Axis and the LSP Project to Allied Ports, *see id.* ¶ 29; and (2) added a nebulous claim for declaratory judgment, seeking to invalidate transfers of interest and other contracts related to Axis and the LSP Project, *see id.* ¶ 57. Both of these issues are precisely what is being litigated by Powers and Allied Ports in the Harris County Lawsuit, which was filed over a month before the Nueces County Defendants' Amended Counter-Petition.

**F.    The Business Court Determines Nueces County Does Not Have Dominant Jurisdiction**

After the Nueces County Defendants filed the Amended Counter-Petition, attempting to manufacture a connection between the Nueces County Lawsuit and the Harris County Lawsuit, Marty and Bonnie then repeatedly argued to the Business Court that the two lawsuits were "inherently interrelated." *See, e.g.*, R. Appx. 28. After extensive briefing on the issues of venue and dominant jurisdiction, the Business Court held a lengthy hearing on December 6, 2024. *See* R. Appx. 31. The Business Court then requested additional briefing from the parties on evidentiary issues related to venue, which was submitted on January 9, 2025. *See* R. Appx. 34; Supp. Appx. 13.

On January 17, 2025, the Business Court issued an order in the Harris County Lawsuit, denying Marty and Bonnie's Motions to Abate, Transfer, and Remand. *See* R. Appx. 36. With this order, the Business Court confirmed that venue is proper in Harris County, that it has jurisdiction over the Harris County Lawsuit, and that the Nueces County Court does not have dominant jurisdiction over the Axis and LSP Project-related claims asserted in the Harris County Lawsuit. *Id*. The Business Court also set Powers' and Allied Ports' Application for Injunctive Relief

13

related to Axis and LSP-Project ownership and control for hearing beginning on January 29, 2025. *See* R. Appx. 59. That hearing is still ongoing, with two full days of testimony and evidence presented on January 29th and 30th, and another full day expected on February 14, 2025. *See* R. Appx. 48. As part of that hearing, Powers and Allied Ports are seeking the following injunctive relief, ***which includes any changes to the ownership or management of Axis and the LSP Project***:

> To preserve the status quo and Plaintiffs' rights during the pendency of this action, Plaintiffs respectfully request that the Court grant and enter a temporary injunction precluding Defendants, their employees, agents, representatives, and any others acting on their behalf from taking any of the following actions unless expressly permitted by this Court to do so:
>
> a. ***Holding any meetings or taking any action for or on behalf of Axis*** unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;
>
> b. Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis;
>
> c. ***Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Axis***;
>
> d. ***Changing, altering, or transferring in any way the ownership, management, assets, or tangible or***

*intangible rights held by the entities formed for the Project which is the subject of this lawsuit*;

e. *Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of the entities formed for the Project*; [and]

f. Taking any action that would impact or affect Powers' or Allied Ports, LLC's 20% ownership interest in the Project that is the subject of this lawsuit or in any of the entities formed for the Project.

R. Appx. 52 ¶ 37 (emphasis added).

## G. Defendants Continue to Try to Manufacture Dominant Jurisdiction in Nueces County

On January 21, 2025—just four days after the Business Court issued its order denying the Motions to Abate, Transfer, and Remand the Harris County Lawsuit—Berry GP and RBT ("Movants") filed an Application for Temporary Restraining Order and Temporary Injunction in the Nueces County Lawsuit. *See* R. Appx. 37 ("Application").

In their Application, Movants sought to enjoin Lawrence "and all those acting in concert with him" from "(1) filing any document with the Texas Secretary of State changing, modifying, or altering any information about Axis Midstream Holdings LLC, absent a majority vote of its Manager/Member (Berry GP or RBT); (2) calling for or holding any

15

Members' meetings purportedly on behalf of Axis Midstream Holdings LLC; (3) taking any action (through any person or company, including Lone Star Ports Enterprises LLC) purportedly as Member(s) and/or Manager(s) of Axis Midstream Holdings LLC; and (4) representing or suggesting to others any right of ownership or control of Axis Midstream Holdings LLC, except for Berry GP's (RBT's) 100% ownership and sole control – all such injunctive relief pending further Order from this Court or a final adjudication of the merits." *See id*. at 20-21.

Lawrence filed a Response to the Application on January 24, 2025, noting that Defendants and Movants in the Nueces County Lawsuit were clearly attempting to bring claims that properly belong in the Harris County Lawsuit, in an after-the-fact attempt to manufacture dominant jurisdiction, circumvent the Business Court's January 17, 2025 order, and invite the possibility of conflicting orders. *See* R. Appx. 53.

**H.    The Nueces County Court Confirms, and the Business Court Re-confirms, that Harris County Is the Proper Venue for Axis and LSP Project Claims**

The Nueces County Court heard Movant's Application for TRO on January 24, 2025 and ***denied*** the Application on January 27, 2025. *See*

R. Appx. 39. Critically, during the hearing on Movant's Application, the Nueces County Court remarked:

> I guess, basically, what we have here is this: we have, from [Movants'] side, paperwork being filed all the way through 2024 indicating that Axis was owned 100 percent [by Berry GP]. And then, apparently, there's this deal that was done and it's unclear, I guess, really. It needs to be sorted out in court on this Powers fella—did it actually happen? Is it an actual deal? Did it occur? Is it true that the other brother signed off? I mean, if it's true that they did sign off and that within the agreement they had placed Harris County as the venue as part of the agreement, _**then I guess Harris County is the venue for that dispute. I mean, that's kind of what it looks like to me that's where this whole thing is.**_

R. Appx. 38, at 51:14-52:4 (cleaned up). In other words, the Nueces County Court indicated that Harris County is the proper venue for Powers' and Allied Ports' contractual dispute regarding Axis and LSP Project ownership and control.

That same day, in the Harris County Lawsuit, Marty and Bonnie filed a Motion to Reconsider the Business Court's January 17, 2025, order denying abatement, claiming that their own recent filings in the Nueces County Lawsuit established that the two lawsuits were "unequivocally intertwined/interrelated" such that the Nueces County Court has dominant jurisdiction over issues pertaining to Axis and LSP Project ownership and control. _See_ Supp. Appx. 14. The Business Court denied

17

the Motion to Reconsider on January 28, 2025, the day before the hearing began on Powers' and Allied Ports' injunctive relief. *See* Supp. Appx. 15.[6] With this order denying the Motion to Reconsider, the Business Court reaffirmed its prior January 17, 2025, ruling that the Nueces County Court does not have dominant jurisdiction over Axis and LSP Project claims, and that such claims are properly raised in Harris County. *See id.*; R. Appx. 36.

## ARGUMENT

Relators' Emergency Motion for Temporary Relief should be denied because the Business Court acted within its discretion, and there is no imminent or irreparable risk of inconsistent judgments.

Because a Rule 52.10 motion to stay seeks "a kind of injunction, . . . the familiar considerations governing injunctive relief in other contexts will generally apply." *In re State*, No. 24-0325, 2024 WL 2983176, at *2 (Tex. June 14, 2024). "[T]he likely merits of the parties' respective legal positions are always an important consideration when a court is asked to issue an order determining the parties' legal rights

---

[6] Marty and Bonnie also moved for a stay, *see* Supp. Appx. 14, which the Business Court took under advisement via Order issued on January 28, 2025, *see* Supp. Appx. 16.

pending appeal[,]" so "appellate courts asked to issue temporary relief pending appeal should make a preliminary inquiry into the likely merits of the parties' legal positions." *Id.* at *2-3. Further, "[a]s in the underlying temporary-injunction context, the applicant for a stay pending appeal should be expected to show that he will suffer irreparable harm if relief is not granted." *Id.* at *3.

Relators, for their part, fail to mention, let alone try to meet, the *In re State* standard for Rule 52.10 stays. On this basis alone this Court can and should deny Relators' motion.

## A. Relators Are Unlikely to Succeed on the Merits of Their Petition for Writ of Mandamus

Relators are unlikely to succeed on the merits because the Business Court acted within its sound discretion in rejecting Relators' "dominant jurisdiction" argument. The Business Court's order on Relators' Motion to Abate is reviewed "under the deferential abuse-of-discretion standard." *See In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 293 (Tex. 2016). "A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles." *Id.* at 293-94 (quotations omitted).

The Business Court did not abuse its discretion because the Nueces County Court ***cannot*** have dominant jurisdiction over claims pertaining to Axis and LSP Project ownership and control. It is well settled that for a court to have dominant jurisdiction, "[i]t is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *See Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988). In other words, a court has dominant jurisdiction if it has jurisdiction over all necessary parties and claims; a court lacks dominant jurisdiction if it lacks "persons to be joined if feasible, or the power to bring them before the court." *Id.* at 248; *see also Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (court lacks dominant jurisdiction "if joinder of parties is infeasible or impossible").

Here, Powers and Allied Ports are unquestionably necessary parties for any determination of the proper ownership and control of Axis and the LSP Project; Powers has an agreement signed by Lawrence, Marty, and Dennis purporting to give him a 20% ownership interest in the LSP Project, and purporting to give management rights to Allied Ports. *See* Supp. Appx. 1. But Powers and Allied Ports ***cannot*** be added

20

to the Nueces County Lawsuit, because Powers' Agreements contain mandatory forum selection clauses specifying exclusive jurisdiction in Harris County. *Id.* Thus, since the Nueces County Court does not have the power to bring before it all persons to be joined, it lacks dominant jurisdiction.

## B. Relators Face No Imminent and Irreparable Harm Absent a Stay

There is no imminent risk of irreparable harm to Relators absent a stay, including by the potential for inconsistent judgments. *See, e.g.*, *Abbott v. Harris Cnty.*, 672 S.W.3d 1, 8 (Tex. 2023) ("To obtain a temporary injunction, an applicant must plead and prove three specific elements: . . . (3) a probable, imminent, and irreparable injury in the interim."). As noted above, the Nueces County Court ***refused*** to grant the temporary relief sought by Berry GP and RBT related to Axis and the LSP Project, noting that "if it's true that . . . they had placed Harris County as the venue as part of the [Investment Agreement and Compensation Agreement], then I guess Harris County is the venue for that dispute. I mean, that's kind of what it looks like to me that's where this whole thing is." *See* R. Appx. 38, at 51:14-52:4.

Nor will any potential order from the Business Court granting the injunctive relief sought by Powers and Allied Ports conflict with previous rulings by the Nueces County Court. As noted above, the Nueces County Court only enjoined Defendants in the Nueces County Case from selling any of the **Berry Entities'** real property without at least 48-hours' notice to the **Berry Entities'** Board of Directors. *See* R. Appx. 7. This relief was limited only to the sale of real property owned by the Berry Entities and was targeted at the valuable Berry GP dock facility that the Nueces County Defendants had secretly attempted to sell without notice to Lawrence[7]; this relief had absolutely nothing to do with Axis (which is not a party to the Nueces County Lawsuit) or the LSP Project.

In contrast, the relief sought by Powers and Allied Ports in the Harris County Lawsuit would enjoin Relators, Bonnie, and Lawrence from taking any action to change, alter, or transfer any of the ownership, management, assets, or tangible or intangible rights of Axis and the other LSP Project entities—which are **_not_** wholly owned by the Berry Entities. *See, e.g.*, R. Appx. 52 ¶ 37. Were the Business Court to grant this relief

---

[7] After that relief was granted, Marty and Bonnie passed resolutions purporting to remove Lawrence from the board of directors of Berry GP and its wholly owned subsidiaries.

upon conclusion of the TI Hearing, such an order would not conflict or interfere with the Nueces County Court's March 25, 2024, injunction order. In short, despite Relators' attempt to lead the Business Court and Nueces County Court into conflict, both courts have declined Relators' invitation.

In the absence of a stay pending appeal, all that will happen to Relators is what has been happening since January 29, 2025: the ongoing TI Hearing in the Business Court will continue. Two full days of evidence and testimony have already been presented in the TI Hearing, and nothing has changed since the TI Hearing began on January 29th to warrant the temporary relief Relators now seek. In sum, Relators cannot show that they "will suffer irreparable harm if relief is not granted." *In re State*, 2024 WL 2983176, at *3.

## PRAYER

Relators' Emergency Motion for Temporary Relief should be denied without any delay of the continuation of the scheduled resumption of the TI Hearing. Real Party in Interest Lawrence Berry requests all other relief to which he may be entitled.

23

Dated: February 13, 2025        Respectfully submitted,

/s/ *Barrett H. Reasoner*
Barrett H. Reasoner
Texas Bar No. 16641980
Michael R. Absmeier
Texas Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
Conor P. McEvily
Texas Bar No. 24078970
cmcevily@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana St., Suite 5300
Houston, Texas 77002
Tel.: (713) 751-5214

***Counsel for Real Party In Interest
A. Lawrence Berry***

## Certificate of Service

I certify that on February 13, 2025, a true and correct copy of the foregoing document was served on the following counsel via eFileTexas e-filing system and/or e-mail.

Honorable Sofia Adrogué
Email: BCDivision11A@txcourts.gov
Texas Business Court
Eleventh Division
301 Fannin, 5th Floor
Houston, Texas 77002
***Respondent***

Alistair B. Dawson
M. Jake McClellan
Madeline E. Gay
Mary Kate Raffetto
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
Email: mkraffetto@beckredden.com
**BECK REDDEN**
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
***Counsel for Real Party in Interest Albert Theodore Powers***

Roland Garcia
Steven Higginbotham
E-mail: garciar@gtlaw.com
E-mail: higginbothams@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
***Counsel for Real Party in Interest Allied Ports LLC***

Douglas A. Allison
Email: doug@dallisonlaw.com
**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
Vanessa D. Gilmore
vg@robertsmarkland.com
**ROBERTS MARKLAND LLP**
2555 N. McGregor Way
Houston, Texas 77004
***Counsel for Relators Marty Berry and Axis Midstream Holdings, LLC***

## No. 15-25-00016-CV

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

IN RE MARTY BERRY AND AXIS MIDSTREAM HOLDINGS, LLC,
*Relators.*

Original Proceeding from Cause No. 24-BC11A-0025
In the Business Court of Texas, Eleventh Division

REAL PARTY IN INTEREST
A. LAWRENCE BERRY'S SUPPLEMENTAL APPENDIX

Barrett H. Reasoner
Texas Bar No. 16641980
Michael R. Absmeier
Texas Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
Conor P. McEvily
Texas Bar No. 24078970
cmcevily@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana St., Suite 5300
Houston, Texas 77002
Tel.: (713) 751-5214

*Counsel for Real Party In Interest
A. Lawrence Berry*

1

| Supp. Appx. | Description |
|---|---|
| 1 | Ted Powers' Investment and Compensation Agreements |
| 2 | Plaintiff's Second Amended Petition (filed 10/11/24), Nueces County Lawsuit |
| 3 | Excerpts and PX-11 from 2/16/24 Temporary Injunction Hearing, Nueces County Lawsuit |
| 4 | Excerpts from 3/22/24 Temporary Injunction Hearing, Nueces County Lawsuit |
| 5 | Defendants' Motion to Transfer Venue (filed 11/8/24), Harris County Lawsuit |
| 6 | Unopposed Order Extending Temporary Restraining Order (filed 11/15/24), Harris County Lawsuit |
| 7 | Defendant's Letter to Court Attaching Notice of Removal (filed 11/15/24), Harris County Lawsuit |
| 8 | Movants' Motion to Remand, Dismiss, and/or Transfer Venue (filed 11/20/24), Harris County Lawsuit |
| 9 | Defendant's Response to Motion to Remand, Dismiss, or Transfer Venue (filed 12/3/24), Harris County Lawsuit |
| 10 | Plaintiffs' Response to Motion to Transfer Venue and Motion to Remand/Dismiss/Transfer (filed 12/3/24), Harris County Lawsuit |
| 11 | Plaintiffs' Response to Defendant's Plea in Abatement and Motion to Remand, Dismiss, and/or Transfer (filed 12/3/24), Harris County Lawsuit |
| 12 | Redline Comparing Counter-Plaintiffs' Second Amended Original Petition (filed 12/3/24) with Counter-Plaintiffs' |

| | First Amended Original Petition (filed 4/15/24), Nueces County Lawsuit |
| --- | --- |
| 13 | Moving Parties' Supplemental Brief (filed 1/9/25), Harris County Lawsuit |
| 14 | Defendants' Motion to Reconsider Court's Ruling on Plea in Abatement and Motion to Stay Pending Mandamus (filed 1/28/25), Harris County Lawsuit |
| 15 | Order Denying Motion to Reconsider (filed 1/28/25), Harris County Lawsuit |
| 16 | Order Taking Motion to Stay Pending Mandamus Under Advisement (filed 1/28/25), Harris County Lawsuit |
| 17 | Verification of Bruce Baldree |

# SUPPLEMENTAL APPENDIX 1

# INVESTMENT AGREEMENT

**THIS INVESTMENT AGREEMENT** (the "**Agreement**") is made and entered into as of the 1st day of November, 2018 by and among Marvin Glen Berry, Dennis Wayne Berry, and Allen Lawrence Berry (collectively, the "**Berrys**"), and Albert Theodore Powers ("**Powers**") (each of the Berrys and Powers being referred to herein individually as a "**Party**" and collectively as the "**Parties**").

## RECITALS:

**WHEREAS**, the Berrys have devised a plan to develop, construct, own, and operate a system to allow hydrocarbon shippers maximum optionality to deliver hydrocarbons to local refinery markets in the vicinity of Corpus Christi, Texas and to export hydrocarbons via a premier United States Gulf Coast deep-water exporting facility, including without limitation shipping, reception, collection, consolidation, storage, staging, delivery, and exporting facilities, including a deep-water export terminal on Harbor Island, Texas, related tankage and pipelines, and other associated infrastructure, assets, facilities, and businesses, including without limitation certain real property and improvements currently owned, leased, optioned, or otherwise controlled by the Berrys and others at Redfish Bay, Midway Junction, and Harbor Island, Texas and additional properties and facilities to be acquired, leased, optioned, developed, or otherwise controlled by the Berrys and others (collectively, the "**Project**"); and

**WHEREAS**, simultaneously with this Agreement, the Parties are entering into another Agreement, pursuant to which the Berrys are appointing Powers as their representative and chief negotiator and adviser for the financing of the Project including without limitation negotiations with The Carlyle Group, and to perform due diligence, advice, and assistance regarding the sourcing of capital, develop strategy, and provide financial management and structuring advice and services. It is understood that Powers shall investigate various alternatives for financing all or portions of the Project, discuss with the Berrys various financing alternatives, assist the Berrys in formulating and interpreting financial projections for the Project and various potential transactions relating to the Project, assist the Berrys in formulating strategies to arrange the most favorable forms of financing for the Project, make financing recommendations to the Berrys, assist the Berrys in formulating strategies for achieving the most favorable terms for financing the Project, assist the Berrys in formulating business and holding structures for the Project, and negotiate terms and conditions of financing for the Project on behalf of the Berrys with various potential finance providers, including without limitation The Carlyle Group; and

**WHEREAS**, the Berrys and Powers wish to cooperate to (a) devise an ownership structure for directly and indirectly holding the Project and each of its major components, (b) secure third party financing for the Project, and (c) own and hold a portion of all interests in the Project, upon and subject to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Berrys and Powers hereby agree as follows:

1.    **Creation of Holding Structure and Contribution of Project and Project Interests**.  On or before May 31, 2019 (a) the Berrys and all other owners of interests in the Project and its major components or their respective designees will form one or more corporations, limited liability companies, or other tax efficient limited liability entities (each a "**Project Company**" and, collectively, the "**Project Companies**) to collectively own and hold one hundred percent (100%) of all equity interests in the Project and its major components, (b) the Berrys will transfer to the Project Companies one hundred percent (100%) of their interests in the Project and each of its major components in exchange for one hundred percent (100%) of the equity interests in the Project Companies, (c) the Berrys will form a limited liability company or other tax efficient limited liability entity ("**Holding Company**") to hold all equity interests in the Project Companies, (d) the Berrys will contribute to Holding Company all equity interests in the Project Companies in exchange for one hundred percent (100%) of the equity interests in Holding Company, (e) the Berrys will form a limited liability company or other tax efficient limited liability entity ("**Investment Company**") to hold all equity interests in Holding Company, and (f) the Berrys will contribute to Investment Company all equity interests in Holding Company in exchange for one hundred percent (100%) of the equity interests in Investment Company.

2.    **Investment By Manager in Investment Company**.  Within fifteen (15) days after (a) the Berrys and all other owners of interests in the Project and its major components or their respective designees have formed the Project Companies and transferred one hundred percent (100%) of their interests in the Project and each of its major components to the Project Companies, (b) all equity interests in the Project Companies have been contributed to Holding Company, (c) all equity interests in Holding Company have been contributed to Investment Company, and (d) the Berrys or their designees have received all equity interests in Investment Company (i) Powers will form a  limited liability company or other tax efficient limited liability entity that is wholly owned by, or for the benefit of, Powers or his designees ("**Manager**"), (ii) Powers will contribute Five Thousand United States Dollars (US$5,000.00) to Manager in exchange for one hundred percent (100%) of Manager's operating interests and other ownership rights and interests, and (iii) Manager will contribute Five Thousand United States Dollars ($5,000) to Investment Company in exchange for a twenty percent (20%) overall carried interest and future profits interest in Investment Company after priority distributions to the Berrys or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount. Except for the Five Thousand United States Dollar ($5,000) contribution to Manager and Investment Company described above, none of Manager, Powers, or any of their respective designees shall have any other obligation to contribute any other amounts to Investment Company, Holding Company, or any Project Company.  The governing documents of Investment Company will reflect the respective interests of the Berrys, including their entitlement to priority distributions and preferred returns, and Investment Manager's twenty percent (20%) overall carried interest and future profits interest in Investment Company. Until the Berrys receive a priority return from Investment Company, Holding Company, and/or the Project Companies of Two

2

Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount, all gross amounts received by, or distributions made to, or on behalf of, Investment Company, Holding Company, and the Project Companies, including without limitation all earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, or other receipts of any type or nature, shall be distributed to and paid to or on behalf of the Berrys or their designees and none of such amounts shall be paid or payable to or for the benefit of Manager or its designees. After the Berrys or their designees have received their priority distributions of Two Hundred Fifty Million United States Dollars plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount and Manager has received catch-up distributions from the Investment Company, eighty percent (80%) of all gross amounts received by, or distributions made to, or on behalf of Investment Company, Holding Company, and the Project Companies, including without limitation all earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, or other receipts of any type or nature, shall be distributed to and paid to or on behalf of the Berrys or their designees and twenty percent (20%) of such amounts shall be paid or payable to or for the benefit of Manager or its designees. It is intended that the interests of Manager in Investment Company will qualify (i) as a carried interest within the meaning of Section 1061 of the United States Internal Revenue Code, and (ii) as a future profits interest within the meaning of Revenue Procedure 93-27, and that the governing documents of Investment Company will be drafted to reflect this intent. It is also intended that the capital accounts to be established and maintained by Investment Company will comply with the requirements of Treasury Regulations §1.704-1(b)(2)(iv) or any successor provision, and that such provisions will be interpreted and applied in a manner consistent with such Treasury Regulations or successor provisions and that the targeted allocations to be made to such capital accounts will reflect the Members' interests in the Company and have substantial economic effect. On or before the fifth (5th) day of each month, the Berrys shall provide to Manager a statement setting forth the total amounts of preferred return and priority distributions, if any, that have been received by them from Investment Company, Holding Company, and the Project Companies. Manager shall review each such statement and either confirm its agreement with the amounts shown on such statement or provide an alternative calculation of such amounts. If the Berrys and Manager do not agree on such calculation, they shall meet and attempt to reconcile their differences in the calculation of such amounts before resorting to any other remedy.

3. **Financing of Project**. To finance the development of the Project, it is anticipated that Investment Company will transfer its equity interests in Holding Company and/or one or more Project Companies to one or more other corporations, limited liability companies, or other tax efficient limited liability entities (each, a "**Project Entity**" and. collectively, the "**Project Entities**") that will be jointly owned by Investment Company and other investors that will contribute equity capital for the development of the Project. In exchange for contributing its interests in Holding Company and/or one or more of the Project Companies to such Project Entities, it is anticipated that Investment Company will receive (a) shares, operating interests, or other equity interests in the Project Entities, (b) other rights and interests, including incentive

3

interests, incentive units, or other benefits in or from the Project Entities, and (c) other amounts directly or indirectly received, or distributions made, in respect of the Project Entities, including without limitation earnings, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, and other receipts of any type or nature in respect of or relating to the Project or any Project Company (collectively, "**Project Interests**").

4. **Distributions From Project Entities**. All (a) shares, operating interests, or other equity interests in the Project Entities, (b) other rights and interests, including incentive interests, incentive units, or other benefits in or from the Project Entities, and (c) Project Interests shall be distributed to and held by Investment Company. Distributions shall be made from Investment Company in accordance with the governing documents of Investment Company, which shall reflect the interests of the Berrys, including their entitlement to priority distributions and preferred returns, and the twenty percent (20%) carried interest and future profits interest of Manager.

5. **Miscellaneous Provisions**.

(a) **Governing Law, Jurisdiction, and Venue**. This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas. Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

(b) **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of (i) actual receipt, (ii) the time of personal delivery to the party to be notified, (iii) when sent, if sent by electronic mail during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (iv) five (5) days after

4

having been sent by registered or certified United States Post Office air mail, return receipt requested, postage prepaid, or (v) one (1) business day after deposit with a nationally recognized overnight air courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective Parties at their addresses as set forth in this section or to such addresses as subsequently modified by written notice given in accordance with this section. Each Party to this Agreement agrees to promptly notify the other Parties of any change in its address or electronic mail address, and any failure to do so shall not affect the foregoing.

Mailing and delivery address for Marvin Glen Berry, Dennis Wayne Berry, Allen Lawrence Berry, Bay Ltd, and all Berry entities:

Berry Group
5005 Riverway
Suite 440
Houston, Texas 77056

Email address for Allen Lawrence Berry:
alb@riverway.us

Email address for Marvin Glen Berry:
captberry@aol.com

Email address for Dennis Wayne Berry:
berryd@bayltd.com

Mailing and delivery address for Albert Theodore Powers and Manager:

Albert Theodore Powers
205 West 57th Street
Apartment 4C
New York, New York 10019

Email address for Albert Theodore Powers
atpowers@allied-pacific-group.com

(c)     **Delays or Omissions**. No delay or omission to exercise any right, power, or remedy accruing to any Party under this Agreement, upon any breach or default of any other Party under this Agreement, shall impair any such right, power, or remedy of such non-breaching or non-defaulting Party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any

waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any Party, shall be cumulative and not alternative.

(d)     **Amendment, Waiver, and Termination**. This Agreement may be amended, modified, or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument executed by all Parties. Any amendment, modification, termination, or waiver so effected shall be binding upon the Parties and all of their respective successors and permitted assigns whether or not such Party, successor, assignee, or other individual or entity entered into or approved such amendment, modification, termination, or waiver. No waivers of or exceptions to any term, condition, or provision of this Agreement, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such term, condition, or provision or any other term, condition, or provision.

(e)     **Assignment of Rights**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any individual or entity other than the Parties hereto or their respective successors and permitted assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Any successor or permitted assignee of any of the Berry Interests, including without limitation any prospective transferee who purchases any direct or indirect interest in the Project and/or any inter vivos or testamentary donee or transferee of any such interest, shall deliver to Powers, as a condition to any transfer or assignment, a counterpart signature page hereto pursuant to which such successor or permitted assignee shall confirm his or its agreement to be subject to and bound by all of the provisions set forth in this Agreement that were applicable to the predecessor or assignor of such successor or permitted assignee.

(f)     **Severability**. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision.

(g)     **Titles and Subtitles**. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(h)     **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which

6

together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the United States Federal ESIGN Act of 2000, i.e., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

(i)     **Specific Performance**. In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each Party shall be entitled to specific performance of the agreements and obligations of the other Parties hereunder and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

(j)     **No Partnership**. This Agreement does not create or constitute any partnership, joint venture, or other similar relationship among the Parties, no such relationship shall be implied, and no Party shall make any representation to the contrary.

(k)     **Advice of Counsel**. Each Party hereby acknowledges that he has sought and obtained the advice of legal counsel before entering into this Agreement and has fully read and understands the meaning and import of all terms in this Agreement.

(l)     **Entire Agreement**. This Agreement constitutes and expresses the entire agreement and understanding among the Parties in reference to all matters referred to; all previous discussions, promises, representations, and understandings relative thereto, if any, among the Parties, being herein merged. No modification of this Agreement shall be binding unless in writing and signed by authorized representatives of all Parties.

**IN WITNESS WHEREOF**, the Parties, intending to be bound, have executed this Agreement as of the date first written above.

_____
ALLEN LAWRENCE BERRY

_____
MARVIN GLEN BERRY

7

DENNIS WAYNE BERRY

ALBERT THEODORE POWERS

8

# AGREEMENT

**THIS AGREEMENT** is made and entered into as of the 1st day of November, 2018 by and among Allen Lawrence Berry, Marvin Glen Berry, and Dennis Wayne Berry (collectively, the "**Berrys**"), and Albert Theodore Powers ("**Powers**") (each of the Berrys and Powers being referred to herein individually as a "**Party**" and collectively as the "**Parties**").

## RECITALS:

**WHEREAS**, the Berrys intend to develop, construct, own, and operate a system to allow hydrocarbon shippers maximum optionality to deliver hydrocarbons to local refinery markets in the vicinity of Corpus Christi, Texas and to export hydrocarbons via a premier United States Gulf Coast deep-water exporting facility, including without limitation shipping, reception, collection, consolidation, storage, staging, delivery, and exporting facilities, including a deep-water export terminal on Harbor Island, Texas, related tankage and pipelines, and other associated infrastructure, assets, facilities, and businesses, including without limitation certain real property and improvements currently owned, leased, optioned, or otherwise controlled by the Berrys at Redfish Bay, Midway Junction, and Harbor Island, Texas and additional properties and facilities to be acquired, leased, optioned, developed, or otherwise controlled by the Berrys (collectively, the "**Project**"); and

**WHEREAS**, the Berrys intend to finance the Project through a combination of contributions of cash and tangible and intangible property from their own resources, third party debt financing, government grants and/or subsidies, and equity contributions from outside investors; and

**WHEREAS**, the Berrys have been engaged for several months in discussions with The Carlyle Group regarding the Project and The Carlyle Group potentially providing a substantial equity investment in the Project; and

**WHEREAS**, the Berrys wish to appoint Powers to represent them and to act as their chief negotiator and adviser for the financing of the Project, including without limitation negotiations with The Carlyle Group, and to perform due diligence, advice, and assistance regarding the sourcing of capital, develop strategy, and provide financial management and structuring advice and services, upon and subject to the terms and conditions of this Agreement; and

**WHEREAS**, Powers is willing to represent the Berrys and to act as their chief negotiator and adviser for the financing of the Project, including without limitation negotiations with The Carlyle Group, and to perform due diligence, advice, and assistance regarding the sourcing of capital, develop strategy, and provide financial management and structuring advice and services upon and subject to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Berrys and Powers hereby agree as follows:

1.     **Appointment**. The Berrys hereby appoint Powers as their representative and chief negotiator and adviser for the financing of the Project including without limitation negotiations with The Carlyle Group, and to perform due diligence, advice, and assistance regarding the sourcing of capital, develop strategy, and provide financial management and structuring advice and services. It is understood that Powers shall investigate various alternatives for financing all or portions of the Project, discuss with the Berrys various financing alternatives, assist the Berrys in formulating and interpreting financial projections for the Project and various potential transactions relating to the Project, assist the Berrys in formulating strategies to arrange the most favorable forms of financing for the Project, make financing recommendations to the Berrys, assist the Berrys in formulating strategies for achieving the most favorable terms for financing the Project, assist the Berrys in formulating business and holding structures for the Project, and negotiate terms and conditions of financing for the Project on behalf of the Berrys with various potential finance providers, including without limitation The Carlyle Group. In performing his duties under this Agreement, Powers shall at all times act as agent for the Berrys and shall have no power to conclude any financing arrangement for all or any portion of the Project without the express consent of the Berrys, in their sole discretion.

2.     **Term of Appointment**. The term of Powers's appointment under this Agreement shall commence on the date first set forth above and shall continue until the Project is fully financed or until either the Berrys or Powers terminates this Agreement by providing at least three (3) month's written notice to the other Parties.

3.     **Compensation**. As compensation for his services as representative and chief negotiator for the financing of the Project, the Berrys hereby agree to pay Powers compensation and to reimburse his expenses, as follows:

(a)     **Compensation**. The Berrys shall pay to Powers, Allied Pacific Group Limited, or such other individual or entity designated by Powers from time to time fixed ordinary compensation in the amount of One Hundred Thousand United States Dollars (US$100,000) per month during the term of his appointment under this Agreement ("**Compensation**"). Powers shall provide to the Berrys monthly invoices during the term which shall designate the account or accounts to which payments of Ordinary Compensation shall be made.

(b)     **Expenses**. In addition to Compensation, the Berrys shall promptly reimburse Powers for his actual out-of-pocket expenses incurred in performing his services pursuant to this Agreement, including without limitation travel and transportation expenses. Powers shall provide to the Berrys invoices which shall indicate the expense amounts to be reimbursed and the account or accounts to which reimbursement payments shall be made.

2

(c) **Interest on Late Payments.** All amounts payable under this agreement shall be paid promptly and in cash or by wire transfer to such accounts as shall be designated from time to time by Powers. In the event that any amounts are not paid promptly when due, the Party liable for making such payment shall pay such amounts, plus interest thereon, at the rate of ten percent (10%) per annum on the overdue amount, without prior demand or notice.

(d) **No Offset.** All payments of Compensation, reimbursements, and interest made pursuant to this Agreement shall be made in cash or by wire transfer to such accounts as shall be designated from time to time by Powers, without withholding or offsets of any kind, shall be non-refundable, and shall be free and clear of any and all encumbrances of any type or nature.

4. **Investment Agreement.** In addition to the Compensation and other matters described in this Agreement, the Berrys and Powers are simultaneously with this Agreement entering into another agreement (the "**Investment Agreement**") relating to the investment by Powers or an entity designated by him in one or more limited liability companies or other entities that will hold all of the Berrys' interests in the Project and its major components in exchange for a twenty percent (20%) overall carried interest and profits interest in such limited liability companies or entities after priority distributions to the Berrys of Two Hundred Fifty Million United States Dollars (US$250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount. The ownership of such limited liability companies or other entities and the entitlement to distributions from such limited liability companies or other entities shall be governed by the Investment Agreement and the governing documents of such limited liability companies or other entities.

5. **Miscellaneous Provisions.**

(a) **Governing Law, Jurisdiction, and Venue.** This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas. Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any

3

such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

        **(b)**     **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of (i) actual receipt, (ii) the time of personal delivery to the party to be notified, (iii) when sent, if sent by electronic mail during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (iv) five (5) days after having been sent by registered or certified United States Post Office air mail, return receipt requested, postage prepaid, or (v) one (1) business day after deposit with a nationally recognized overnight air courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective Parties at their addresses as set forth in this section or to such addresses as subsequently modified by written notice given in accordance with this section. Each Party to this Agreement agrees to promptly notify the other Parties of any change in its address or electronic mail address, and any failure to do so shall not affect the foregoing.

        Mailing and delivery address for Allen Lawrence Berry, Marvin Glen Berry, Dennis Wayne Berry, Bay Ltd, and all Berry entities:

> Berry Group
> 5005 Riverway
> Suite 440
> Houston, Texas 77056
>
> Email address for Lawrence Allen Berry:
> alb@riverway.us
>
> Email address for Marvin Glen Berry:
> captberry@aol.com
>
> Email address for Dennis Wayne Berry:
> berryd@bayltd.com

        Mailing and delivery address for Albert Theodore Powers, Allied Pacific Group Limited, and all Powers entities:

4

Albert Theodore Powers
205 West 57th Street
Apartment 4C
New York, New York 10019

Email address for Albert Theodore Powers
atpowers@allied-pacific-group.com

(c)     **Delays or Omissions**. No delay or omission to exercise any right, power, or remedy accruing to any Party under this Agreement, upon any breach or default of any other Party under this Agreement, shall impair any such right, power, or remedy of such non-breaching or non-defaulting Party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any Party, shall be cumulative and not alternative.

(d)     **Amendment, Waiver, and Termination**. This Agreement may be amended, modified, or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument executed by all Parties. Any amendment, modification, termination, or waiver so effected shall be binding upon the Parties and all of their respective successors and permitted assigns whether or not such Party, successor, assignee, or other individual or entity entered into or approved such amendment, modification, termination, or waiver. No waivers of or exceptions to any term, condition, or provision of this Agreement, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such term, condition, or provision or any other term, condition, or provision.

(e)     **Assignment of Rights**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any individual or entity other than the Parties hereto or their respective successors and permitted assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Any successor or permitted assignee of any of the Berrys' interests in the Project, including any prospective transferee who purchases any direct or indirect interest in the Project and/or any inter vivos

5

or testamentary donee or transferee of any such interest, shall deliver to Powers, as a condition to any transfer or assignment, a counterpart signature page hereto pursuant to which such successor or permitted assignee shall confirm his or its agreement to be subject to and bound by all of the provisions set forth in this Agreement that were applicable to the predecessor or assignor of such successor or permitted assignee.

(f) **Severability**. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision.

(g) **Titles and Subtitles**. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(h) **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the United States Federal ESIGN Act of 2000, i.e., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

(i) **Specific Performance**. In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each Party shall be entitled to specific performance of the agreements and obligations of the other Parties hereunder and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

(j) **No Partnership**. This Agreement does not create or constitute any partnership, joint venture, or other similar relationship among the Parties, no such relationship shall be implied, and no Party shall make any representation to the contrary.

(k) **Advice of Counsel**. Each Party hereby acknowledges that he has sought and obtained the advice of legal counsel before entering into this Agreement and has fully read and understands the meaning and import of all terms in this Agreement.

6

(I)     **Entire Agreement**.  This Agreement constitutes and expresses the entire agreement and understanding among the Parties in reference to all matters referred to; all previous discussions, promises, representations, and understandings relative thereto, if any, among the Parties, being herein merged.  No modification of this Agreement shall be binding unless in writing and signed by authorized representatives of all Parties.

**IN WITNESS WHEREOF**, the Parties, intending to be bound, have executed this Agreement as of the date first written above.

_____
ALLEN LAWRENCE BERRY

_____
MARVIN GLEN BERRY

_____
DENNIS WAYNE BERRY

_____
ALBERT THEODORE POWERS

7

# AGENCY APPOINTMENT

**THE UNDERSIGNED LONE STAR PORTS HOLDINGS LLC** hereby appoints Carey P. Locke, Attorney-at-Law, as its agent to sign all documents and take all actions necessary or desirable to complete the purchase of that certain parcel of land in San Patricio County, Texas, as described with greater particularity in Exhibit A attached hereto, on behalf of Lone Star Ports Holdings LLC.

LONE STAR PORTS HOLDINGS LLC

April 17, 2019      By: _____

**Albert Theodore Powers, President**

# CANOPUS HOLDINGS LLC

## CONSENT RESOLUTION

**THE UNDERSIGNED LONE STAR PORTS HOLDINGS LLC,** as the sole Manager and Member of Canopus Holdings LLC, hereby resolves that it authorizes Carey P. Locke, Attorney-at-Law, to sign all documents and take all actions necessary or desirable to complete the purchase of that certain parcel of land in San Patricio County, Texas, as described with greater particularity in Exhibit A attached hereto, on behalf of Lone Star Ports Holdings LLC.

LONE STAR PORTS HOLDINGS LLC

April 17, 2019          By;_____

Albert Theodore Powers, President

# SUPPLEMENTAL APPENDIX 2

CAUSE NO.: 2024DCV-0045-C

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC.; | § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| | § | NUECES COUNTY, TEXAS |
| BERRY GP, INC.; LDMA LIMITED PARTNERSHIP; and BECON, INC.; | § § § | |
| *Nominal Plaintiffs,* | § § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| MARTY BERRY; MICHAEL HUMMELL; BERRY GP, INC.; BERRY OPERATING COMPANY LLC; and BERRY CONTRACTING LP; | § § § § § | 94TH JUDICIAL DISTRICT |
| *Defendants.* | § § § | |

**PLAINTIFF'S SECOND AMENDED PETITION**

TO THE HONORABLE JUDGE OF THIS COURT:

Lawrence Berry ("Lawrence" or "Plaintiff"), in his personal capacity and as Trustee of the Allen Lawrence Berry Trust, directly and derivatively on behalf of Becon, Inc., LDMA Limited Partnership, and Berry GP, Inc. (with Lawrence, "Plaintiffs"), files this Second Amended Petition against Marty Berry ("Marty"), Michael "Mike" Hummell ("Hummell"), Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP (collectively, "Defendants"). Plaintiff asserts claims for breach of fiduciary duty, knowing participation in a breach of fiduciary duty, declaratory judgment, conversion, corporate waste, a demand for an equitable accounting, and a demand for books and records. In support of these claims, Plaintiff respectfully shows as follows:

1

## I.    INTRODUCTION

1.    This action concerns the management and finances of several Texas companies—Berry GP, Inc.; Berry Operating Company LLC; and Berry Contracting LP (collectively, the "Berry Entities")—which are majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis").  In the past several months, it has become apparent that the Berry Entities have been unlawfully usurped, controlled, and mismanaged in secret by Defendants Marty Berry and Mike Hummell, Berry GP, Inc.'s Vice President and General Counsel.

2.    The Berry Entities operate a large organization of companies engaged in the construction, fabrication, and maintenance contracting industries throughout the United States, and have successfully done so since the 1950s.  While the Berry Entities were founded and originally controlled by Lawrence's father, ownership passed to Lawrence and his brothers beginning in the 1990s.

3.    In recent months, Lawrence—an officer, director, and shareholder of the Berry Entities—has come to learn that Marty Berry, with assistance from Mike Hummell and other management personnel, has been mismanaging the Berry Entities' finances such that he imperiled a long-standing line of credit that represented the Berry Entities' primary source of operational funding, causing that line of credit to be placed in default.  Further, Hummell and other management personnel colluded in secret to authorize self-dealing loan agreements from Marty and Dennis—themselves officers, directors, and shareholders of the Berry Entities—to the Berry Entities without notice or consultation with the other officers and directors.  What is more, Marty has been secretly usurping corporate opportunities by buying cranes through a personally owned company, and then leasing the cranes back to the Berry Entities in a series of undisclosed self-

2

dealing transactions. Finally, presumably in an attempt to repay the self-interested loans, Defendants have recently begun secretly attempting to sell the company's real property, including an important and valuable dock facility, without notice to or authorization from the Board of Directors. This type of undisclosed engagement in self-dealing and ultra vires transactions violates the Defendants' fiduciary obligations and Texas law.

4. When Lawrence inquired about this mismanagement and apparent covert self-dealing through valid requests for books and records information, his requests went ignored, in further violation of Texas law.

5. Lawrence, both directly and derivatively on behalf of the Berry Entities, brings this lawsuit against Marty Berry, Hummell, and the Berry Entities, to recover damages, enforce his rights to inspect the Berry Entities' books and records, and to demand an accounting of the Berry Entities' finances.

## II. DISCOVERY LEVEL

6. Discovery should be conducted in accordance with a Level 3 tailored discovery control plan under Rule 190.4 of the Texas Rules of Civil Procedure.

## III. JURISDICTION AND VENUE

7. Plaintiff seeks monetary relief of over $1,000,000, including damages, penalties, costs, expenses, pre- and post-judgment interest, and attorney fees, as well as non-monetary relief. The relief sought by Plaintiff is within the jurisdiction of this Court.

8. The Court has subject matter jurisdiction to hear this matter because the amount in controversy exceeds the jurisdictional minimum of this Court.

9.      This Court has personal jurisdiction over Defendant Marty Berry because he is a resident of Texas and Plaintiff's claims against him arise directly from his contacts with and activities in this state.

10.     This Court has personal jurisdiction over Defendant Michael Hummell because he is a resident of Texas and Plaintiff's claims against him arise directly from his contacts with and activities in this state.

11.     This Court has personal jurisdiction over Defendant Berry Contracting LP because it is a Texas limited partnership headquartered in this state.

12.     This Court has personal jurisdiction over Berry GP, Inc. because it is a Texas corporation headquartered in this state.

13.     This Court has personal jurisdiction over Becon, Inc. because it is a Texas corporation headquartered in this state.

14.     This Court has personal jurisdiction over LDMA Partnership because it is a Texas limited partnership.

15.     This Court has personal jurisdiction over Defendant Berry Operating Company LLC because it is a Texas limited liability corporation headquartered in this state.

16.     Venue is proper in Nueces County, Texas because it is the county of the Berry Entities' principal offices in this state.

## IV.     PARTIES AND SERVICE

17.     Plaintiff Lawrence Berry is an individual residing in Harris County, Texas.  At all relevant times, Lawrence has owned shares of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP individually, through a series of holding companies, including Becon, Inc. and LDMA Limited Partnership.  Lawrence is also the beneficial owner of the shares in those

4

companies held in the Allen Lawrence Berry Trust. Finally, at all relevant times, Lawrence has been an Officer, Director, partner, and/or shareholder of LDMA Limited Partnership; Becon, Inc.; Berry GP, Inc.; Berry Operating Company LL;, and Berry Contracting LP.

18. Nominal Plaintiff LDMA Limited Partnership is a Texas limited partnership with a registered address at 1414 Valero Way, Corpus Christi, Texas 78409. Berry GP, Inc. is its registered agent for service of process and it can be served at 1414 Valero Way, Corpus Christi, Texas 78409.

19. Nominal Plaintiff Becon, Inc. is a Texas corporation with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Charles Vanaman is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

20. Defendant Berry Contracting LP, doing business as Bay Ltd., is a Texas limited partnership with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP, Inc. is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

21. Defendant Berry Operating Company LLC is a Texas limited liability company with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Mike Hummell is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

22. Defendant Berry GP, Inc. is a Texas corporation with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Mike Hummell is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

23. Defendant Marty Berry is a natural person. Marty Berry is an Officer, Director, and shareholder of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP, and he

maintains custody and control over the corporate records of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP. Marty Berry can be served at his office at 1414 Corn Products Road, Corpus Christi, Texas 78409.

24. Defendant Mike Hummell is a natural person. He is the Vice President and General Counsel of Berry GP, Inc. Mr. Hummell can be served at his office at 1414 Corn Products Road, Corpus Christi, Texas 78409.

## V. STANDING

25. Plaintiff Lawrence Berry is a 19% limited partner of LDMA Limited Partnership ("LDMA"). Lawrence Berry is also the Trustee of the Allen Lawrence Berry Trust, which is a 11 2/3% limited partner of LDMA. LDMA owns Berry GP, Inc., which is the umbrella company over the Berry Entities and their subsidiaries.

26. Lawrence Berry is also a 1/3 shareholder of Becon, Inc., which is the 3% general partner of LDMA.

27. Lawrence Berry—in his personal capacity and as Trustee of the Allen Lawrence Berry Trust—has standing to bring these claims directly and derivatively on behalf of LDMA Limited Partnership, Becon, Inc., and Berry GP, Inc. pursuant to Texas Business Organizations Code §§ 21.563 & 153.413, as well as Texas common law providing for representative actions in closely held limited partnerships and corporations.

## VI. FACTUAL BACKGROUND

**A. The Berry Entities are a family operation.**

28. The Berry Entities and their subsidiaries are a group of companies focused on the construction, fabrication, and maintenance contracting industries throughout the United States.

6

The Berry Entities were founded in the 1950s by Lawrence Berry's father, Marvin Berry, who ran the organization for several decades.

29. Marvin Berry had four sons: Plaintiff Lawrence Berry, Marty Berry, Dennis Berry, and Kenneth Berry. When Marvin passed away in 1997, control of the Berry Entities began shifting to his sons, although the other brothers bought Kenneth out several years ago. LDMA sits at the top of the Berry organization. LDMA's 3% general partner is Becon, Inc., which is owned in equal shares by Lawrence, Marty, and Dennis. Lawrence, Marty, and Dennis are each direct 19% limited partners of LDMA, and each is also a beneficial owner of trusts which are 11 2/3% limited partners of LDMA. The remaining 5% limited partner of LDMA is Lone Star Equipment, Inc., which is a subsidiary of Berry Contracting LP. Dennis Berry passed away in 2024 and, on information and belief, his shares passed via his estate plan.

30. LDMA owns Berry GP, Inc., which in turn owns several holding companies which own Berry Operating Company LLC, which in turn functions as the 1% owner and general partner of Berry Contracting LP.

31. An organizational chart reflecting the structure and ownership of the various entities at issue is attached hereto as Exhibit A.

32. While the Berry Entities employ several officers who are not members of the Berry Family—including Robert Powers, who has served as President and Chief Executive Officer of Berry GP, Inc., and Defendant Hummell, who serves as Vice President and General Counsel of Berry GP, Inc.—ownership and control of the Berry Entities is vested with Lawrence and the other shareholders.

33.     The Berry Entities are governed by the Board of Directors of Berry GP, Inc. (the "Board"), in accordance with the Bylaws of Berry GP, Inc., which are attached hereto as Exhibit B.  The Board consists of directors Lawrence, Marty, and Dennis Berry's wife—Bonnie Berry.

**B.      Defendants have excluded Lawrence from key decisions related to the Berry Entities, including improper self-interested transactions.**

34.     Despite Marvin Berry's wishes that the Berry Entities operate as a family business, it has become clear that Marty, with Hummell's assistance, has gone behind Lawrence's back to exclude him from key decisions related to the Berry Entities, instead choosing to engage in self-dealing and attempt major corporate transactions without informing the other officers and directors of his actions.

35.     For instance, in the past several years, Defendants have, among many other things:

- Purported to approve the acquisition of major equipment such as cranes and "yellow iron" without Board discussion or authorization;

- Negotiated and purported to approve terms with major equipment lenders that include significant potential negative impacts to the Berry Entities without Board discussion or authorization;

- Marketed corporate aircraft owned by the Berry Entities for resale without Board discussion or authorization; and

- Deliberately dissolved the largest revenue producing division of the Berry Entities by systematically terminating key individuals material to that division's structure and revenue development.

36.     Of particular concern, Lawrence recently came to learn that Marty has engaged in multiple improper self-dealing transactions with the Berry Entities.

37.     Specifically, it appears that Rob Powers and Defendant Hummell approved and executed two loan agreements, each between Marty and Dennis on the one hand, and one of the Berry Entities on the other, by which Marty and Dennis loaned a total of approximately $75 million to the Berry Entities (the "Berry Loans").  For nearly a year, Defendants refused to provide the

8

loan documents or information about the loan terms despite requests from Lawrence. After being forced to file this lawsuit, Lawrence was finally provided with the purported loan documents and learned that Marty loaned $45 million and Dennis loaned $30 million to one or more of the Berry Entities.

38. Despite being an officer, director, and shareholder of the Berry Entities, Lawrence was never directly informed about the Berry Loans, never consulted about their propriety, and never asked to vote on them as an officer, director, or shareholder. Nor was Lawrence informed about the terms of the Berry Loans; how the proceeds of the Berry Loans were used; or how, when, and to what extent Marty and Dennis expected repayment from the Berry Entities with respect to the Berry Loans.

39. Review of the limited financial information to which Lawrence has been privy since the filing of this lawsuit indicates that the Berry Entities have made payments to Marty and Dennis in service of the Berry Loan. In particular, Marty approved payments to himself of at least $10 million in principal, despite the purported promissory note governing his loan indicating that the loan is not payable until December 31, 2024. Because the self-dealing loans were made without Board authorization and Defendants have largely refused to provide the requested documentation to Lawrence, the extent of further improper payments is presently unclear.

40. Prior to the filing of this lawsuit, the Berry Loan transactions were never discussed by the directors of Berry GP, Inc., were not voted on at any meeting of the directors, and do not appear in any minutes of Board meetings. In fact, it appears that Powers, Hummell, Marty, and Dennis were the only individuals at the Berry Entities who were aware that they were encumbering the Berry Entities with this $75 million unauthorized debt.

9

41. Lawrence also recently came to learn that Defendant Marty Berry has been purchasing "rolling stock" equipment such as motor cranes through a company unaffiliated with the Berry Entities called Western Gulf Equipment LLC ("Western Gulf"). Western Gulf was originally established as a special purpose entity that would purchase a portion of a crane in Canada in conjunction with a Canadian affiliate of the Berry Entities, and then lease the crane back to that Canadian affiliate. This original transaction was fully disclosed and approved by the Board. However, Western Gulf now appears to have purchased at least six (6) additional cranes without first presenting the opportunity to the Board or the Berry Entities, and then leased those cranes back to the Berry Entities in a self-dealing transaction—again, without disclosing the transaction to the Board or seeking Board approval. According to the limited financial information presented to Lawrence, it appears that Western Gulf is leasing seven (7) cranes to the Berry Entities at a total rate of $449,000 per month. To date, the full extent of Marty's undisclosed, self-dealing transactions with Western Gulf remains unclear.

42. Plaintiff understands that Western Gulf is wholly owned by Marty Berry and his wife, Courtenay Berry, and that the registered address for Western Gulf is the Berry Entities' headquarters in Corpus Christi. What is more, the registered agent for Western Gulf is Mike Hummell, indicating that Defendant Hummell is aware of Marty's self-dealing transactions perpetrated through Western Gulf. On information and belief, Marty uses corporate assets of the Berry Entities to operate Western Gulf for his own personal gain.

43. Plaintiff also recently learned that Defendants have offered to sell some of the Berry Entities' vital real property assets, including a dock facility and adjacent real property that generates tens of thousands of dollars in monthly revenue, presumably in an effort to repay the unauthorized and self-interested loans. Plaintiff believes that Marty intends to sell the Berry real

property to raise funds for additional unauthorized self-dealing payments to himself in service of the Berry Loans.

44. Plaintiff recently was made aware that in or around late May 2023, Defendants began an effort to sell the dock facility and other real property to at least one third party. In their communications to that third party, Defendants falsely represented that "the principals at Berry G.P. have decided to open two strategic properties to the marketplace." *See* Ex. C (May 30, 2023 Letter from Berry G.P. to Port of Corpus Christi). In truth, the decision to sell significant company assets was made unilaterally by Marty and without calling a Board meeting and without discussion with or notice to Lawrence.

**C. Defendants have threatened the financial operations of the Berry Entities.**

45. Until recently, the Berry Entities relied on a $50,000,000.00 revolving line of credit (the "LOC") with International Bank of Commerce ("IBC") for general operations. This LOC was governed by a loan agreement between several of the Berry Entities and IBC, dated March 31, 2019 (the "Loan Agreement").

46. The Loan Agreement contained provisions allowing IBC to invoke default if certain conditions were not met, including particular thresholds for EBITDA and combined net profit after taxes.

47. Under Defendants' mismanagement, the Berry Entities recently failed to meet certain of the thresholds detailed in the Loan Agreement.

48. In fact, IBC recently made repeated requests to members of the Berry Entities' management team for information related to standard reporting as part of the Loan Agreement covenants. This includes quarterly financials, WIP reports, financial projections, and more. It appears as if the management team either refused or was unable to produce this information to

IBC. Further, when IBC made an effort to schedule a meeting with the Board of Directors to discuss the status of the Berry Entities in person, Marty did not show up, imperiling the 30-year banking relationship with IBC. Lawrence was never informed that IBC was sending repeated requests for information, that the Berry Entities were struggling to produce accurate or timely reporting, or that IBC had attempted to schedule meetings with the Board of Directors to discuss the problems in person.

49. Accordingly, on March 13, 2023, IBC sent a letter to the Berry Entities informing them that IBC had placed the LOC in default. IBC asserted that the Berry Entities had failed to achieve the minimum EBITDA and net profits targets for the 2022 fiscal year. Defendants did not share this letter with Lawrence at the time.

50. Because of these claimed defaults, IBC (1) elected to limit future advances to the Berry Entities on the LOC to $30 million rather than the full $50 million, and (2) accelerated maturation of the LOC to March 31, 2023, at which time IBC was going to require the entire balance to be due and payable.

51. Following this March 13, 2023 letter, IBC and counsel for the Berry Entities engaged in additional correspondence regarding the extension of the LOC. On March 28, 2023, IBC proposed an extension of the LOC to October 1, 2023, pursuant to several terms, including a reduction of the LOC from $50 million to $30 million, a requirement that the $75 million debt purportedly owed by the Berry Entities to Marty and Dennis be subordinated to the LOC debt owed to IBC, and a requirement that no payments be made on that debt until the Berry Entities' indebtedness to IBC was fully satisfied. On March 30, 2023, counsel for the Berry Entities responded and rejected many of these terms, including the subordination and repayment proposals.

Lawrence was not consulted regarding these decisions, nor was he made aware of the IBC proposal at the time.

52.     As a result of the March 30, 2023 rejection letter from the Berry Entities, IBC appears to have placed the LOC into default. Despite being an officer, director, and shareholder of the Berry Entities, Lawrence was not informed of the precise status of the LOC with IBC, nor of the Berry Entities' plan for ensuring sufficient liquidity to fund its operations. Defendants apparently decided to keep Lawrence in the dark regarding the Berry Entities' financial status.

53.     Following the collapse of the IBC banking relationship, Marty unilaterally caused the Berry Entities to repay himself $10 million in principal on his loan, despite the fact that the terms of the purported promissory note governing his loan did not require Berry GP to make any principal or interest payments to Marty until December 31, 2024.

54.     Around the same time, Defendants began negotiations with Frost Bank to obtain a new revolving line of credit. As part of these negotiations, Defendants pledged the Berry Entities' real property as collateral, including the Entities' commercial property in Corpus Christi. Lawrence was not fully apprised of the situation with Frost Bank, nor was he initially consulted about or asked to approve the collateralization of any of the Berry Entities' real property.

55.     Indeed, as part of the negotiations with Frost Bank, Marty executed a "Certificate of Corporate Resolutions" that purports to set forth "resolutions duly adopted either: (a) at a meeting of [Berry GP, Inc.'s] Board of Directors duly called and held, at which meeting a quorum was present and acting throughout, or (b) by unanimous written consent of the Board of Directors of [Berry GP, Inc.], which resolutions save not in any way been amended or modified[.]". *See* Ex. D. No such Board meeting was ever held, and Lawrence was never notified of or asked to approve

13

any written consents adopting the purported resolutions contained in this "Certificate of Corporate Resolutions."

56. Lawrence has since signed resolutions authorizing the creation of a Frost Bank relationship because it is in the best interest of the Berry Entities to receive outside financing.

**D.    Defendants refuse to honor Lawrence's legitimate requests for information related to the Berry Entities.**

57. On April 18, 2023, Lawrence sent an email to Powers and Jim Klein—CFO of Berry GP, Inc.—copying Marty and Dennis.  This email attached a memorandum of "Key Concerns" that the Berry Entities apparently received from IBC and requested information from Powers and Klein related to the financial condition of the Berry Entities.

58. Lawrence sent the information request so that he could better understand the Berry Entities' present financial condition and what may have caused the Berry Entities to purportedly fail to meet the thresholds included in the Loan Agreement with IBC.  Lawrence also requested information related to the Berry Loans, since he has still been kept in the dark as to the nature and terms of that debt.

59. As an officer, director, and shareholder of the Berry Entities, Lawrence is entitled to inspect the books and records of the Berry Entities, and a valid request such as the April 18, 2023 email should have been honored.  However, Lawrence never received a response to his April 18, 2023 request, much less access to any of the books and records he requested.

60. Lawrence has made numerous other requests for information since April 18, 2023, including since filing this lawsuit, but all have been ignored or refused.

**E.    Defendants attempt to ratify their own improper conduct.**

61. Immediately after filing his Original Petition on November 27, 2023, Plaintiff secured a hearing on the application for temporary restraining order and provided notice to

14

Defendants. The hearing took place on November 28, 2023 in the Harris County Ancillary Court before the Honorable Lauren Reeder. Despite receiving notice from Plaintiff nearly 24 hours previously, Defendants did not appear at the temporary restraining order hearing.

62. After considering Plaintiff's Original Petition and evidence, Judge Reeder granted the Berry TRO on November 28, 2023, enjoining Defendants from selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property without the approval of the disinterested members of the Board of Directors.

63. On the evening of December 1, 2023, Defendants sent an email to Lawrence, attaching two "notices of special meetings."

64. The first purported to give notice that a "Special Meeting of the Board of Directors" of Berry GP, Inc. was called by Marty and Dennis Berry to be held on December 7, 2023 (the "Board Notice"). The Board Notice, which was signed by Marty and Dennis Berry, indicated that the purpose of the Board meeting was to discuss the following agenda items:

a. Defense and indemnity for Marty Berry, Robert Powers, Robert Rickett, and Mike Hummell in Cause No 2023-81703 in the District Court of Harris County, and any location to which such claims may be transferred;

b. Discussion and action regarding the employment contract of CEO Robert Powers;

c. Clarification and ratification concerning previous board action on loans from shareholders Dennis Berry and Marty Berry to Berry Contracting, L.P. and offer to Lawrence Berry to participate in said loans for up to 100%;

d. Clarification and ratification of previous board and employee action concerning the sale of the Berry Dock and adjacent real property, and of moving forward with the sale after resolution of pending litigation;

e. Discussion and action on marketing corporate aircraft and use of corporate aircraft pending sale;

f. Consider and take action on need to transfer title to property acquired in Robert Rickett's name, using Berry funds, to any Berry owned Company;

15

g. Discussions and ratification of previous board action concerning the discontinuation of banking relations with International Bank of Commerce;

h. Discussion and ratification of previous board action establishing a banking relationship with Frost Bank;

i. Discussion and ratification of previous board action establishing an operational credit line and any other action needed to provide security for loans;

j. Evaluation of accounts as to any and all director debt (individually or director owned or controlled entities) to any Berry owned Company and development of plans for repayment; and

k. Other business.

65. The second purported to give notice that a "Special Meeting of the Shareholders" of Berry GP, Inc. was called by Marty and Dennis Berry to be held on December 7, 2023 immediately following the Special Meeting of the Board of Directors (the "Shareholder Notice"). The Shareholder Notice, which was also signed by Marty and Dennis Berry, indicated that the purpose of the shareholder meeting was to discuss the following agenda items:

a. Discussion and action concerning the election of and/or removal of Directors.

66. The Special Meetings of the Board of Directors and Shareholders took place on December 7, 2023 while counsel for the parties were reaching agreement on the Agreed TRO. At the Special Meeting of the Board of Directors, Marty and Dennis Berry purported to ratify—frequently over Lawrence's objection—all of the topics and actions listed in the Board Notice. This included topics on which Marty and Dennis were unquestionably interested Directors, such as "defense and indemnity" and "loans from shareholders Dennis Berry and Marty Berry."

67. After the meeting, Defendant Hummell circulated proposed meeting minutes to the members of the Board, including Lawrence. The minutes incorrectly reflected that certain of the agenda items had passed, despite the fact that they required—and had not gotten—approval by disinterested members of the Board of Directors. Accordingly, Lawrence sent redlines of the

16

minutes back to Defendant Hummell in advance of the upcoming December 12, 2023 Board meeting, which properly reflected what had occurred at the December 7, 2023 meeting.

68. At the December 12, 2023 meeting, Defendant Hummell claimed that he "could not open" the redlines that Lawrence had sent—despite the fact that they were sent as PDFs. Further, Marty and Dennis purported to accept Hummell's incorrect meeting minutes, over Lawrence's objection.

69. The same conduct occurred again at the February 13, 2024 meeting of the Shareholders of Berry GP, Inc., at which Marty and Bonnie Berry purported to ratify post hoc a number of actions over Lawrence's objections. Several of those votes should not have passed, since they failed to garner approval from a majority of the disinterested shareholders.

## VII. CAUSES OF ACTION

### COUNT 1
### Breach of Fiduciary Duty
### (against Marty Berry and Mike Hummell)

70. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

71. Defendant Marty Berry has been a shareholder, officer, and director of Berry GP, Inc. at all relevant times. Defendant Mike Hummell has served as Vice President and Chief Executive Officer of Berry GP, Inc. at all relevant times. In those positions, Marty and Hummell owe certain fiduciary duties to the Berry Entities, including the duty of loyalty and the duty of utmost good faith, fairness, and honesty. These duties that Marty and Hummell owe to the Berry Entities encompass obligations and/or duties to refrain from allowing self-dealing and to make full disclosure of information.

17

72. While serving in their respective positions, Marty and Hummell have engaged in, directed, approved, and/or taken actions in contravention of the fiduciary duties they owe to the Berry Entities, including without limitation the following willful and intentional misconduct:

A. Self-Dealing

i. Marty and Hummell approved and directed at least one of the Berry Entities to enter into loan agreements with Marty and Dennis—who are themselves officers, directors, and shareholders of Berry GP, Inc. and the other Berry Entities—without giving notice to or obtaining the consent or approval of Berry GP, Inc.'s Board;

ii. At a minimum, Marty's and Hummell's actions breached their fiduciary duties of loyalty to Berry GP, Inc. and amounted to self-dealing.

B. Unauthorized Acts and Failure to Make Full and Adequate Disclosure

i. Marty and Hummell failed to disclose their unauthorized decision to sell vital company assets and the self-dealing Berry Loans and failed to properly seek or obtain board approval or approval of the sole disinterested director for those self-dealing transactions;

ii. Marty and Hummell similarly failed to disclose the Berry Entities' financial information to Lawrence before IBC held the Berry Entities in default with respect to the LOC.

C. Usurpation of Corporate Opportunity and Self-Dealing

i. Marty directed his wholly owned company—Western Gulf Equipment—to purchase cranes without first presenting the opportunities to the Board or the Berry Entities. Then, Marty directed Western Gulf to lease those cranes back

18

to the Berry Entities, without disclosing such lease transactions to the Board or seeking approval by the disinterested members of the Board. Mike Hummell participated in these actions as the registered agent for Western Gulf Equipment. These and other actions by Marty and Hummell amounted to breaches of their fiduciary duties of loyalty to the Berry Entities and to behave with the utmost good faith, fairness, and honesty.

73. The Berry Entities and Lawrence have been damaged by the Defendants' self-dealing, unauthorized acts, breaches of fiduciary duty, and failure to make full disclosure.

74. Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

75. Alternatively, Plaintiff brings these claims derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

**COUNT 2**
**Knowing Participation in a Breach of Fiduciary Duty**
**(against Mike Hummell)**

76. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

77. Defendant Mike Hummell knowingly participated in a breach of fiduciary duty by Defendant Marty Berry.

78. Marty has been a shareholder, officer, and director of Berry GP, Inc. at all relevant times. In those positions, Marty owes certain fiduciary duties to the Berry Entities, including the duty of loyalty and the duty of utmost good faith, fairness, and honesty. These duties that Marty

19

owes to the Berry Entities encompass obligations and/or duties to refrain from allowing self-dealing and to make full disclosure of information.

79.     Hummell has served as Vice President and Chief Executive Officer of Berry GP, Inc. at all relevant times, and knew of Marty's fiduciary relationship with the Berry Entities.

80.     Marty breached his fiduciary relationship to the Berry Entities, as detailed in the above allegations and in Paragraph 72.

81.     Hummell participated and substantially assisted Marty in the breach of his fiduciary duties, including by serving as registered agent for Marty's personally owned company—Western Gulf Equipment—and by suppressing information to Plaintiff regarding Marty's self-dealing and usurpation of corporate opportunities.

82.     Hummell was aware that he was participating in the breach of Marty's fiduciary relationship.

83.     Hummell's assistance and participation was a substantial factor in causing Marty's breach of fiduciary duty.

84.     Having knowingly participated in breach of Marty's fiduciary duties, Hummell is jointly and severally liable for breaches of fiduciary duties by Marty.

85.     The Berry Entities and Lawrence have been damaged by these breaches of fiduciary duty, and by Hummell's knowing participation in same.

86.     Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

87. Alternatively, Plaintiff brings this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 3
## Demand for an Equitable Accounting

88. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

89. As an officer and director of Berry GP, Inc. at all relevant times, Marty owed fiduciary duties to Berry GP, Inc. that give rise to grounds for an accounting. Additionally, as an officers of Berry GP, Inc. at all relevant times, Hummell owes fiduciary duties to Berry GP, Inc. that give rise to grounds for an accounting.

90. Defendants have provided Lawrence with almost no financial records related to the Berry Entities. The task of determining whether those records are accurate or complete, and the need to verify details about the concealment, wrongdoing, and mismanagement detailed above, is likely to be complex. Adequate relief is unlikely to be obtained at law or through traditional discovery. Performing an accurate accounting for the Berry Entities is likely to require the creation of accurate financial records where none exist, as opposed to merely granting Plaintiff access to the Berry Entities' existing records.

91. Plaintiff therefore seek an order appointing an independent auditor and requiring the Berry Entities, Marty, and Hummell to prepare and present accurate financial records, which properly account for all corporate receipts, expenditures, assets, and liabilities for Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities, since January 2023. *See* TEX. R. CIV. P. 172.

92. Plaintiff bring this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

21

## COUNT 4
## Demand for Books and Records

93.     Plaintiff incorporates the above paragraphs as if set forth in their entirety.

94.     At all relevant times, Plaintiff Lawrence Berry has been a shareholder of at least 5% of Berry GP, Inc. through his interests in LDMA Limited Partnership and Becon, Inc.

95.     On April 18, 2023, Lawrence sent a good faith written demand to Defendants for books and records related to Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities.  However, this request was ignored, and Lawrence never received a response.

96.     As a shareholder of Berry GP, Inc. for at least six months immediately preceding that April 18, 2023 demand, and as a holder of at least 5% of all of the outstanding shares in Berry GP, Inc., Lawrence is entitled to examine and copy Berry GP, Inc.'s books, records of account, minutes, and share transfer records.  TEX. BUS. ORG. CODE § 21.218.

97.     The Bylaws of Berry GP, Inc. do not alter or limit Lawrence's right to inspect Berry GP, Inc.'s books and records.  Indeed, Section XXIV states that "the books, accounts and records of [Berry GP, Inc.] shall be open to inspection by the shareholders at all reasonable times[.]" *See* Ex. B, at 11.

98.     Defendants never responded to Lawrence's lawful request, let alone provided any reason why Lawrence would not be entitled to inspect the books and records of Berry GP, Inc. and its subsidiaries.

99.     Plaintiff Lawrence Berry therefore seeks an order compelling the production for examination of the books and records of Berry GP, Inc. and its subsidiaries, including but not limited to the other Berry Entities, pursuant to Section 21.218(c) of the Texas Business Organizations Code.

100.     Plaintiff Lawrence Berry brings this claim directly and derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

**COUNT 5**
**Declaratory Judgment**

101.     Plaintiff incorporates the above paragraphs as if set forth in their entirety.

102.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 *et. seq.*, Plaintiff seeks a judicial declaration of his rights, status, and other legal relations with respect to Defendants under the Berry GP bylaws and laws of the State of Texas.

103.     First, Plaintiff seeks a judicial declaration that the purported December 7, 2023 "ratifications" of the following agenda items were ineffectual, because they were not procured with the approval of a majority of the fully informed and disinterested members of the Board of Directors, nor were they approved in good faith by a vote of the disinterested shareholders after disclosure of all material facts:

   a.  Defense and indemnity for Marty Berry, Robert Powers, Robert Rickett, and Mike Hummell in Cause No 2023-81703 in the District Court of Harris County, and any location to which such claims may be transferred;

   b.  Clarification and ratification concerning previous board action on loans from shareholders Dennis Berry and Marty Berry to Berry Contracting, L.P. and offer to Lawrence Berry to participate in said loans for up to 100%;

   c.  Clarification and ratification of previous board and employee action concerning the sale of the Berry Dock and adjacent real property, and of moving forward with the sale after resolution of pending litigation;

   d.  Discussion and action on marketing corporate aircraft and use of corporate aircraft pending sale; and

   e.  Discussions and ratification of previous board action concerning the discontinuation of banking relations with International Bank of Commerce;

104.     Second, Plaintiff seeks a judicial declaration that the purported February 13, 2024 "ratifications" or "resolutions" were ineffectual, because they were not approved by a majority of

23

the fully informed and disinterested members of the Board of Directors, nor were they approved in good faith by a vote of a majority of the fully informed and disinterested shareholders:

a. BE IT RESOLVED that all action previously taken by any Director of Berry GP, Inc. or any employee of Bay Ltd. to promote, advertise, or seek offers for the sale of the Berry Dock is hereby ratified. The Board further determines that the Berry Dock and adjacent property is to remain listed for sale and that no sale shall take place pending the resolution of the TRO currently in place in Nueces County, Texas.

b. BE IT RESOLVED that the loans made to Berry GP Inc. by Dennis Berry and Marty Berry in July 2022 are recognized as fair, and in the best interest of Berry GP, and are ratified.

c. BE IT RESOLVED that the two (2) aircraft owned by Berry GP Inc. are to remain listed for sale, and are to be sold upon approval of an acceptable offer to purchase.

d. BE IT RESOLVED that all actions taken by any director of Berry GP, Inc. or any employee of Bay Ltd. including Robert Powers and Mike Hummell, in furtherance of discontinuing the banking relations between Berry GP, Inc. and International Bank of Commerce is hereby ratified.

e. BE IT RESOLVED that the acquisition of cranes or other equipment by Marty Berry, individually or through any company he owns or controls, and the subsequent leasing of that company to any Berry company for performing the work of that Berry company, is approved. To the extent such conduct has occurred in the past, it is ratified.

105. Each of the "ratifications" or "resolutions" detailed above required informed approval by a majority of the disinterested Directors or Shareholders, pursuant to TEX. BUS. ORGS. CODE § 21.418. However, they were not approved by a majority of the disinterested Directors or Shareholders, because Lawrence Berry objected.

106. Plaintiff brings this claim individually and derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 6
### Conversion

107. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

108. Pursuant to Texas law, Defendants are liable to Plaintiff for conversion.

24

109. Becon Inc., LDMA Limited Partnership and Berry GP, Inc. have the right to possess property of the Berry Entities.

110. By unlawfully voting to indemnify themselves and advance themselves litigation costs—over the objection of Lawrence as the sole disinterested member of the Board for such vote—Defendants are depriving Plaintiffs of their rightful interest in the property of the Berry Entities.

111. Lawrence's objection to the vote constitutes his demand for the return of the advanced litigation fees. Alternatively, demand was not required.

112. As a result of Defendants' unlawful vote and improper squandering of the Berry Entities' money, LDMA Limited Partnership, Becon Inc., and Berry GP, Inc. have suffered damages within the jurisdictional limits of this Court. Further, under the Texas Damages Act and Texas common law, Plaintiff is entitled to recover exemplary damages because Defendants acted with actual malice when converting the Berry Entities' property.

113. Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

114. Alternatively, Plaintiff brings this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

### COUNT 7
### Corporate Waste (against Marty Berry)

115. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

25

116. Defendant Marty Berry's use of corporate assets for personal applications constitutes corporate waste.

117. In particular, on information and belief, Defendant Marty Berry uses assets of the Berry Entities to operate his personally-owned company, Western Gulf Equipment. Defendant Marty Berry does not provide adequate consideration to the Berry Entities in return for these uses of Berry Entity assets, and instead further encumbers the Berry Entities by charging lease payments for the Berry Entities' use of Western Gulf cranes. There is no business justification for using the Berry Entities' corporate assets for Defendant Marty Berry's personal applications without adequate consideration.

118. Further, Defendant Marty Berry approved payments to himself from the Berry Entities of at least $10 million in principal on his undisclosed and improper self-dealing loan, despite the purported promissory note governing his loan indicating that the loan is not payable until December 31, 2024. There is no business justification for using the Berry Entities' corporate assets to make such voluntary payments for Marty's personal benefit, thus depriving the Berry Entities' of vital liquidity.

119. Finally, on information and belief, Plaintiff understands that Defendant Marty Berry engages in additional corporate waste by using other Berry Entity assets for personal applications without adequate consideration. However, because Plaintiff has been denied adequate access to the Berry Entities' books and records, the scope and extent of that additional corporate waste is not yet clear. Plaintiff reserves the right to add additional claims for corporate waste after a proper accounting has been made and Plaintiff has been able to perform a fulsome review of the Entities' books and records.

120. The Berry Entities and Lawrence have been damaged by Defendant Marty Berry's waste of corporate assets.

121. Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

122. Alternatively, Plaintiff brings this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## VIII. APPLICATION FOR PERMANENT INJUNCTION

123. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

124. Plaintiff also incorporates its February 15, 2024 Brief in Support of Temporary Injunction and its March 14, 2024 Verified Application for Temporary Injunction as if set forth in their entirety.

125. Plaintiff requests that the Court issue a permanent injunction enjoining Defendants from selling any of the Berry Entities' real property without first giving forty-eight hours' (48) written notice to Lawrence Berry, including details of the proposed transaction. Further, Plaintiff requests that the court issue a permanent injunction enjoining Defendants from removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities. Plaintiff further requests that upon final trial on the merits, the Court award a permanent injunction against Defendants for the same activity.

126. Unless this Court grants Plaintiff's application and permanently restrains Defendants from the wrongful acts described above, Plaintiff will suffer imminent harm and

irreparable injury for which Plaintiff will have no adequate remedy at law. In cases involving real or personal property such as this one, the movant need not show the lack of an adequate remedy at law. TEX. CIV. PRAC. & REM. CODE § 65.011(5).

A. **The harm facing Plaintiff is imminent.**

127. For the purposes of obtaining an injunction, an injury is "imminent" if one has expressed "demonstrable intent to do that for which injunctive relief is sought," *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 717-18 (Tex. App.—Corpus Christi 2001, no pet.), or if the "defendant will engage in the activity sought to be enjoined." *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no writ).

128. Defendants have already made unauthorized offers to sell real property belonging to the Berry Entities, including a unique and valuable commercial dock and other real property. Defendants are believed to be selling such assets to raise money for further unauthorized payments in service of the self-dealing Berry Loan. This past behavior, coupled with the Defendants' recent purported Board and shareholder resolutions, demonstrates that Defendants intend to engage in activity that will undoubtedly alter the status quo—and irreparably harm Lawrence—if they are not permanently enjoined from doing so.

B. **The harm facing Plaintiff is irreparable.**

129. If Defendants are not enjoined as requested above, the harm Plaintiff will suffer is irreparable. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. Injury is likewise irreparable if "damages [are] not presently ascertainable or readily subject to calculation." *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) (citing *Butnaru*, 84 S.W.3d at 204). The loss of management

rights over a company can constitute irreparable harm, because those rights are "unique, irreplaceable, and 'cannot be measured by any certain pecuniary standard.'" *Cheniere Energy, Inc. v. Parallax Enters.*, 585 S.W.3d 70, 83 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd (citing *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 201 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). Additionally, "a trial court may grant injunctive relief when the enjoined conduct threatens to disrupt an ongoing business." *Sonwalkar*, 394 S.W.3d at 199; *see also Intercont'l Terminals Co., LLC*, 354 S.W.3d at 896 ("[d]isruption to a business can be irreparable harm," and "assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy.").

130. Further, trial courts typically grant injunctive relief in "actions involving real property because real estate is generally considered unique" and "irreplaceable," such that money damages are generally inadequate. *See Chenier Energy*, 585 S.W.3d at 76-77 (citing cases).

131. First, as explained above, Plaintiff has already been damaged by Defendants' actions, but the extent of that damage is not readily ascertainable because of Defendants intentional concealment of information and the lack of clear records detailing the financial status of the Berry Entities. Additionally, Defendants' actions have already caused irreparable harm to the Berry Entities' decades-long banking relationship with IBC and could cause similar harm to the new banking relationship with Frost Bank. Assigning a dollar amount to remedy this kind of intangible but serious harm is not easy.

132. Second, Plaintiff understands that Defendants have pledged the Berry Entities' real property as collateral to secure an increase to the new Frost Bank line of credit. Should unauthorized self-dealing payments made in service of the Berry Loans imperil the line of credit

with Frost Bank such that the company's real property interests are threatened, Plaintiff will be irreparably harmed as a result.

133. Third, Defendants have been secretly attempting sell—without notice to or authorization from the Board—other real property belonging to the Berry Entities, including the company's valuable dock facility, presumably to raise funds to make additional self-dealing payments. If Defendants dispose of such real property without the requisite notice or approval, Plaintiff will be irreparably harmed.

**C.      Plaintiff lacks an adequate remedy at law, or in the alternative, is not required to prove lack of an adequate remedy at law.**

134. Because Plaintiff applies for an injunction under Section 65.011(5) of the Texas Civil Practice and Remedies Code, he is not required to prove lack of an adequate remedy at law. *See* TEX. CIV. PRAC. & REM. CODE § 65.011(5) ("A writ of injunction may be granted if: (5) irreparable injury to real or personal property is threatened, *irrespective of any remedy at law*.") (emphasis added).

135. Alternatively, Plaintiff has no adequate remedy at law, so a permanent injunction must issue. An irreparable injury is one that, by definition, has no adequate remedy at law. *See, e.g.*, *Kennedy v. Gulf Coast Cancer & Diag. Center at Southeast, Inc.*, 326 S.W.3d 352, 260 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages or if damages cannot be measured by any certain pecuniary standard.") (citations omitted). As explained above, the injuries Plaintiff will suffer—including the likely loss of management rights and of unique and valuable real property belonging to the company—cannot be adequately compensated in damages, and Plaintiff thus has no adequate remedy at law.

136. Further, to justify denial of an application for injunction, a remedy at law must be as "complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Tex. Black Iron, Inc. v. Arawak Energy Int.'l Ltd.*, 572 S.W.3d 579, 584 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, the equitable relief that Plaintiff seeks is for the purpose of avoiding harm that could not be responded to fully in money damages, including threatening the status of the Berry Entities' real property interests and of Plaintiff's management rights in the Berry Entities. Damages would be an incomplete remedy at best, because the harm Defendants threatens to impose on Plaintiff is non-monetary in part. *See RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 275 (Tex. App.—Dallas Apr. 12, 2019, no pet.) ("Generally, an adequate remedy at law exists and injunctive relief is improper where any potential harm may be adequately cured by monetary damages.").

### D. Plaintiff is entitled to a permanent injunction.

137. For the reasons set forth above, Plaintiff is entitled to a permanent injunction. Plaintiff requests that upon final hearing, the Court permanently enjoin Defendants from (1) removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities; and (2) voting on the sale of the Berry Entities' real property without first giving forty-eight (48) hours' written notice to Lawrence Berry, including details of the proposed transaction.

### IX. ATTORNEY'S FEES

138. Plaintiff Lawrence Berry is entitled to recover his attorneys' fees incurred in this matter pursuant to Sections 21.222 and 21.561 of the Texas Business Organizations Code and Section 37.009 of the Texas Civil Practice and Remedies Code.

### X. JURY DEMAND

139. Plaintiff hereby requests a jury trial.

## XI.   CONDITIONS PRECEDENT

140.   Plaintiff pleads that all conditions precedent to the relief requested have been satisfied, waived, excused, and/or are deemed as a matter of law to have been satisfied.

## XII.   PRAYER

141.   Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that the Court:

(1)   Order that Defendants produce the books and records of the Berry Entities for inspection by Plaintiff Lawrence Berry;

(2)   Order that Plaintiff Lawrence Berry recover from Defendants the reasonable costs and expenses Plaintiff incurred in obtaining the books and records;

(3)   Appoint an independent auditor and order Defendants to prepare and present accurate financial records, which properly account for all corporate receipts, expenditures, assets, and liabilities for Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities, since January 2023;

(4)   Set a trial date and upon final hearing enter a permanent injunction that enjoins Defendants from (1) removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities, and (2) voting on the sale of the Berry Entities' real property without first giving forty-eight (48) hours' written notice to Lawrence Berry, including details of the proposed transaction; and order that Plaintiff have final judgment against Defendants breach of fiduciary duty, knowing participation in a breach of fiduciary duty, declaratory judgment, conversion, and corporate waste and award:

   (i)   compensatory, actual, consequential, restitutionary, and disgorgement damages,

   (ii)   exemplary damages,

   (iii)   pre-judgment interest,

   (iv)   post-judgment interest,

   (v)   reasonable and necessary attorneys' fees and costs, and

   (vi)   any other relief to which Plaintiff may show himself justly entitled.

Dated: October 11, 2024

Respectfully submitted,

By: */s/ Barrett Reasoner*
Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

and

Butch Boyd
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Tel: 713.589.8477

and

Gabi S. Canales
State Bar No. 24012376
gabilaw14@gmail.com
**GABI CANALES LAW OFFICE**
5262 South Staples St., Suite 100
Corpus Christi, Texas 78411
Tel: 361.887.4700
Fax: 361.887.4761

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Texas Rules of Civil Procedure.

_/s/ Bruce Baldree_____
L. Bruce Baldree

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christina Pena on behalf of Barrett Reasoner
Bar No. 16641980
cpena@gibbsbruns.com
Envelope ID: 93122880
Filing Code Description: Motion for Continuance
Filing Description: Plaintiff's Motion for Continuance and in the Alternative, Response to Motion for Summary Judgment
Status as of 10/14/2024 12:44 PM CST

Associated Case Party: Michael Hummell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Van Huseman | | vhuseman@husemanlawfirm.com | 10/14/2024 12:02:20 PM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 10/14/2024 12:02:20 PM | SENT |

Associated Case Party: Lawrence Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 10/14/2024 12:02:20 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 10/14/2024 12:02:20 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 10/14/2024 12:02:20 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shanna Gohlke | | gohlkes@bayltd.com | 10/14/2024 12:02:20 PM | SENT |

Associated Case Party: Marty Berry

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christina Pena on behalf of Barrett Reasoner
Bar No. 16641980
cpena@gibbsbruns.com
Envelope ID: 93122880
Filing Code Description: Motion for Continuance
Filing Description: Plaintiff's Motion for Continuance and in the Alternative, Response to Motion for Summary Judgment
Status as of 10/14/2024 12:44 PM CST

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas  Allison | | doug@dallisonlaw.com | 10/14/2024 12:02:20 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 10/14/2024 12:02:20 PM | SENT |
| Susan  Gonzales | | susan@dallisonlaw.com | 10/14/2024 12:02:20 PM | SENT |

# EXHIBIT A



# EXHIBIT B

# BYLAWS OF

# BERRY CONTRACTING, INC.

## I.

TITLE: The title of the corporation is Berry Contracting, Inc.

## II.

LOCATION: The location of its principal office shall be 1414 Corn Products Road in the City of Corpus Christi, Nueces County, Texas

## III.

CORPORATE SEAL: The corporate seal of the company shall have inscribed thereon: "Berry Contracting, Inc."

## IV.

DIRECTORS: The property and business of the company will be managed and controlled by a board of directors consisting of not less than three nor more than seven members. They shall hold office until the next annual meeting of the shareholders or until their successors are elected and have qualified.

## V.

POWERS OF DIRECTORS: The board of directors shall have the management of the business of the company and in addition to the powers and authorities by these bylaws expressly conferred upon them, may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, but subject, nevertheless, to the provisions of the statute, of the charter and of these bylaws and to any regulations from time to time made

by the shareholders, provided that no regulations so made shall invalidate any prior act of the directors which would have been valid if such regulations had not been made.

Without prejudice to the general powers conferred by the last preceding clause and other powers conferred by these bylaws, it is hereby expressly declared that the board of directors shall have the following powers, that is to say:

To purchase and otherwise acquire for the company and property, rights or privileges which the company is authorized to acquire, at such prices and on such terms and conditions and for such consideration as they think proper. At their discretion, to pay for any property or rights acquired by the company, either wholly or partially, in money or in stocks, bonds, debentures, or other securities of the company.

To appoint, and at their discretion, remove or suspend, such subordinate managers, officers, assistants, clerks, agents, and servants, permanently or temporarily, as they may from time to time think fit, and to determine their duties and fix, and from time to time change their salaries or emoluments, and to require security in such instances and in such amounts as they think proper.

To confer, by resolution, upon any officer of the company the right to choose, remove or suspend such subordinate officers, agents or factors.

To appoint any person or persons to accept and hold in trust for the company any property belonging to the company or in

which it is interested or for any other purpose, and to execute and do all such duties and things as may be requisite in relation to any such trust.

To create, make and issue mortgages, bonds, deeds of trust, trust agreements and negotiable or transferable instruments and securities, secured by mortgage or otherwise, and to do every other act and thing necessary to effectuate the same.

To determine who shall be authorized to sell on behalf of the company bills, notes, receipts, acceptances, endorsements, checks, releases, contracts and documents.

From time to time to provide for the management of the affairs of the company in such manner as they think proper and in particular, from time to time to delegate any of the powers of the board of directors to any committee, officer or agent, and to appoint any person to be the agent of the company with such powers, including the powers to subdelegate, and upon such terms as may be thought proper.

## VI.

MEETINGS OF THE DIRECTORS: The directors elected at the annual meeting of the shareholders shall meet immediately following each such meeting for the purpose of electing officers and considering any other business that may come before the board.

Other meetings of the directors may be held at such times, at such places and upon such notice as may be determined from time to time by the board.

A majority of the whole board of directors shall be necessary to constitute a quorum for the transaction of business at all meetings. *VI-A added aug 11, 1981*

VII.

MEETINGS OF THE SHAREHOLDERS: Meetings of the shareholders shall be held in the City of Corpus Christi, Nueces County, Texas, unless otherwise specified in the notice of any such meeting or waiver thereof.

All shareholders entitled to vote may vote at all meetings, either in person or by proxy in writing. All proxies shall be filed with the secretary of the meeting before being voted upon. A majority of the shareholders in amount of stock issued and outstanding, represented by the holders in person or by proxy, shall be requisite at all meetings to constitute a quorum for an election of directors or the transaction of other business.

The annual meeting of the shareholders shall be held on the second Tuesday of each August at 10 o'clock a.m. in each year, beginning with the year 1963, if not a legal holiday, and if a legal holiday, then on the day following, when they shall elect by a plurality vote, by ballot, a board of directors to serve for one year and until their successors are elected and have qualified, each shareholder being entitled to vote for each share of stock standing registered in his or her name on the twentieth day preceding the election, exclusive of the date of such election.

Notice of the annual meeting shall be mailed by the secretary to each shareholder entitled to vote at his or her last known post

office address, at least ten days prior to the meeting.

Special meetings of the shareholders may be called by the president, and shall be called at the request in writing or by vote of a majority of the board of directors or at the request in writing of the holders of a majority of the stock of the company issued and outstanding. Notice of each special meeting, indicating briefly the object or objects thereof, shall be mailed by the secretary to each shareholder at his or her last known post office address at least five days prior to the meeting.

## VIII.

STANDING COMMITTEES: The board of directors may appoint from their number, standing committees and may invest them with all their own powers, subject to such conditions as they may pre-scribe, and all committees thus appointed shall keep regular min-utes of their transactions and shall cause them to be recorded in books to be kept for that purpose in the office of the company and shall report the same to the board of directors at their regular meeting.

## IX. amended aug 11, 1981

OFFICERS: The officers of the company shall consist of a president, one or more vice presidents, a secretary and treasurer, and one or more assistant secretaries or treasurers, and such subordinate officers as may from time to time be elected or ap-pointed by the board of directors. Any person may hold more than one such office, except that the president and secretary shall not be the same person.

OFFICERS – HOW CHOSEN: At the first meeting after their election and annually thereafter beginning on the second Tuesday of August, 1963, the directors shall elect the officers of the corporation, such officers to hold office for one year and until their successors are elected and have qualified. They shall be subject to removal during their respective terms of office for cause and may be removed at any time by a majority vote of the directors then in office.

## XI.

PRESIDENT: The president shall be the chief executive officer of the company; he shall preside at all meetings of the directors; he shall have general and active management of the business of the company; and shall see that all orders and resolutions of the board are carried into effect. He shall execute all contracts and agreements authorized by the board. He shall have the general supervision and direction of all the other officers of the company and shall see that their duties are properly performed. He shall be ex-officio member of all standing committees and shall have the general powers and duties of supervision and management usually vested in the office of the president of a corporation.

The president shall submit a report of the operations of the company for the fiscal year to the directors at their first regular meeting in each year, and to the shareholders at their

annual meeting, and from time to time shall report to the directors all matters within his knowledge which the interests of the company may require to be brought to their notice.

XI-A - *added Aug 11, 1981*
XII *amended Aug. 11, 1981*

VICE PRESIDENT: Any vice president shall be vested with all the powers and shall perform all the duties of the president in his absence, and shall perform such other duties as may be prescribed by the board of directors.

XII-A *added Aug 11, 1981*
XIII.

SECRETARY: The secretary shall attend all sessions of the board and act as clerk thereof and record all votes and the minutes of all proceedings in a book to be kept by him for that purpose and shall perform like duties for the standing committees when required. He shall keep in safe custody the seal of the company and when authorized to do so shall affix the seal of said corporation to any instrument requiring the same, and the seal when so affixed shall be attested by the signature of the secretary.

He shall see that proper notice is given of all meetings of the shareholders of the company and of the board of directors and shall perform all such other duties as may be prescribed from time to time by the board of directors or the president.

XIV.

TREASURER: The treasurer shall keep full and accurate records of receipts and disbursements in books of accounts belonging to the company and shall deposit all money and other valuable effects in the name and to the credit of the company

in the depository or depositories designated from time to time by resolution of the board of directors.

He shall disburse funds of the company as may be ordered by the board, or the president, taking proper vouchers for such disbursements, and shall render to the president and directors at the regular meetings of the board, or whenever they may require it, an account of all his transactions as treasurer and of the financial condition of the company. He shall keep the accounts of stock registered and transferred in such form and manner and under such regulations as the board of directors may prescribe. If required by the board of directors, he shall give the company a bond in form and in a sum with security satisfactory to the board of directors, for the faithful performance of the duties of his office and the restoration to the company, in case of his death, resignation or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession belonging to the company. He shall perform such other duties as the board of directors may from time to time prescribe or require.

XV Amended Aug 11, 1981

VACANCIES: If the office of any director, or of the president, vice president, any secretary or treasurer or other officer or agent, one or more, becomes vacant by reason of death, resignation, retirement, disqualification, removal from office or otherwise, the directors in office, although less

than a quorum, by a majority vote, may choose a successor or successors who shall hold office for the unexpired term in respect of which such vacancy occurred.

XVI. *Amended Aug 11, 1981*

DUTIES DELEGATED: In the case of the absence of any officer of the company, the board of directors may delegate the powers and duties of such officer to any other officer or to any director for the time being.

XVII.

CERTIFICATE OF STOCK: Every shareholder shall have a certificate, signed by the president or vice president, and either the treasurer or the secretary, certifying the number of shares owned by him in such corporation.

XVIII.

TRANSFERS OF STOCK: All transfers of the stock of the company shall be made as required by the Uniform Stock Transfer Act. Certificates shall be surrendered and cancelled at the time of transfer. No transfer of stock shall be made within ten days next preceding the day appointed for paying a dividend.

XIX.

LOSS OF CERTIFICATES: In the case of loss or destruction of a certificate of stock, another may be issued in its place upon proof of such loss or destruction and the giving of a satisfactory bond of indemnity. The provisions of the Uniform Stock Transfer Act as to court order may be required.

XXI.

DIVIDENDS: Dividends upon the capital stock of the

company when earned may be declared by the board of directors at any regular or special meeting.  Before the payment of any dividends or making any distribution of profits there may be set aside out of the net profits of the company such sum or sums as the directors from time to time in their absolute discretion think proper as a reserve fund to meet contingencies, or for equalizing dividends, or for any such other purpose as the directors may think conducive to the best interest of the company.

## XXII.

CHECKS FOR MONEY:  All checks, drafts, or orders for the payment of money shall be signed as directed by resolution of the board of directors from time to time.

## XXIII.

DEPOSITORY:  A depository or depositories for the corporation shall be designated from time to time by the board of directors, and requested and directed to honor checks, drafts or other orders for the payment of money drawn in this corporation's name, including those payable to the individual order of any person or persons who name or names appear thereon as signed or signers thereof, when bearing or purporting to bear the signature of any person or persons authorized to sign the same by resolution of the board of directors, and said depository or depositories shall be entitled to honor and to charge this corporation with such checks, drafts, or other orders so drawn

until and unless such authority and designation is revoked by resolution of the board of directors of said corporation and upon due notice to said depository or depositories.

## XXIV.

BOOKS AND RECORDS: The books, accounts and records of the company shall be open to inspection by the shareholders at all reasonable times which are to be fixed by resolution of the board of directors.

## XXV. *Amended Aug 9, 1966*

NOTICE: Whenever under the provisions of the statute or by these bylaws notice is required to be given to any director, officer or shareholder, it shall not be construed to mean personal notice, but such notice may be given in writing by depositing the same in the post office or letter box in a postpaid, sealed wrapper, addressed to such director, officer or shareholder at his or her address as the same appears in the books of the corporation; and the time when the same shall be mailed shall be deemed to be the time of the giving of such notice.

## XXVI. *Amended Aug 9, 1966*

WAIVER OF NOTICE: Whenever any notice whatever is given or required to be given to any director, officer or shareholder, a waiver thereof in writing, signed by said shareholder, director, or officer, whether before or after the time stated in said waiver, shall be deemed equivalent thereto.

## XXVII.

AMENDMENT OF BYLAWS: These bylaws may be amended at any

time and from time to time by a majority of the entire board of directors then in office at any regular or special meeting of the board of directors or by the vote of a majority of the shareholders in amount of the stock then issued and outstanding at any regular or special meeting of the shareholders.

By-Laws approved as correct:

_Marvin L. Berry_
Marvin L. Berry, President

By-Laws attested as duly adopted:

_Mattie L. Boyce_
Mattie L. Boyce, Secretary-Treas.

## AMENDMENT TO THE BY-LAWS
## BERRY CONTRACTING, INC.

BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article XXV and XXVI be amended by adding the following phrase to said Article XXVI:

"Attendance in person or by proxy at any meeting of shareholders, either annual or special, shall constitute waiver of notice of such shareholders meeting and it will not be necessary for a formal written waiver of notice to be executed by such shareholders."

"Attendance in person at any directors meeting, whether annual, regular, special or called, shall constitute waiver of notice of call of such meeting and shall not be necessary for such director so attending in person to execute a formal written waiver of notice of same."

By-Laws adopted this 9th day of August, 1966, at the annual meeting of shareholders and a copy ordered signed and affixed to the By-Laws of the Corporation.

Certified correct:

ATTEST:

_Marvin L. Berry_

Marvin L. Berry, President and
Chairman of Shareholders Meeting

_Mattie L. Boyce_

Mattie L. Boyce, Secretary of
Shareholders Meeting and Secretary-
Treasurer of Corporation

NOTICE OF DIRECTORS MEETINGS:  No notice of annual meeting need be given directors.

IX
(As Amended)

OFFICERS:  The officers of the company shall consist of a President, an Executive Vice President, one or more Vice Presidents, a General Counsel, a Secretary and Treasurer and one or more assistant Secretaries or Treasurers and such subordinate officers as may from time to time be elected by the Board of Directors or appointed by the President.

X
(As Amended)

OFFICERS - HOW CHOSEN AND REMOVED:  The President, Executive Vice President, Vice Presidents and the Secretary of the Corporation shall be elected by the Board of Directors at either its annual meeting (to be held on the second Tuesday of August of each year immediately following the annual meeting of the Shareholders) and shall serve for one year or until their successors have been elected provided however, that vacancies may be filled or new officers elected at any special meeting of the Board of Directors called for such purpose.  All other Corporation employees shall be appointed by the President.  The salaries and emoluments of all officers shall be determined by the President subject only to the right of review by the Board of Directors on the written request of a majority of the entire Board of Directors, but provided that no such review shall have retroactive effect on any officer.  Any officer may be removed by a majority vote of the Board of Directors.

XI-A
(New Section)

EXECUTIVE VICE PRESIDENT:  There is hereby created the office of Executive Vice President,  The Executive Vice President shall be a person thoroughly familiar with the broad spectrum of activities and projects of the Corporation and its subsidiary entities and shall be a person knowledgeable in the business and professional affairs of the Corporation.  The Executive Vice President shall act for, as and in the place of the President in the event of absence or disability of the President.  In addition, the Executive Vice President shall supervise the Vice Presidents, the Secretary, managers, departments and activities as directed by the President and is vested with broad executive management of the Corporation subject to direction of the Board of Directors and the President.

XII
(As Amended)

VICE PRESIDENT:  If both the President and the Executive Vice President be absent, disabled or unable to serve or fulfill their duties, any vice president may and shall serve in the place of and perform all or any of the duties of the President and/or Executive Vice President; and shall, in addition, perform such regular and other duties, including supervision of departments, as may be prescribed by the Board of Directors or delegated or assigned by the President or Executive Vice President.

XII-A
(New Section)

GENERAL COUNSEL:  There is herewith created the office of General Counsel of Berry Contracting, Inc.  The person appointed General Counsel may be also designated as Vice President and shall receive such compensation and be employed on such terms and conditions as may be properly designated.  The General Counsel shall supervise the Legal Department of the Corporation, shall be responsible for and direct the legal affairs of the Corporation including drafting and preparation of documents and instruments, shall provide legal counsel to the Corporation, and shall direct and hangle litigation and shall

generally perform the duties of Corporate Attorney under the direction of the President, Executive Vice President and the Board of Directors. The General Counsel shall be a licensed attorney at law and a person schooled and knowledgeable in general corporation law and other activities in which the company engages. If the General Counsel is also named Vice President, he shall perform such executive duties as pertains to the office of Vice President and as be assigned and being in addition to that of General Counsel.

## XV
## (As Amended)

VACANCIES: If the office of any director or any officer becomes vacant by reason of death, resignation, retirement, disqualification or removal from office or otherwise, the Directors then in office, although less than a quorum may, by a majority vote, choose a successor or successors who shall hold such office for the unexpired term of such officer or officers and until their successors be nominated and elected.

## XVI
## (As Amended)

DUTIES DELEGATED: In the case of the absence of any officer of the Company, the Board of Directors or the President may delegate for temporary purposes the powers and duties of such officer to any other officer or to any other Director.

I, R. W. Black, being Secretary of Berry Contracting, Inc. do certify that the foregoing amendments to the Bylaws of Berry Contracting, Inc. were duly, lawfully and legally adopted at an annual meeting of the Board of Directors held pursuant to the Bylaws on the 11th day of August, 1981.

WITNESS my hand and the seal of the corporation.

_____
R. W. BLACK, Secretary

-3-

# AMENDMENT TO THE BY-LAWS
## BERRY CONTRACTING, INC.

BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article IV be amended as follows:

The Board of Directors shall consist of not less than two directors.

By-Laws adopted this 9th day of August 1982.

CERTIFIED CORRECT:

_____
Marvin L. Berry, President and
Chairman of Shareholders Meeting

ATTEST:

_____
D. E. Spangler, Secretary-Treasurer

# EXHIBIT C



P.O. Box 4858
1414 Valero Way
Corpus Christi, Texas
78469-4858
Bus: (361) 693-2100

May 30, 2023

Sean Strawbridge, Director
Port Of Corpus Christ
400 Harbor Drive
Corpus Christi, TX 78401

Dear Mr. Strawbridge,

After immense consideration, the principals at Berry G.P. have decided to open two strategic properties to the marketplace. The property's synergy directly enhances one another and will be packaged as one. This asset's development would greatly benefit the port and the immediate properties contiguous, thus Berry G.P. would like to offer this to the Port as a first option. The Port of Corpus Christi will be responsible for the offer, based on knowledge of future growth and economic strategy. Please be respectful in timing of response, as this divestment will be presented for open offers. Attached you will find surveys and legal descriptions for both tracts. Thank you very much.

Sincerely

Robert Rickett
Berry, G.P.
361-693-2841
409-771-1267
RickettR@Bayltd.com

# EXHIBIT D



# CERTIFICATE OF CORPORATE RESOLUTIONS
## OF
## BERRY GP, INC

I, M. G. Berry, Secretary of BERRY GP, INC, a Texas corporation (the "Corporation"), do hereby certify as follows:

1.  I am the duly elected and qualified Secretary of the Corporation and the custodian of the Corporation's records.

2.  Set forth below is a true and correct extract from the records of the Corporation showing resolutions duly adopted either: (a) at a meeting of its Board of Directors duly called and held, at which meeting a quorum was present and acting throughout, or (b) by unanimous written consent of the Board of Directors of the Corporation, which resolutions have not in any way been amended or modified and are in full force and effect:

    RESOLVED, that the President, any Vice President, or Secretary of the Corporation be and is hereby authorized and directed to obtain a loan in the amount of $20,000,000.00 from FROST BANK ("Lender"), upon such terms and conditions as the said officer shall in his or her sole discretion deem necessary or advisable; to execute and deliver on behalf of the Corporation all promissory notes, deeds of trust, security instruments, documents, certificates and agreements (collectively, the "Loan Documents") required by Lender, and to pledge as security for the loan such assets of the Corporation as such officer deems necessary or advisable; and to do any and all things in connection with such loan or any renewal, extension or rearrangement thereof that such officer deems necessary or advisable and in the best interests of the Corporation.

    FURTHER RESOLVED, that the President, any Vice President, or the Secretary of the Corporation be and hereby is authorized and empowered on behalf of the Company from time to time to execute, acknowledge and deliver any interest rate swap agreement, interest rate exchange agreement, currency exchange agreement, foreign exchange agreement, interest rate and currency exchange agreement, forward rate agreement, rate floor agreement, interest rate protection agreement, interest rate cap agreement, rate collar agreement, any option agreement respecting the foregoing, International Swaps and Derivatives Association, Inc. (ISDA) Master Agreement, or any similar agreement or arrangement and any schedule, confirmation, exhibit, document or instrument evidencing any interest in a transaction covered by any such agreement as the same may be modified, supplemented, amended or revised and in effect from time to time;

    FURTHER RESOLVED, that all acts of the President, any Vice President, or the Secretary of the Corporation authorized and directed herein, including the execution and delivery of the Loan Documents and all other documents referenced herein relating to the loan herein referenced, are reasonably expected to benefit, directly or indirectly,

the Corporation;

FURTHER RESOLVED, that the officers of the Corporation are hereby severally authorized to (a) sign, execute, certify to, verify, acknowledge, deliver, accept, file and record any and all instruments and documents, and (b) take, or cause to be taken, any and all such action, in the name and on behalf of the Corporation or otherwise, as in any such officer's judgment is necessary, desirable or appropriate in order to consummate the transactions contemplated by or otherwise to effect the purposes of the foregoing resolutions;

FURTHER RESOLVED, that all actions heretofore taken by the directors or the officers of the Corporation, and all things done by their authority, in connection with the transaction described herein, be and the same are hereby ratified, approved and adopted as the acts of the Corporation;

FURTHER RESOLVED, that said officers are authorized and empowered to perform all acts and execute and deliver all instruments, documents and agreements required by Lender to carry out the purposes of these resolutions;

3.  The following are duly elected, qualified and serving officers of the Corporation, and that the signature set out opposite the name of each officer is the genuine signature of such person, to-wit:

| Name | Title | Signature |
|------|-------|-----------|
| Robert Powers | President | |
| M. G. Berry | Secretary | |

4.  (a) all franchise and other taxes required to maintain the Corporation's corporate existence have been paid when due and that no such taxes are delinquent; (b) no proceedings are pending for the forfeiture of the Corporation's Certificate of Incorporation or the Corporation's dissolution, voluntary or involuntary; (c) the Corporation is duly qualified to do business in the State of Texas and any other states in which it is doing business, and is in good standing in such states; (d) there is no provision of the Articles of Incorporation or Bylaws of the Corporation limiting the power of the Board of Directors to pass the resolutions set out above, and that such resolutions are in conformity with the provisions of said Articles of Incorporation and Bylaws.

IN WITNESS WHEREOF, I have hereto set my hand this 29th day of June, 2023.

M. G. Berry, in the capacity of Secretary

# SUPPLEMENTAL APPENDIX 3

REPORTER'S RECORD
TRIAL COURT CAUSE NO. 2024DCV-0045-C

LAWRENCE BERRY,                  )        IN THE DISTRICT COURT
Individually and                 )
derivatively on behalf           )
of BERRY GP, INC.                )
                                 )
  Plaintiff,                     )
                                 )
BERRY GP, INC.,                  )
                                 )        94TH JUDICIAL DISTRICT
  Nominal Plaintiff,             )
                                 )
v.                               )
                                 )
MARTY BERRY, ROBERT              )
RICKETT, ROBERT POWERS,          )
MICHAEL HUMMELL, BERRY           )
GP, INC., BERRY                  )
OPERATING COMPANY, LLC           )
and BERRY CONTRACTING            )
LOP                              )
                                 )
  Defendant                      )        NUECES COUNTY, TEXAS

_____

MOTION FOR TEMPORARY INJUNCTION
_____

On February 16, 2024, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE BOBBY GALVAN, Judge Presiding, held in Corpus Christi, Nueces County, Texas..

Proceedings reported by Machine Shorthand.

from previous hearings, there was a TRO down in Houston, which was turned into an agreed TRO when the case was transferred here. That had an injunction against sales and against modifying the composition of the board and the idea was that it would remain in effect till this Court could hear and decide the issue.

Here today, Your Honor, we have narrowed the relief we are requesting, if we go to the next slide. What we're asking at this point, Your Honor, through the trial of this case is two things: One, that defendants be enjoined from removing Lawrence Berry from the board of directors. That's critical. Their ability to remove -- and let me say, in agendas for shareholder meetings and board meetings, they've talked about consideration -- on the agenda, consideration of removal or addition of board members and board member actions, et cetera. No question that's on their -- on their plans, on their minds and in their plans. Removal would keep Lawrence Berry even further in the dark about what the company's doing and any insider transactions.

The second thing we're asking for in this -- in this targeted relief, Your Honor, is again, just two weeks notice of a sale of real property, just two weeks written notice with details about what the sale will involve. What that will allow Lawrence Berry

to do, is if there is something untoward or something where it's appropriate, he could come to the Court and, you know, challenge or complain about the transaction. If not, he wouldn't. But he would have the information, he would have notice. That is not an onerous thing to ask of the company and not something that's going to keep the company from going about its business. These folks can and have outvoted him on issues. That's not why we're here.

On the temporary injunction standard, Your Honor, if we go to the next slide, the Court is well familiar with the requirements for that. I want to hone in on the elements of the probable injury piece which has subcategories, if we can go to the next slide.

Importantly, Your Honor, we need not, and we cite the *Intercontinental Terminals* case to you. We need not show that we will prevail. We think the evidence you'll see points you in that direction, but that's not the standard here today. We have to show that the causes of action are there and that we've got some evidence that tends to sustain them. And we believe that the evidence that's going to be presented to this Court will well meet that standard.

The second bullet there is critical, though here, fiduciary self-dealing context, and that's where

THE BAILIFF: All rise, please.

(Recess.)

THE COURT: Okay. Are we ready? Let's do it. Witness back on stand. Mr. Berry is still under oath. You-all can be seated. Are we ready?

MR. REASONER: Yes, Your Honor, we're ready.

THE COURT: Okay. Let's do it. You may proceed.

MR. BOYD: Thank you, Your Honor.

DIRECT EXAMINATION (CONTINUED)

BY MR. BOYD:

Q. Lawrence, when we took our break, we were looking at PTX11 which has been admitted. Could you tell the Court what this letter is about?

A. It's a letter to Sean Strawbridge from Robert Rickett. It states that the principals of Berry GP have decided to open two strategic properties to the marketplace.

Q. Okay. Is this the first time that you learned it was an active marketing campaign for the Berry dock?

A. Yes, sir.

Q. Okay. And this was presented to you by whom at the Port?

A. Well, I went down to talk about moving that

bulkhead line with Kent and there was a couple of other Port guys there, I can't remember whom, and in the process I said I want to know what the status is. They said, why would you care, you're selling it? I go, no, but the dock's not for sale. They say, yeah, it is. I said, no, it's not. They start laughing, and say, yeah, it is. And they said, we'll give me a second and they came back with the letter.

Q. And you had never seen this letter?

A. No, sir, I did not, had not. In thinking that this property was incremental for the business, you know, you're going to make -- you're going to lock up, you know, a lot of infrastructure that you can't use it anymore without the dock.

Q. And I understand this meeting took place on November 14th of 2023; does that comport your memory?

A. I believe so.

Q. Okay. The first sentence of Mr. Rickett's letter to Mr. Strawbridge -- and by the way, was Sean Strawbridge at the Port on May 30th of 2023, or had he already severed --

A. No, he was still there then, I believe.

Q. Okay. "After immense consideration, the principals at Berry GP have decided to open two strategic properties to the marketplace." It talks

about synergy.  The two properties are the Berry dock and then that 16-acre tract close to the Berry dock, right?

A.   Yes, sir, that we commonly refer to as the Citgo property.

Q.   Right.  Would you agree, those properties are synergist?

A.   Yes, sir.

Q.   Does that provide Berry entities with strategic operations to combine a facility of some sort on the 16 acres with the Berry dock?

A.   Yes, sir.

Q.   And what was the purpose of you wanting to discuss the bulkheads; what does that do to the Berry companies?

A.   Decreases the cap X on the ship dock.

Q.   And why is that?

A.   Because you don't have to tear out the existing dock ideally.

Q.   I want to go to the first phrase or the first sentence.  "After immense consideration, the principals at Berry GP."  First, who are the principals at Berry GP?

A.   Marty, Dennis and -- the Estate of Dennis Berry and Lawrence at this time.

Q. On May 30th, 2023, it would have been Marty, yourself and Dennis Berry?

A. Yes, sir.

Q. Okay. Were you ever given an opportunity for immense consideration for this letter to go out?

A. No, sir.

Q. Okay. Did you ever decide to open two strategic properties to the marketplace?

A. Not for sale.

Q. So you had no idea this had been presented to the Court?

A. No, sir, I did not.

Q. You did understand that perhaps Marty, and perhaps Dennis, might have disagreed with you?

A. Yes, sir.

Q. Okay. Would you have liked to have had the opportunity to have an in-depth discussion before this was actually proffered to the Port of Corpus Christi?

A. Yes, I told them whenever, after I found out about it, I told them at the time that they couldn't sell the property because it was their lender's now.

Q. Okay. There have been occasions where you have made specific requests of management to provide you certain information, correct?

A. Yes, sir.



P.O. Box 4858
1414 Valero Way
Corpus Christi, Texas
78469-4858
Bus: (361) 693-2100

May 30, 2023

Sean Strawbridge, Director
Port Of Corpus Christ
400 Harbor Drive
Corpus Christi, TX 78401

Dear Mr. Strawbridge,

After immense consideration, the principals at Berry G.P. have decided to open two
strategic properties to the marketplace. The property's synergy directly enhances one
another and will be packaged as one. This asset's development would greatly benefit the
port and the immediate properties contiguous, thus Berry G.P. would like to offer this to
the Port as a first option. The Port of Corpus Christi will be responsible for the offer,
based on knowledge of future growth and economic strategy. Please be respectful in
timing of response, as this divestment will be presented for open offers. Attached you
will find surveys and legal descriptions for both tracts. Thank you very much.

Sincerely,

Robert Rickett
Berry, G.P.
361-693-2841
409-771-1267
RickettR@Bayltd.com

Safety ■ Quality ■ Productivity
*The Winning Combination*

PTX
11

BAY 001342

## METES AND BOUNDS DESCRIPTION OF A
## 16.11 ACRE TRACT OF LAND

BEING 16.11 acre tract of land, more or less out of a 56.359 acre tract conveyed by Kathleen Jones Alexander, et al., to Champlin Petroleum Company as described in Volume 1540, Page 766 of the Deed Records of Nueces County, Texas, said 56.359 acre tract being out of a 1783.33 acre tract as Recorded in Volume 868, Page 578 of the Deed Records of Nueces County, Texas, said 16.11 acre tract, as shown in the attached exhibit, being more particularly described as follows:

COMMENCING at a found one inch iron pipe for the northeast corner of the aforesaid 56.359 acre tract in the south line of the Missouri Pacific Railroad right-of-way;

THENCE, leaving said south line and entering the aforesaid 56.359 acre tract, S 60°45'33" W 354.99 feet to a set 5/8 inch iron rod for the POINT OF BEGINNING;

THENCE, along new division lines, N 13°04'30" W 36.49 feet to a set 5/8 inch iron rod, N 48°54'29" W 44.71 feet to a set 5/8 inch iron rod, N 68°18'39" W 577.43 feet to a set 5/8 inch iron rod, S 46°28'42" W 271.79 feet to a set 5/8 inch iron rod, S 36°28'32" W 668.79 feet to a set 5/8 inch iron rod, S 11°31'32" E 24.68 feet to a set 5/8 inch iron rod, S 55°46'19" E 691.89 feet to a set 5/8 inch iron rod, N 35"03'36" E 967.33 feet to set 5/8 inch iron rod, and N 30°43'07" E 79.29 feet to the POINT OF BEGINNING, and containing 16.11 acres of land, more or less.

NOTE:     Bearings in the above description are based on the found northeast line of that 56.359 acre tract as recorded in Volume 1540, Page 766 of the Deed Records of Nueces County, Texas.

T:\MD5544\FORMFILE.DEED.5

BAY 001343



MAP OF
# FOUR EASEMENTS
## CITGO PROPERTY
### RINCON DEL OSO GRANT
NUECES COUNTY, TEXAS

Prepared By:
Bass & Welsh Engineering
Corpus Christi, Texas

BAY 001344

11-04-1996
JOB 96062
96062I.DWG
SCALE: 1"=300'

TULE LAKE TURNING BASIN

PORT OF CORPUS CHRISTI AUTHORITY

15.898 Acres
Volume 1540, Page 763
Deed Records, Nueces County, Texas

Easement No. 1
2.225 Ac.

TEMPORARY ACCESS EASEMENT

5.39 Acres

56.359 Acres
Driscoll "A" Tract
Volume 2142, Page 803
Deed Records, Nueces County, Texas

16.11 Acres
Clerk's File No. 19950008153
Deed Records, Nueces County, Texas

Easement No. 2
0.1616 Ac.

Easement No. 3
0.3066 Ac.

Easement No. 4
0.1077 Ac.

Existing Roadway

UNION PACIFIC RAILROAD





**PLAN**
SCALE: 1"=20'-0"

| REV | JOB | REVISIONS DESCRIPTION | OWN | CHKD | APPR | DATE |
|-----|-----|----------------------|-----|------|------|------|
| △ | 121 | REVISED DIMENSIONS & ADD ARROW HEADS | MEB | JBC | | 7-8-77 |
| △ | 121 | REVISED & ADDED PILING IN END OF SLIP | MEB | JBC | | 7-23-77 |
| △ | 121 | REVISED & ADDED PILING & DIMENSIONS IN END OF SLIP | MEB | JBC | | 7-27-77 |
| △ | 121 | REVISED CORNER | C.F. | MEB | | 8-1-77 |
| △ | 121 | REVISED DIMENSIONS, ADDED EXPANSION JOINTS & CHANGE 10 SPA. TO 9 SPA. | MEB | JBC | | 9-9-77 |
| △ | 121 | | | | | |
| △ | 121 | REVISED REFERENCE DIMENSIONS | GN | JBC | JBC | |

Redco
Childers Engineering Co. & Associates, Inc.
11221 BUCCANEER LANE   SUITE 200
HOUSTON, TEXAS 77000

DESIGN   J. CHILDERS
DATE   7-7-77
CHCK BY   JBC
DATE   10-11-77

DRAWN   DRANOT
DATE   7-8-77
APPROVE
DATE

JOB NUMBER   76121
SCALE:   NOTED

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78409

LAYOUT OF WOOD PILES
& PILING DETAILS
BERRY BARGE DOCK AND FABRICATION YARD

SHEET: 2 OF 17   DRAWING NUMBER   762121



ELEVATION OF DOCK BUMPERS AT INBOARD RAMP EDGE
VIEW LOOKING SAME DIRECTION AS SECTION, SEE SHEET 7
SCALE: 1/2"=1'-0"

DETAIL ① TYPICAL DOCK BUMPER ANCHOR BOLT ARRANGEMENT
SCALE: 3/4"=1'-0"

SECTION Ⓐ
SCALE 1/8"=1'
RAMP SECTION SHOWING TYP. ARRANGEMENT OF REINF. STEEL AT TENSION PILES

| REV | JOB | REVISIONS DESCRIPTION | OWN | CHKD | APPR | DATE | | BERRY CONTRACTING, INC. |
|-----|-----|------------------------|-----|------|------|------|--|---------------------------|
| | 123 | GENERAL REVISIONS | JCB | JCB | | 8-18-77 | | 1414 CORN PRODUCTS RD. |
| | 123 | RELEASED FOR CONSTRUCTION BIDS | WEB | LI | JBC | 10-8-77 | | CORPUS CHRISTI, TEXAS 78408 |
| | 123 | REVISED FOR CONSTRUCTION BIDS | WEB | LI | JBC | 10-9-77 | | |
| | 123 | REVISE DIMS, CORRECT DETAILS | WEB | JBC | JBC | 10-11-77 | | SECTION & DETAILS |

DESIGN J. CHILDERS   DRAWN CHILDERS/BRANDT
DATE 8-8-77          DATE 8-8-77

CHK BY J.B.C.        APPROVD
DATE 10-11-77        DATE

Childers Engineering Co. & Associates, Inc.
HOUSTON, TEXAS 77008

OF DRIVE-OFF RAMP
BERRY BARGE DOCK AND FABRICATION YARD

JOB NUMBER 76123   SCALE NOTED   SHEET: 3 OF 17   DRAWING NUMBER 7621?



LAYOUT OF SHEET PILING AND CORNER DETAILS
BERRY BARGE DOCK AND FABRICATION YARD

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408



SECTION A / 14 (SHOWING TYPICAL SECTION THRU DOCK SLAB)
SCALE: 3/4"=1'-0"

SECTION B / 14 (TYPICAL AS SHOWN FOR RELIEVING PLATFORM No. A)
SCALE: 1/2"=1'-0"

SECTION C / 14 (TYPICAL AS NOTED FOR RELIEVING PLATFORM No. B)
SCALE: 1/2"=1'-0"

SECTION D / 14
SCALE: 3/4"=1'-0"

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

TYPICAL TRANSVERSE
SECTIONS OF DOCK

BERRY BARGE DOCK AND FABRICATION



SECTION F
SCALE: 3/4"=1'-0"
SHOWING DETAILS OF TYPICAL EXPANSION JOINTS, DOWELS & SLIP PLANES

SECTION D
SCALE: 3/4"=1'-0"

SECTION G
SCALE: 1/2"=1'-0"
SECTION THROUGH SOUTH
END OF SECTION E

FRONT ELEVATION OF RAMP WALL & CAPS

SECTION E
SCALE: 3/8"=1'-0"

SECTION B
SCALE: 3/8"=1'-0"

SECTION A
SCALE: 3/4"=1'-0"
THROUGH INTERIOR RAMP BEAM

SECTION C
SCALE: 1/4"=1'-0"
SIDE ELEVATION OF RAMP WALL

BERRY CONTRACTING, INC.
M14 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

TYPICAL INTERIOR BEAMS, EDGE BEAMS
AND EXPANSION JOINTS SECTIONS
BERRY BARGE DOCK AND FABRICATION YARD

JOB NUMBER 76121    SCALE: NOTED    SHEET 6 OF 17

| REV | JOB | REVISIONS DESCRIPTION | DWN | CHKD | APPR | DATE |
|---|---|---|---|---|---|---|
| △ | 121 | RELEASED FOR CONSTRUCTION BIDS | WEB | LI | JBC | 9-13-77 |
| △ | 121 | REVISED FOR CONSTRUCTION BIDS | WEB | LI | JBC | 10-24-77 |
| △ | 121 | ADDED DIMENSION | WEB | LI | JBC | 10-31-77 |
| △ | 121 | REVISED FOR REINF. STEEL FABRICATION | WEB | LI | JBC | 11-8-77 |
| △ | 121 | REVISED DIMENSION | WEB | LI | JBC | 11-16-77 |

DESIGN: J. CHILDERS  DATE 9-8-77
CHKD BY: J.B.C.  DATE 10-11-77
DRAWN: CHILDERS/INGRAM  DATE 9-23-77





PLAN OF SECTION C
SCALE: 1/8"=1'-0"

PLAN OF SECTION D
SCALE 1/8"=1'-0"

NOTE: SEE SECTIONS FOR ADDITIONAL REINFORCING STEEL NOT SHOWN ON PLAN

NOTE: SEE DETAIL FOR SPACING OF WOOD FENDER ANCHOR BOLTS

BERRY CONTRACTING INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78409

PLAN OF CONCRETE APRON
SECTIONS C & D
BERRY BARGE DOCK AND FABRICATION YARD



PLAN OF SECTION E
SCALE: 1/8"=1'-0"

PLAN

SECTION

TYPICAL PILING DETAIL AT DOCK CORNERS
SCALE: 1/2"=1'-0"   TYPICAL FOR 31 PILINGS

NOTE: SEE SECTIONS FOR
ADDITIONAL REINFORCING ETC.
DETAILS NOT SHOWN ON PLAN.

| REV | JOB | REVISIONS DESCRIPTION | DWN | CHKD | APPR | DATE |
|-----|-----|----------------------|-----|------|------|------|
| | 121 | RELEASED FOR CONSTRUCTION BIDS | MEB | LI | JBC | 10-11-77 |
| | 121 | REVISED FOR CONSTRUCTION BIDS | MEB | LI | JBC | 10-26-77 |
| | 121 | REVISED FOR REINF. STEEL FABRICATION | DEP | LI | JBC | 11-6-77 |
| | 121 | DELETED DETAILS & ADDED CONCRETE CLEARANCES. | MEB | LI | JBC | 12-21-77 |

Childers Engineering Co. & Associates, Inc.
HOUSTON, TEXAS 77060

DESIGN  J. CHILDERS      DRAWN  INGRAM/BRANDT
DATE    9-12-77          DATE   9-15-77
CHKN BY J.B.C.           APPROVE
DATE    10-11-77         DATE

JOB NUMBER 76121         SCALE: NOTED

BERRY CONTRACTING INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

PLAN OF CONCRETE APRON
SECTION "E"
BERRY BARGE DOCK AND FABRICATION YARD

SHEET: 9 OF 17     DRAWING NUMBER  76121



PLAN
SCALE 1"=40'

47 TIEBACKS REQ. TOTAL

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

DOCK LAYOUT & RELIEVING PLATFORMS PLAN
SHOWING POST-TENSIONED TIES ARRANGEMENT
BERRY BARGE DOCK AND FABRICATION YARD

SHEET 10 OF 17



SECTION A
SCALE: 1/2"=1'-0" 20  (TYPICAL AS SHOWN FOR RELIEVING PLATFORM NO. A)

SECTION B
SCALE: 1/2"=1'-0" 20  (TYPICAL AS NOTED FOR RELIEVING PLATFORM NO. B)

TYPICAL LONGITUDINAL SECTIONS OF HARDSTANDS

SECTION C
SCALE: 1/2"=1'-0" 20

SECTION D
SCALE: 3/4"=1'-0" 20

ELEVATION OF TYPICAL FRONT BEAM SHOWING EXPANSION JOINTS

SECTION E
SCALE: 3/8"=1'-0" 20

ELEVATION OF TYPICAL REAR BEAM SHOWING EXPANSION JOINTS

SECTION F
SCALE: 3/4"=1'-0" 20

TYPICAL SECTION THRU POST TENSION STRUTS

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

MISCELLANEOUS CONCRETE SECTIONS &

BERRY BARGE DOCK AND FABRICAT

DESIGN J. CHILDERS   DRAWN BRANDT
DATE 9-19-77   DATE 9-23-77
CHKD BY J.B.C.   APPROVE
DATE 10-11-77   DATE

JOB NUMBER 76121   SCALE: NOTED   SHEET 11 OF 17





PLAN OF SABER DOCK INTERFACE

SECTION A

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78409

TYPICAL SECTION OF DRIVE
OFF RAMP & RAMP DETAILS
BERRY BARGE DOCK AND FABRICATION



OBSOLETE

USE

CHANGE PENDING
HOLD

ELEVATION

PARTIAL PLAN OF MOORING BOLLARD

TYP ELEV. OF FENDER SYSTEM

PARTIAL PLAN OF FENDER SYSTEM

SECTION A
SHOWING TYPICAL
FENDER SYSTEM DETAILS

BERRY CONTRACTING INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

DOCK FENDER SYSTEM ELEVATIONS,
TYPICAL SECTIONS AND DETAILS
BARGE DOCK AND FABRICATION YARD

SHEET 14 OF 17



NORTHWEST CORNER DETAIL
SCALE: 1" = 1'-0"

NORTHEAST CORNER DETAIL
SCALE: 1" = 1'-0"

EDGE OF CONC. DOCK

EDGE OF CONC. DOCK

| REV | JOB | REVISIONS DESCRIPTION | OWN | CHKD | APPR | DATE |
|---|---|---|---|---|---|---|
| 0 | 123 | RELEASED FOR CONSTRUCTION BIDS | NEB | JBC | JBC | 10-12-77 |

CHENCO  Childers Engineering Co. & Associates, Inc.
HOUSTON, TEXAS 77055

DESIGN  J. CHILDERS
DATE  9-12-77
CHKD BY J.B.C.
DATE  10-11-77

DRAWN  INGRAM
DATE  9-16-77
APPROVE
DATE

JOB NUMBER  76121
SCALE : NOTED

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

SHEET PILING CORNER DETAILS
FOR MODIFIED FENDER SYSTEM
BERRY BARGE DOCK AND FABRICATION.

SHEET  13 OF 17      DRAWING NUMBER  7620



PLAN
SCALE: 1"=1'-0"

ALTERNATE SECTION A
SCALE: 1/4"=1'-0"
UPPER SECTION SHOWING TRIPOD BREASTING DOLPHIN (DETAILS ONLY)

SECTION A
SCALE: 1/4"=1'-0"

CANTILEVER BREASTING DOLPHIN SHOWN
TRIPOD BREASTING DOLPHIN NOTED

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

DETAILS OF CORNER BREASTING FENDER
FOR MODIFIED FENDER SYSTEM
BERRY BARGE DOCK AND FABRICATION

| REV | | REVISIONS DESCRIPTION | DWN | CHKD | APPR | DATE |
|-----|---|---|---|---|---|---|
| 0 | | RELEASED FOR CONSTRUCTION BIDS | MEB | LI | JBC | 10-12-77 |

DESIGN  J. CHILDERS
DATE  9-12-77
CHK BY  J.B.C.
DATE  10-11-77

DRAWN  INGRAM
DATE  9-16-77
APPROVE
DATE

JOB NUMBER 76121
SCALE: NOTED
SHEET 15 OF 17
DRAWING NUMBER 76225



SECTION A 26
SCALE: 1/2"=1'-0"

ALTERNATE PLAN OF NORTHEAST CORNER
SCALE 1/8"=1'-0"

ALTERNATE PLAN OF NORTHWEST CORNER
SCALE 1/8"=1'-0"

DETAIL 2 25
SCALE: 1/2"=1'-0"

DETAIL 1 25
SCALE: 1/2"=1'-0"

SECTION B 26
SCALE: 1/2"=1'-0"

| REV | JOB | REVISIONS DESCRIPTION | DWN | CHKD | APPR | DATE |
|---|---|---|---|---|---|---|
| 0 | 121 | RELEASED FOR CONSTRUCTION BIDS | MES | LI | JBC | 10-13-77 |
| 1 | 121 | REVISED FOR CONSTRUCTION BIDS | MES | DP | JBC | 10-24-77 |

Sanders Engineering Co. & Associates, Inc.
HOUSTON, TEXAS

| DESIGN | J. CHILDERS | | DRAWN | BRANDT |
|---|---|---|---|---|
| DATE | 9-12-77 | | DATE | 9-16-77 |
| CHKD BY | J.B.C. | | APPROVE | |
| DATE | 10-11-77 | | DATE | |

JOB NUMBER 76121    SCALE: NOTED

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78409

PLAN OF CONCRETE APRON SECTION
D & E W/ ALTERNATE CORNERS
BERRY BARGE DOCK AND FABRICATION YA.

SHEET 17 OF 17    DRAWING NUMBER 76208





PLAN
SCALE: 1"=30'-0"

| REV | JOB | REVISIONS DESCRIPTION | DWN | CHKD | APPR | DATE |
|-----|-----|------------------------|-----|------|------|------|
| △ | 121 | REVISED DIMENSIONS & ADD ARROW HEADS | NES | JBC | | 7-22-77 |
| △ | 121 | REVISED & ADDED PILING IN END OF SLIP | NES | JBC | | 7-25-77 |
| △ | 121 | REVISED & ADDED PILING & DIMENSIONS IN END OF SLIP | NES | JBC | | 8-17-77 |
| △ | 121 | REVISED CORNER | E.L. | MPB | | 8-3-77 |
| △ | 121 | REVISED DIMENSIONS, ADDED EXPANSION JOINTS & CHANGE 10 SPA. TO 9 SPA. | NES | JBC | | 8-18-77 |
| △ | 121 | REVISED DIMENSIONS & EXPANSION JOINT LOCATIONS | LI | JBC | | 9-23-77 |
| △ | 121 | RELEASED FOR CONSTRUCTION | NES | LI | JBC | 10-11-77 |

Childers Engineering Co. & Associates, Inc.
10021 BUCCANEER LANE    SUITE 200
HOUSTON, TEXAS 77099

| DESIGN | J. CHILDERS | DRAWN | BRANDT |
| DATE | 7-7-77 | DATE | 7-8-77 |
| CHCK BY | J.B.C. | APPROVE | |
| DATE | 10-11-77 | DATE | |
| JOB NUMBER | 76121 | SCALE: | NOTED |

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

LAYOUT OF WOOD PILES
& PILING DETAILS
BERRY BARGE DOCK AND FABRICATION YARD

SHEET: 2 OF 17

DRAWING NUMBER 76121



SECTION $\overset{A}{\underset{12}{}}$
SCALE: 1/4"=1'

RAMP SECTION SHOWING TYP. ARRANGEMENT OF REINF. STEEL AT TENSION PILES

DETAIL $\overset{1}{\underset{12}{}}$
SCALE: 3/4"=1'-0"   TYPICAL DOCK BUMPER ANCHOR BOLT ARRANGEMENT

| REV | JOB | REVISIONS DESCRIPTION | DRN | CHKD | APPR | DATE |
|-----|-----|----------------------|-----|------|------|------|
| △ | 121 | GENERAL REVISIONS | JBC | JBC | JBC | 8-12-77 |
| △ | 121 | RELEASED FOR CONSTRUCTION BIDS | MES | LI | JBC | 10-2-77 |
| △ | 121 | REVISED FOR CONSTRUCTION BIDS | MES | LI | JBC | 10-24-77 |

RENGO

Childers Engineering Co. & Associates, Inc.
10691 BUCCANEER LANE   SUITE 200
HOUSTON, TEXAS 77066

DESIGN  J. CHILDERS        DRAWN  CHILDERS/BRANDT
DATE    6-8-77             DATE   6-8-77
CHK BY  J.B.C.            APPROVE
DATE    10-11-77          DATE

JOB NUMBER 7621           SCALE  NOTED

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

SECTION & DETAILS
OF DRIVE-OFF RAMP
BERRY BARGE DOCK AND FABRICATION YARD

SHEET 3 OF 17   DRAWING NUMBER 762 REV 80204



BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

LAYOUT OF SHEET PILING
AND CORNER DETAILS

BERRY BARGE DOCK AND FABRICATION YARD



Do Not Use

BERRY CONTRACTING, INC.
1414 CORN PRODUCTS RD.
CORPUS CHRISTI, TEXAS 78408

LAYOUT OF SHEET PILING
AND CORNER DETAILS
BERRY BARGE DOCK AND FABRICATION YARD



# SUPPLEMENTAL APPENDIX

# 4

REPORTER'S RECORD
TRIAL COURT CAUSE NO. 2024DCV-0045-C

| | | |
|---|---|---|
| LAWRENCE BERRY, Individually and Derivatively on behalf of BERRY GP, INC. | ) ) ) ) | IN THE DISTRICT COURT |
| Plaintiff | ) ) | |
| BERRY GP, INC., Normal Plaintiff | ) ) ) | 94TH JUDICIAL DISTRICT |
| VS. | ) ) ) | |
| MARTY BERRY, ROBERT RICKETT; ROBERT POWERS; MICHAEL HUMMELL; BERRY GP, INC.; BERRY OPERATING COMPANY, LLC; and BERRY CONTRACTING, LOP | ) ) ) ) ) ) | NUECES COUNTY, TEXAS |

_____

TEMPORARY INJUNCTION HEARING

(March 22, 2024)

_____

background, tell me what you -- what your role was when you first joined up with Berry and how you came to be employed by Berry?

A. Okay. Yes, so I was working for Coastal as a contracts administrator on a project that Berry was on. The project manager approached me for a job when the work was done, and I worked as an executive assistant at Berry GP for two years in Corpus Christi, and then I moved to Houston to open the Friendswood yard. I worked directly for Lawrence, from that point forward, on the same thing that I'm doing now, basically, development projects.

Q. Okay. And how long have you worked out of the Houston office of -- of Berry?

A. That's a good question. I would have to say, it's 20 -- since 2006; since 2006 --

Q. Okay.

A. -- maybe.

Q. Okay. And very generally can you tell us what your job duties were with Berry, over the past few years of your employment?

A. Okay. So, we worked on international project development, funding development on large projects. We did a large Canadian project. We did some other projects in -- like in Proman, Valenzuela, things of

that nature.  Most recently we've been working on the Lone Star Ports project.  It's been quite an ordeal, I don't know mind telling you.  I did a lot of stuff directly for the trust, for Canada project holdings and for Berry Y & V.  There is still a lot of wind-down stuff that I'm working on, related to that.

Q.   Okay.  And you said -- I think you said front end development, that means pursuing projects?

A.   Yes, sir.

Q.   And setting them up?

A.   Yes, putting them together, the concepts, the relationships.

Q.   Okay.  Did you have supervisory responsibilities in the Houston office, for Berry GP?

A.   Yes, I did; not for Berry GP so much, as I was -- unofficially had responsibility for Berry Y & V Fabricators and the personnel, and the office management of that.  I liked to say, more or less, I'm air traffic control.  So if it hits my desk, it's got a good chance of getting somewhere it's supposed to be.

Q.   Did the employees in the Houston office report to you?

A.   Yes, sir.

Q.   And you reported directly to Lawrence Berry?

A.   Yes.

# SUPPLEMENTAL APPENDIX

# 5

CAUSE NO. 2024-76060

| | | |
|---|---|---|
| ALBERT THEODORE POWERS and ALLIED PORTS LLC | § § § | IN THE DISTRICT COURT |
| v. | § § | |
| | § | 215TH JUDICIAL DISTRICT |
| AXIS MISTREAM HOLDINGS, LLC, ALLEN LAWRENCE BERRY, MARVIN GLENN BERRY, and BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | HARRIS COUNTY, TEXAS |

---

### DEFENDANTS' MOTION TO TRANSFER VENUE

---

COME NOW, Marvin Glenn Berry (M.Berry) and Bonnie Berry ("Berry Defendants"), and file this motion to transfer venue for this case to Nueces County District Court.

### INTRODUCTION

1. The county where this action is pending is not a proper county for suit. Section 15.011 of the Texas Civil Practice & Remedies Code mandates that a suit involving a dispute over real property be brought in the county where all or part of the real property is located. The real property at issue is located in Nueces and San Patricio counties. Venue is mandatory in Nueces County, Texas.

2. The Berry Defendants specifically deny all Plaintiffs' venue allegations. The Compensation and Investment Agreements do not constitute major transactions, the events giving rise to the TRO and claims in this suit did not occur in Harris County, and Lawrence Berry ("Lawrence") is a sham defendant as Plaintiffs' petition does not allege any wrongdoing by Lawrence; rather, it alleges his interests are aligned with plaintiffs' interests.

3. In the alternative, defendants ask the Court to exercise its discretion and transfer this case to Nueces County for the convenience of the parties and witnesses and in the interests of

justice pursuant to Section 15.002(b) of the Texas Civil Practice & Remedies Code.

## ARGUMENTS & AUTHORITIES

**A.     CPRC 15.011 mandates suit be filed in a county where real property is located.**

4.      Venue in this case is governed by Texas' mandatory venue provision for disputes over real property. Tex. Civ. Prac. & Rem. Code § 15.011. This suit involves a dispute over ownership interest in a crude oil delivery system and terminal project ("Project") that consists of "certain **real property and improvements** currently owned, leased, optioned, or otherwise controlled by the Berrys." (Pls.' Ex. 2, Investment Agreement, at pg. 1.) Plaintiffs seek a declaration they own a 20% interest in the real property pursuant to the Investment Agreement. (Pls.' Orig. Pet. at ¶ 26(c).) Additionally, the TRO entered by the Court prevents the Berry Defendants from exercising their ownership interest in their real property. (TRO at 2.) As set forth in the attached affidavit, all or part of the real property that is the subject of this suit is located in Nueces County. (Hummell Aff. at ¶3.) As this suit involves an interest in real property, section 15.011 requires suit be brought in Nueces County where all or part of the real property is located.

**B.     CPRC 15.020 does not apply, as the agreements are not "major transactions."**

5.      Plaintiffs assert venue is proper in Harris County under CPRC 15.020 as that is the venue specified in the Compensation and Investment Agreements.[1] (Pls.' Ex. 2 at pg. 4). Section 15.020, however, only applies where the stated consideration of the contract is greater than $1 million. Tex. Civ. Prac. & Rem. Code § 15.020. "Under section 15.020(a), the parties' written agreement must state the aggregate value of the consideration and obligate a person to pay or receive the stated consideration." *Hughes v. Pearcy*, No. 03-10-00319-CV, 2014 Tex. App. LEXIS

---

[1]      Of note, Lawrence was the only person to sign the agreements, and he signed in his individual capacity. None of the other Berry defendants (Axis Midstream Holdings, LLC, Marvin Glenn Berry, and Bonnie Berry) signed the Compensation or Investment Agreements. Their signature lines are blank, and the agreements cannot be enforced against a non-signatory.

13059, at *7–8 (Tex. App.—Austin Dec. 8, 2014, no pet.); *see also In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 Tex. App. LEXIS 7949, 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, no pet.) (mem. op.) (venue selection clause unenforceable where extraneous evidence showed purchased property rights were worth over $1 million but written agreement itself did not contain the aggregate stated value of consideration). The only stated consideration in the agreements is a $5,000 contribution from Plaintiffs. Accordingly, section 15.020 does not apply.

**C.     None of the acts giving rise to the TRO or claims occurred in Harris County.**

6.     Plaintiffs allege venue is proper in Harris County under section 15.002 (permissive venue statute) because that is where Lawrence Berry resides and that is where Powers and Lawrence had discussions regarding their covert deal. While Lawrence resides in Harris County, and Powers and Lawrence had discussions in Harris County, those events did not give rise to the TRO or the claims asserted herein. Plaintiffs filed this suit to block the Berry Defendants from holding a meeting of Axis Midstream's members to clarify ownership of the company and the real property. The location of the proposed meeting was Berry GP, Inc.'s principal place of business in Nueces County. (Hummell Aff. at ¶10.)

**D.     Lawrence is a sham defendant, and his residence should be ignored for venue purposes.**

7.     Lawrence Berry was named as a defendant to attempt to establish venue in Harris County. Plaintiffs allege, "Defendant Allen Lawrence Berry ('Lawrence') acknowledges Plaintiffs' interest." (Pls.' Orig. Pet. at pg. 1.) Lawrence is allied with Plaintiffs in this matter and seeks to have his improper and *ultra vires* acts ratified through this action. The Berry Defendants never signed the Compensation Agreement (Ex. 1) or Investment Agreement (Ex. 2), nor did they ever give Lawrence permission to sign the agreements on their behalf. Lawrence acted without the Berry Defendants consent or knowledge and continues to act in cooperation with Plaintiffs. Where

3

a petition names a defendant, but it does not allege that the defendant personally committed any wrongs, that person is not a proper defendant. *Acker v. Denton Pub. Co.*, 937 S.W.2d 111, 116 (Tex. App.—Fort Worth 1996, no writ) (finding no evidence of wrongdoing against resident defendant, and therefore, venue was improper against non-resident defendants). Plaintiffs' petition does not allege Lawrence did anything improper. Rather, they assert Lawrence agrees with their position; therefore, he cannot be used as a basis for venue in Harris County.

**E.** **Alternatively, the Court should transfer venue to Nueces County pursuant to Section 15.002(b).**

8.     A trial court also has broad discretion to transfer venue to another county for the convenience of the parties and in the interest of justice.  *Garza v. Garcia*, 137 S.W.3d 36, 42–43 (Tex. 2004) (citing TEX. CIV. PRAC. & REM. CODE § 15.002(c) ("A court's ruling or decision to grant or deny a transfer under Subsection (b) is not grounds for appeal or mandamus and is not reversible error.")). The Court may transfer this matter to Nueces County for the convenience of the parties and witnesses and in the interests of justice, pursuant to Section 15.002(b) of the Texas Civil Practice & Remedies Code, as Harris County is not a county of mandatory venue, and venue is proper in Nueces County. The witnesses, business, and other relevant evidence/property are all located in Nueces County. Requiring defendants and witnesses to travel to Harris County to defend this case when venue is clearly proper in Nueces County would impose an economic and personal hardship on the witnesses and defendants. TEX. CIV. PRAC. & REM. CODE § 15.002(b)(1).

**PRAYER**

9.     Berry Defendants respectfully request the Court transfer this matter to Nueces County as disputes over real property must be brough in the County where the property is located. Tex. Civ. Prac. & Rem. Code § 15.011. Venue is not a proper in Harris County because the agreements do not constitute a "major transaction," the events giving rise to the suit occurred in Nueces

4

County, and Lawrence Berry is a sham defendant. In the alternative, defendants ask the Court to exercise its discretion and transfer this case to Nueces County for the convenience of the parties and witnesses and in the interest of justice pursuant to Section 15.002(b) of the Texas Civil Practice & Remedies Code. WHEREFORE, defendants ask the Court to set this motion to transfer venue for hearing, and after the hearing, GRANT defendants' motion to transfer this case to the Nueces County District Court and provide such other relief to which defendants may be justly entitled.

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:      _/s/ Douglas A. Allison_
**DOUGLAS A. ALLISON**
State Bar No. 01083500

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on November 8, 2024.

_/s/ Douglas A. Allison_
DOUGLAS A. ALLISON

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 94116663
Filing Code Description: Motion (No Fee)
Filing Description: Defendants' Motion to Transfer Venue
Status as of 11/11/2024 12:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair B. Dawson | | adawson@beckredden.com | 11/8/2024 4:52:37 PM | SENT |
| Michael JakeMcClellan | | jmcclellan@beckredden.com | 11/8/2024 4:52:37 PM | SENT |
| Douglas AAllison | | doug@dallisonlaw.com | 11/8/2024 4:52:37 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/8/2024 4:52:37 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/8/2024 4:52:37 PM | SENT |

# SUPPLEMENTAL APPENDIX

# 6

**CAUSE NO. 2024-76060**

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § § | |
| *Defendants.* | § § | 215th JUDICIAL DISTRICT |

## UNOPPOSED ORDER EXTENDING TEMPORARY RESTRAINING ORDER AND CONTINUING TEMPORARY INJUNCTION HEARING DATE

On October 31, 2024, the Court entered a Temporary Restraining Order ("TRO") against Defendants Axis Midstream Holdings, LLC, Allen Lawrence Berry, Marvin Glenn Berry, and Bonnie Berry (collectively, "Defendants"). The hearing on Plaintiffs' Application for a Temporary Injunction was set for November 12, 2024.

At the hearing on November 12, 2024, the Court continued the Temporary Injunction hearing. It is therefore ORDERED that the hearing on Plaintiffs' Amended Application for a Temporary Injunction shall be continued and is now set for hearing on November 18, 2024 at 8:30 a.m.

It is further ORDERED that the Temporary Restraining Order entered on October 31, 2024, as permitted by Texas Rule of Civil Procedure 680 for good cause shown, is hereby extended and shall remain in full force and effect until fourteen days from the date of this Order.

IT IS SO ORDERED.

Signed this _____ day of November, 2024

Signed:
11/14/2024
10:48 AM

_____
JUDGE ELAINE PALMER


APPROVED:

BECK REDDEN LLP

/s/ Alistair B. Dawson
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:    (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defendants' counsel regarding Unopposed Order Extending Temporary Restraining Order and Continuing Temporary Injunction Hearing Date. Defendants are unopposed to the relief requested.

/s/ Alistair B. Dawson
Alistair B. Dawson

# SUPPLEMENTAL
# APPENDIX
# 7



Barrett H. Reasoner
Partner
breasoner@gibbsbruns.com
713.751.5244

November 15, 2024

***Via e-filing***:
Hon. Elaine Palmer
215th Judicial District Court
Harris County District Courthouse
201 Caroline Street, 13th Floor
Houston, Texas 77002

    Re:    Cause No. 2024-76060; *Powers, et al. v. Axis Midstream Holdings, et al.*;
           in the 215th Judicial District Court of Harris County, Texas

Dear Judge Palmer:

    Attached please find a file-stamped copy of the Notice of Removal filed in the Eleventh Division Business Court earlier today. The Cause Number in the Business Court is 24-BC11A-0025.

    Thank you.

                  Respectfully,

                  /s/ *Barrett H. Reasoner*
                  Barrett H. Reasoner

cc: Counsel of record via e-filing

E-filed in the Office of the Clerk
for the Business Court of Texas
11/15/2024 1:00 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO.: _____

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **ELEVENTH DIVISION** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS, LLC;** | § | |
| **ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; AND** | § | |
| **BONNIE BERRY as successor in interest** | § | |
| **to DENNIS WAYNE BERRY,** | § | |
| | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## NOTICE OF REMOVAL TO BUSINESS COURT

Defendant Allen Lawrence Berry ("Lawrence") files this Notice of Removal to Business Court (the "Notice") and hereby removes this action to the Eleventh Business Court Division of the Business Court of Texas.

## INTRODUCTION

Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied Ports") filed the above-captioned case on October 31, 2024, in the 215th District Court of Harris County, Texas, Cause No. 2024-76060. Defendant Lawrence Berry submits this Notice of Removal pursuant to Texas Government Code §§ 25A.004 & 25A.006 and Texas Rule of Civil Procedure 355. The parties have not agreed to removal of this case.[1]

---

[1] The other named Defendants are Axis Midstream Holdings, LLC ("Axis"); Marvin Glenn Berry ("Marty"); and Bonnie Berry ("Bonnie"), as successor in interest to Dennis Wayne Berry ("Dennis"). Plaintiffs refer to Marty, Dennis, and Lawrence as the "Berry Defendants."

1

**JURISDICTION AND GROUNDS FOR REMOVAL**

The Business Court has authority and jurisdiction over this case. TEX. R. CIV. P. 355(b)(2)(A). Specifically, this case satisfies the jurisdictional requirements detailed in Texas Government Code §§ 25A.004(b)(2), (b)(4), (d) & (e).

**A.      The Business Court Has Jurisdiction Pursuant to Texas Government Code Section 25A.004(b)(2)**

Pursuant to the Texas Government Code, the Business Court has jurisdiction over actions regarding governance, governing documents, or internal affairs of an organization with an amount in controversy over $5 million:

> [T]he business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs: . . .
>
> (2) an action regarding the governance, governing documents, or internal affairs of an organization; …

TEX. GOV'T CODE § 25A.004(b)(2).

**1.      The Amount in Controversy Exceeds $5 Million.**

Plaintiffs allege damages which exceed $5 million. *See* Plaintiffs' Second Amended Petition ¶¶ 14-16 (alleging ownership interest worth between $30 million and $200 million) (hereinafter, "Pet."). Specifically, Plaintiffs allege that they hold or are entitled to a 20% contractual ownership interest in a major state-of-the-art petroleum export terminal project (the "Project"), pursuant to which "Powers would receive a 20% interest in the Project subject to priority distributions to the Berry Defendants of $250,000,000 plus a 10% preferred return on the outstanding balance of each amount." *Id*. ¶ 13. Plaintiffs have alleged a valuation of the Project by a third-party investor in excess of $400 million, making Plaintiffs' alleged damage claim worth in excess of $30 million. *Id*. ¶ 14. Plaintiffs also allege that Defendants have represented that the

2

Project may now be valued in excess of $1 billion, given that critical permits have recently been secured. *Id.* ¶ 16. Under this valuation, Plaintiffs allege that their contractual ownership interest in the Project would be worth over $200 million. *Id.*

### 2. This Case Concerns Corporate Governance, Governance Documents, and Internal Affairs of an Organization.

This dispute concerns the corporate governance and governing documents relating to the Project, and it centers on Plaintiffs' alleged management rights and equitable interests in the Project. *See* Pet. ¶¶ 17-22. Plaintiffs allege that Powers and Defendants are parties to an Investment Agreement that details an organizational structure in which the Project is held by a series of affiliated limited liability companies, with ultimate ownership split five ways at the top of the Project structure. *See id.* ¶¶ 15-17. Plaintiffs seek to determine the rights and status of the parties related to that ownership structure. *See, e.g., id.* ¶ 17 ("none of the Berry Defendants (including Marty and Bonnie) have individual ownership rights in Axis or any other of the entities in its chain of ownership."); ¶ 21 ("Changing the ownership of Axis is part of an overall plan to divest Plaintiffs of their interest by breaching the Investment Agreement by taking Axis out of the established and agreed to ownership chain of the Project . . ..").

### B. The Business Court Has Jurisdiction Pursuant to Texas Government Code Section 25A.004(b)(4)

The Texas Government Code also provides that the Business Court has jurisdiction over actions between owners of an organization with an amount in controversy over $5 million:

> [T]he business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs: . . .
>
> (4) an action by an organization or an owner of an organization if the action:

3

> (A) is brought against an owner, controlling person, or managerial official of the organization; and
>
> (B) alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization; . . .

TEX. GOV'T CODE § 25A.004(b)(4).

As discussed above, Plaintiffs allege that the amount in controversy well exceeds $5 million. *See* Section A.1., *supra*. And according to Plaintiffs' allegations, this dispute concerns claims by an owner of the Project against other owners of the Project, relating to the alleged acts of those owners. Specifically, Plaintiff Powers contends he has an interest as one of five owners of the Project, which includes the entity Axis, among others. Pet. ¶¶ 15-17. Plaintiffs further allege that Defendants have taken improper acts as purported owners or managers of Axis—and of the Project generally, through other affiliated entities—that they had no corporate authority to take. *Id.* ¶¶ 22 (alleging that as to a meeting of Axis, "[t]his meeting is obviously improper given Marty and Bonnie are admittedly not 'owners' of Axis."); *see also id.* ¶¶ 18-21.

## C. The Business Court Has Jurisdiction Pursuant to Texas Government Code Section 25A.004(d)

The Texas Government Code also provides that the Business Court has jurisdiction over actions arising out of "qualified transactions" with an amount in controversy over $10 million:

> The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> (1) an action arising out of a qualified transaction; . . .

TEX. GOV'T CODE § 25A.004(d).

**1.     The Amount in Controversy Exceeds $10 Million.**

The amount in controversy is alleged to exceed $10 million.  *See* Section A.1., *supra* (discussing Plaintiffs' allegations that the minimum value of their claims is $30 million, and potentially in excess of $200 million).

**2.     The Dispute Arises Out of a Qualified Transaction.**

The dispute arises out of a "Qualified Transaction" as that term is used in Section 25A of the Texas Government Code:

> "Qualified transaction" means a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party:
>
> > (A)     pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or
> >
> > (B)     lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million.

*See* TEX. GOV'T CODE § 25A.001(14).  Plaintiffs allege that this dispute involves transactions under which Plaintiffs are entitled to receive, and Defendants are obligated to pay, consideration with an aggregate value of at least $10 million.  *See* TEX. GOV'T CODE § 25A.001(14); Pet. ¶ 12 (alleging that under Compensation and Investment Agreements, "Defendants agreed that Powers would receive a 20% interest in the Project subject to priority distributions to the Berry Defendants of $250,000,000 plus a 10% preferred return on the outstanding balance sum."); *id*. ¶¶ 14-16 (alleging the value of the Project to be hundreds of millions, if not $1 billion, and the value of Plaintiffs' interest ranging from $30 million to $200 million).

**D. The Business Court Has Jurisdiction Pursuant to Texas Government Code Section 25A.004(e)**

The Business Court also has jurisdiction over actions seeking injunctive relief or a declaratory judgment, provided that the dispute otherwise falls within the scope of the Business Court's jurisdiction outlined in Texas Government Code §§ 25A.004(b)-(d):

> The business court has civil jurisdiction concurrent with district courts in an action seeking injunctive relief or a declaratory judgment under Chapter 37, Civil Practice and Remedies Code, involving a dispute based on a claim within the court's jurisdiction under Subsection (b), (c), or (d).

TEX. GOV'T CODE § 25A.004(e).

Plaintiffs seek both injunctive and declaratory relief involving disputes that fall within the Business Court's jurisdiction pursuant to Texas Government Code §§ 25A.004(b) & 25A.004(d), as detailed above. *See* Pet. ¶¶ 23-25 (citing request for declaratory relief); ¶¶ 30-35 (citing request for injunctive relief); *see also* Sections A-B, *supra* (discussing the Business Court's jurisdiction over this case under Texas Government Code § 25A.004(b)); Section C, *supra* (discussing the Business Court's jurisdiction over this case under Texas Government Code § 25A.004(d)). Plaintiffs secured a temporary restraining order on October 31, 2024, which was extended by order of the 215th District Court on November 14, 2024.

Accordingly, the Business Court has authority and jurisdiction over this case pursuant to Texas Government Code § 25A.004.

**<u>VENUE</u>**

Venue is proper in the Eleventh Business Court Division. TEX. R. CIV. P. 355(b)(2)(B); TEX. GOV'T CODE § 25A.003(m). Because the 215th District Court of Harris County, Texas had jurisdiction of this case, the Eleventh Business Court Division, with jurisdiction over Harris County, is a proper venue for removal. *See* TEX. GOV'T CODE § 25A.006(d) ("A party to an action

filed in a district court . . . that is within the jurisdiction of the business court may remove the action to the business court.").[2]

## **TIMELINESS**

Defendant Lawrence Berry files this Notice of Removal, and all parties have not agreed to removal. TEX. R. CIV. P. 355(b)(1). This removal is timely filed because it is filed within thirty days of the day that Defendant Lawrence Berry discovered "facts establishing the business court's authority to hear the action." TEX. R. CIV. P. 355(c)(2)(A); *see also* TEX. GOV'T CODE § 25A.006(f)(1) ("If all parties to the action have not agreed to remove the action, the notice of removal must be filed . . . not later than the 30th day after the date the party requesting removal of the action discovered . . . facts establishing the business court's jurisdiction over the action[.]").[3] Those facts are: (1) the Business Court was granted authority to hear cases filed after September 1, 2024;[4] (2) Plaintiffs filed this case on October 31, 2024; and (3) Plaintiffs' allegations establish that the Business court has jurisdiction and venue over this case, for the foregoing reasons.

---

[2] *Compare* Pet. ¶ 9 (citing TEX. CIV. PRAC. & REM. CODE §§ 15.002 and 15.020) (alleging that Harris County is the contractually-chosen place of venue for an agreement constituting a "major transaction"; one of the Defendants is a citizen of Harris County, Texas; and a substantial part of the events giving rise to Plaintiffs' claims occurred in Harris County, Texas), *with* TEX. GOV'T CODE § 25A.006(a) (providing that "[v]enue may be established as provided by law or, if a written contract specifies a county as venue for the action, as provided by the contract.").

[3] Texas Government Code § 25A.006(f)(2) further provides that "if an application for temporary injunction is pending on the date the party requesting removal of the action discovered . . . facts establishing the business court's jurisdiction over the action," the notice of removal is timely is filed "not later than the 30th day after the date the application is granted, denied, or denied as a matter of law." Plaintiffs secured a temporary restraining order on October 31, 2024—which was extended by the 215th District Court on November 14, 2024—and filed an amended application for temporary injunction, which is currently pending. Thus, this Notice of Removal is also timely under Texas Government Code § 25A.006(f)(2).

[4] *See* Act of May 25, 2023, 88th Leg., R.S., ch. 380, §§ 8, 2023 Tex. Sess. Law Serv. 919, 929 (H.B. 19); *cf. Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 Tex. Bus. 1; 2024 WL 4648110, at *2 (Tex. Bus. Ct. Oct. 30, 2024) (finding that the Business Court only has jurisdiction to hear cases filed after September 1, 2024); *Synergy Glob. Outsourcing, LLC v. Hinduja Glob. Sols., Inc.*, No. 24-BC01B-0007, 2024 Tex. Bus. 2 (Tex. Bus. Ct. Oct. 31, 2024) (same); *TEMA Oil and Gas Co. v. ETC Field Servs., LLC*, No. 24-BC08B-0001, 2024 Tex. Bus. 3 (Tex. Bus. Ct. Nov. 6, 2024) (same); *Morningstar Winans v. Luke B. Berry, M.D.*, No. 24-BC04A-0002, 2024 Tex. Bus. 4 (Tex. Bus. Ct. Nov. 7, 2024) (same);

As required by Texas Rule of Civil Procedure 335(b)(3), appended to this Notice are the following:

    a.     A copy of the docket sheet from the 215th District Court of Harris County; and

    b.     Copies of all process, pleadings, and orders in the action.

*See* TEX. R. CIV. P. 355(b)(3). For the convenience of the Court, Defendant Lawrence Berry also appends a transcript of the November 12, 2024, Hearing before the 215th District Court.

Further, pursuant to Texas Business Court Local Rule 8, Defendant Lawrence Berry notifies the Business Court that the following are set for hearing on Monday, November 18, 2024, at 8:30 a.m. in the 215th District Court of Harris County:

    a.   Plaintiffs' Amended Application for a Temporary Injunction;

    b.   Defendant Marty Berry's Plea in Abatement and Motion to Abate;

    c.   Defendants Marty Berry and Bonnie Berry's Motion for Leave to File Motion to Transfer Venue; and

    d.   Defendants Marty Berry and Bonnie Berry's Motion to Transfer Venue.

**CONCLUSION**

For the foregoing reasons, Defendant Lawrence Berry removes this case from the 215th Judicial District Court of Harris County, Texas to the Eleventh Business Court Division of the Business Court of Texas and notifies all parties of the same.

---

*James Jorrie v. AL Global Servs. et al.*, No. 24-BC04B-0001, 2024 Tex. Bus. 5 (Tex. Bus. Ct. Nov. 7, 2024) (same).

**Dated**: November 15, 2024

Respectfully submitted,

By: */s/ Barrett H. Reasoner*
    Barrett Reasoner
    State Bar No. 16641980
    breasoner@gibbsbruns.com
    Michael R. Absmeier
    State Bar No. 24050195
    mabsmeier@gibbsbruns.com
    L. Bruce Baldree
    State Bar No. 24116064
    bbaldree@gibbsbruns.com
    Sydney G. Ballesteros
    State Bar No. 24036180
    sballesteros@gibbsbruns.com
    **GIBBS & BRUNS LLP**
    1100 Louisiana, Suite 5300
    Houston, Texas 77002
    Tel: 713.650.8805
    Fax: 713.750.0903

**ATTORNEYS FOR DEFENDANT**
**A. LAWRENCE BERRY**

9

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 15, 2024, I conferred with counsel for Plaintiffs and counsel for Defendants Marty Berry and Bonnie Berry. As of this filing, Plaintiffs, Marty Berry, and Bonnie Berry have not indicated that they agree to removal.

*/s/ Mike Absmeier*
Mike Absmeier

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, a true and correct copy of this document was served via E-filing notification or by email on the following counsel:

Alistair B. Dawson
adawson@beckredden.com
M. Jake McClellan
jmcclellan@beckredden.com
Madeline E. Gay
mgay@beckredden.com
BECK REDDEN
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010

**Attorneys for Plaintiffs**

Douglas A. Allison
doug@dallisonlaw.com
LAW OFFICES OF DOUGLAS A. ALLISON
403 N. Tancahua Street
Corpus Christi, Texas 78401

Vanessa Gilmore
vg@robertsmarkland.com
ROBERTS MARKLAND LLP
2555 N MacGregor Way
Houston, Texas 77004

**Attorneys for Defendants Marvin Berry and Bonnie Berry**

*/s/ Mike Absmeier*
Mike Absmeier

10

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosa Brennan on behalf of Barrett Reasoner
Bar No. 16641980
rbrennan@gibbsbruns.com
Envelope ID: 94361071
Filing Code Description: Notice
Filing Description: Letter regarding transfer to Business Court 11th Division
Status as of 11/15/2024 3:51 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas AAllison | | doug@dallisonlaw.com | 11/15/2024 3:29:14 PM | SENT |
| Alistair B. Dawson | | adawson@beckredden.com | 11/15/2024 3:29:14 PM | SENT |
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Michelle Bultman | | MBultman@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 11/15/2024 3:29:14 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/15/2024 3:29:14 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/15/2024 3:29:14 PM | SENT |
| Michael JakeMcClellan | | jmcclellan@beckredden.com | 11/15/2024 3:29:14 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/15/2024 3:29:14 PM | SENT |

# SUPPLEMENTAL APPENDIX

# 8

E-filed in the Office of the Clerk
for the Business Court of Texas
11/20/2024 5:42 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

**CAUSE NO. 24-BC11A-0025**

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **11A – STATE OF TEXAS** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS LLC;** | § | |
| **ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; and** | § | |
| **BONNIE BERRY, as successor in** | § | |
| **interest to DENNIS WAYNE BERRY** | § | |
| | § | |
| *Defendants.* | § | **HONORABLE SOFIA ADROGUE** |

**MOVANTS' MOTION TO REMAND, DISMISS, and/or TRANSFER VENUE**
**(pursuant to Texas Government Code, Chapter 25A)**

NOW COMES Martin Glenn Berry ("Marty") and Bonnie Berry ("Bonnie"), Defendants

below and sometimes together referred to as "Movants," and make and file this Movants'

Motion to Remand, Dismiss, and/or Transfer Venue (pursuant to Texas Government Code,

Chapter 25A), and in support of same would show:

**I.**
**Procedural Status**

Effective as of September 1, 2023, Texas Government Code Chapter 25A sets forth

the statutory framework for all Texas Business Courts. Texas Business Court, Eleventh

Division, commenced operations effective September 1, 2024 – with such Eleventh Division

being inclusive of Harris County, Texas. Subject to the provisions of Texas Government Code

Chapter 25A, Lawrence Berry ("Lawrence") has filed a Notice of Removal to Business Court

("Notice of Removal"), as of November 15, 2024. Movants, respectfully, would show that Lawrence's Notice of Removal is defective, and thus the matter must be remanded, dismissed, or transferred to Nueces County, Texas (the county of mandatory venue).

## II.
## Background

*Plaintiffs' Allegations –*

In the instant matter, Plaintiffs'[1] petition seeks to "protect their management rights and 20% interest in a crude oil deliver system and terminal project"[2] in Nueces County, Texas.[3] To do so, Plaintiffs prayed for and secured a Temporary Restraining Order ("TRO") enjoining Movants from " . . . transferring in any way the ownership [or] property . . . rights of any entity associated with the Project."[4] Plaintiffs plead that "[t]he three Berry Brothers [Marty, Dennis (survived by his wife, Bonnie), and Lawrence] entered into agreements with Powers [entitling Plaintiffs to] "a 20% ownership interest in a company called Lone Star Ports Holdings, LLC [LSPH] in connection with what is referred to as the Lone Star Ports Project"[5] (the "Project"). Plaintiffs plead that Plaintiffs' "ownership" interest in LSPH, coupled with the LSPH Operating Agreement, allows for Plaintiffs' management and sole control of Axis Midstream Holdings LLC ("Axis")[6] – the company holding the " . . . permitting rights

---

[1] Plaintiffs are Allied Ports LLC and Albert Theodore Powers.
[2] See Plaintiffs' Verified Second Amended Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Second Amended Petition"), at p. 1.
[3] See Affidavit of Michael Hummell, on file.
[4] See Exhibit 1 (TRO).
[5] See Plaintiffs' Second Amended Petition, at p. 1 (referring to an "Investment Agreement" never signed by Marty Berry, Dennis Berry, or Bonnie Berry).
[6] See Plaintiffs' Second Amended Petition, at p. 7, footnote 5 (Plaintiffs assert: "[Lone Star Ports Enterprises LLC] LSPE's sole Member and Manager is Lone Star Ports Ventures, LLC ("LSPV"). LSPV's sole Member and manager is Lone Star Ports Holdings, LLC ("LSPH"). LSPH has five Members, each owning 20% of the membership units. Plaintiffs Allied Ports LLC is LSPH's sole Manager."). Exhibit 2 (Organizational Chart) diagrams Plaintiffs' allegations of ownership and sole control of Axis Midstream Holdings LLC (highlighted in

2

associated with development of the Project"[7] (Berry GP, wholly owned by Marty/ Bonnie/Lawrence, having fully funded the investment (approximately $25 million[8])). Plaintiffs complain: "If Marty and Bonnie are allowed to proceed to transfer ownership, management, and control of Axis to themselves, Plaintiffs will be deprived of their agreed to and bargained for management rights and 20% interest in the Project."[9] This lawsuit is all about ownership, control, and property related to the project (thus directly involving Marty, Bonnie, Berry GP, Axis, and other Berry-Related Companies, on the one hand; and Powers/Allied Ports LLC, Lawrence, and their collection of companies, on the other hand).

*Defendants (Marty and Bonnie) Allegations –*

Plaintiffs concede that "Defendant Allen Lawrence Berry ("Lawrence") acknowledges Plaintiffs' interest"[10] [thus is a friendly Defendant], and Plaintiffs further plead that "Marvin Glenn Berry ("Marty") and Bonnie Berry, as successor in interest to Dennis Wayne Berry ("Bonnie"), have made clear they will not honor their agreements or acknowledge Allied's ownership interest in Lone Star Ports Holdings, LLC . . . ."[11] Marty/ Bonnie deny Plaintiffs' alleged right of ownership and control of the Project and its property because: (1)

---

red). Plaintiffs' Second Amended Petition complains of Marty/Bonnie attempting to take "control" of Axis eight (8) times – it is the central theme of Plaintiffs' complaint.

[7] See Plaintiffs' Second Amended Petition, at p. 7.

[8] See Exhibit 3 (available in camera).

[9] See Plaintiffs' Second Amended Petition, at p. 11.

[10] See Plaintiffs' Second Amended Petition, at p. 1.

[11] See Plaintiffs' Second Amended Petition, at p. 1.

Marty/Bonnie never signed the Investment Agreement,[12] or any document,[13] upon which Plaintiffs' rely for their alleged 20% ownership interest and "Manager" control-position; and (2) Berry GP is the only (100%) Member and sole Manager of Axis Midstream Holdings LLC.[14]

***The transfer of Axis (100% ownership) to Berry GP, and naming of Berry GP as sole Manager, is the last valid transfer of Axis to anyone or any legal entity.*** To be clear, there is a purported, subsequent transfer of Axis from Berry GP to Redfish Bay Terminals Inc. ("RBT"),[15] but this purported transfer never received majority approval from Berry GP's Board of Directors (as required by Texas law and Berry GP's by-laws).[16] There is another purported, subsequent transfer of Axis from RBT (a company wholly owned by Berry GP) to LSPH,[17] but – again – this purported transfer never received majority approval from RBT's Board of Directors (as required by Texas law and RBT's by-laws).[18] Lawrence signed the Berry GP-to-RBT transfer of interest in Axis, but was only one (1) of three (3) directors (not a majority, and

---

[12] See Plaintiffs' Second Amended Petition, Exhibit 2 (this proposed "Investment Agreement" (which is the basis for Powers' claim to "twenty (20%) overall carried interest" and claim to be sole "Manager") was drafted to be "by and among Marvin Glen Berry, Dennis Wayne Berry, and Allen Lawrence Berry (collectively, the "**Berrys**"), and Albert Theodore Powers ("**Powers**")" (pp. 1-2). However, this proposed/draft document was never signed by Martin Berry, and never signed by Dennis Berry (both of whom rejected terms of the proposed agreement) – but, as always, signed by Lawrence Berry (without required authority).

[13] See alleged LSPH Amended and Restated Operating Agreement (referred to as Exhibit 7 to Plaintiff's Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction – such Exhibit 7 omitted from Plaintiffs' Second Amended Petition, yet available for in camera review), stating ""Manager" means Allied Ports, LLC . . . ." and "The Company [LSPH] shall be managed by the Manager, Allied Ports, LLC . . . ." NOTE: It makes absolutely no sense whatsoever that Berry GP (then-controlled by majority vote Marty, Dennis, and Lawrence) would ever spend $25 million to develop the Project, and simply give sole control of the Project to Plaintiffs. This would never, never, never happen – and did not happen. Marty never signed the alleged LSPH operating agreement. Dennis (now Bonnie) never signed the alleged LSPH operating agreement. As always, Lawrence Berry signed it (without required authority).

[14] See ALB 0007563 (transfer of 100% ownership and 100% control of Axis Midstream Holdings LLC from Gansevoort Investments LLC (a Berry-Related Company) to Berry GP Inc. ("Berry GP," a Berry-Related Company) – a transfer that all parties recognize as valid.

[15] See ALB 0001057 subject to Protective Order.

[16] See Exhibit 4 (By-laws of Berry GP, Inc., available in camera).

[17] See ALB 0001061 subject to Protective Order.

[18] See Exhibit 5 (By-laws of Redfish Bay Terminals, Inc., available in camera).

thus the transfer lacked authority).  Lawrence signed the RBT-to-LSPH transfer of interest in Axis, but Lawrence was then only one (1) of four (4) directors (not a majority, and thus the transfer lacked authority).  Demonstratively, the most recent-in-time transfer of Axis Midstream Holdings LLC is from Gansevoort Investments LLC ("Gansevoort") to Berry GP (making Berry GP owner of 100% of the membership units of Axis, and sole Manager of Axis).[19]

*Nueces County Lawsuit –*

On or about November 27, 2023 (a year ago), Lawrence sued Marty, Berry GP, and other Berry-Related Companies (in Harris County, Texas).[20]  In this ***first-filed*** lawsuit, Lawrence procured an ex-parte Temporary Restraining Order ("TRO"), and Amended TRO ("ATRO").[21]  By agreement of the parties (given real property was in issue), the lawsuit was transferred from Harris County, Texas, to Nueces County, Texas[22] (this lawsuit now referred to as the "Nueces County Lawsuit").  In the Nueces County Lawsuit, Lawrence pleaded that: (1) Berry GP Inc. is "majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis");"[23]  (2) Marty, Berry GP, and others "have begun secretly attempting to sell the company's real property . . . without notice to or authorization from the [Berry GP] Board of Directors;"[24] "ownership and primary control of [Berry GP] is vested with Lawrence and his two brothers [Marty and Dennis];"[25] the "Berry

---

[19] See ALB 0007563 subject to Protective Order.
[20] See Exhibit 6 (Lawrence's first-filed petition).
[21] See Exhibits 1 and 7 (TRO and ATRO).
[22] See Exhibit 8 (agreed Order to Transfer Venue).
[23] See Exhibit 6, at p. 2.
[24] See Exhibit 6, at p. 2-3.
[25] See Exhibit 6, at p. 7.

Entities are primarily governed by the Board of Directors of Berry GP, Inc. (the "Board"), in accordance with the Bylaws of Berry GP, Inc.";[26] the "Board consists of directors Lawrence, Marty, and Dennis;"[27] and that Marty breached fiduciary duties "without giving notice to or obtaining the consent or approval of Berry GP, Inc.'s Board."[28] Relying upon his pleadings that action taken without approval of the Berry GP Board of Directors was breach of fiduciary duty, Lawrence requested relief by TRO and Temporary Injunction enjoining "Marty Berry, and Berry GP [et al] from selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property" without Lawrence's sole approval.[29]   In this ***first-filed*** lawsuit, Lawrence initially obtained relief by TRO that Marty Berry and Berry GP (et al) are "restrained from selling any of the Berry Entities' real property,"[30] and obtained further relief by TRO that Marty Berry and Berry GP (et al) are "restrained from modifying the composition of the Board of Directors of the Berry Entities."[31]   After three (3) full days of testimony/evidence in consideration of Lawrence's application for temporary injunction, the Honorable Judge Robert Galvan ordered:

> "So, the Court has heard evidence over a three-day
> period: Temporary injunction requested.  Bylaws provide
> for the removal and appointment of a Board of Director,
> so I'm not gonna interfere with that.
>
> With regard to the second issue the Court
> will partially grant for any sale of real property

---

[26] See Exhibit 6, at p. 7.
[27] See Exhibit 6, at p. 7.
[28] See Exhibit 6, at p. 14.
[29] See Exhibit 6, at p. 18.
[30] See Exhibits 1 and 7 (TRO and ATRO).
[31] See Exhibit 7, ATRO at p2.

there must be 48 hours' notice to all Board members; whoever they may be at the time."[32]

In the Nueces County Lawsuit, the Honorable Judge Robert Galvan has already ruled that there will be no injunctive relief that enjoins Marty Berry or Berry GP (or Berry Contracting LP, or Berry Operating Company LLC, or other Berry-Related Companies) from changing or modifying who is a member of these various boards of directors, and that transfer of real property is not enjoined (subject to 48 hours' notice to each member of the Board of Directors (which board must vote to take action in accordance with its by-laws)).[33]

In the Nueces County Lawsuit, Marty and Berry GP (et al) counterclaimed against Lawrence and the Allen Lawrence Berry (2007) Trust. In the (Marty's / Berry GP's) counter-petition filed on April 15, 2024, Marty / Berry GP defined "Berry-Related Companies" to refer to twenty-nine (29) named companies "and related entities."[34] Berry GP and Gansevoort Investments LLC are expressly named in Marty's / Berry GP's counter-petition filed April 15, 2024 (in Nueces County). Of course, Axis was owned by Gansevoort in 2017 and is owned by Berry GP since 2017, and thus is one of the "Berry-Related Companies."[35] This inclusion of Axis in the Nueces County Lawsuit is further verified by Marty's / Berry GP's legal discovery propounded to Lawrence and the Allen Lawrence Berry (2007) Trust (both previous owners of Axis).[36] Such legal discovery propounded in the Nueces County Lawsuit on May 8, 2024: (1) redefined "Berry-Related Companies" to expressly include "Allen Lawrence Berry 2007

---

[32] See Exhibit 9, at p. 3.
[33] See Exhibit 9, at p. 3.
[34] See Exhibit 10, at p. 5.
[35] See ALB 0007563, subject to Protective Order (transfer of 100% ownership and 100% control of Axis Midstream Holdings LLC from Gansevoort Investments LLC (a Berry-Related Company) to Berry GP Inc. ("Berry GP," a Berry-Related Company) – a transfer that all parties recognize as valid.
[36] See Exhibit 11.

7

Trust" ("Trust"), "Gansevoort Investments LLC," "Axis Midstream Holdings LLC," "Lone Star Ports LLC" ("LSP"), "Midway Junction Properties LLC" ("Midway"), and others.[37]   These Nueces County Lawsuit "Berry-Related Companies" (Trust, Gansevoort, Axis, LSP, Midway, along with Berry GP, RBT, and others) are directly involved in the transactions made the subject of Powers' / Allied Port LLC's complaint on file in Harris County, Texas.[38]  Moreover, in the Nueces County Lawsuit, tens of thousands of pages of discovery have already been exchange by the parties – and hundreds (perhaps thousands) of pages of documents exchanged are directly related to governance of Gansevoort, Axis LSP, LSPH, and other Berry-Related Companies made the subject of Powers' / Allied Ports LLC's complaints (in Harris County).[39]  Additionally, Marty's / Berry GP's attorneys initiated discussions to resolve ownership/control issues relating to Axis this past summer (in the context of the Nueces County Lawsuit);[40] and principals of Axis noticed a formal meeting for Axis Midstream Holdings LLC in Nueces County, Texas, to force discussion and a possible resolution of ownership/control issues relating to Axis.[41]   All these efforts were in the context of Axis Midstream Holdings LLC (along with Gansevoort, LSP, Midway, Berry GP, and related companies) being integral to the Nueces County Lawsuit – now also fundamental to these Harris County proceedings.

*Interrelated Disputes ('Identical') –*

---

[37] See Exhibit 11.
[38] See Exhibit 2 (Organizational Chart).
[39] Subject to Protective Order, and available in camera.
[40] See Exhibit 12 (email exchanges between Lawrence's attorneys and Marty's attorneys).
[41] See Exhibit 13 (informal transcription of August 2024, meeting).

The threshold question with Plaintiffs' lawsuit queries who owns and controls Axis Midstream Holdings LLC – and related Project assets (including the substantial real property interests held in support of the Project). For reasons detailed above, this begs the question whether Lawrence – alone and without Berry GP's Board of Directors' majority approval – had authority to transfer a $25 million Berry GP asset (Axis) to a third-party (RBT). Separately and additionally, the issue also begs the question of whether Lawrence (the friendly Defendant) – alone and without RBT's Board of Directors' majority approval – had authority to transfer the same $25 million Berry GP asset (Axis) to a third-party (LSPH, purportedly controlled by Plaintiffs who have not invested a penny in the Project for their supposed 'carried interest'). Berry GP (a party to the Nueces County lawsuit) and its $25 million invested in Axis is interrelated with Plaintiffs' lawsuit. In this new Harris County lawsuit is not dismissed, abated, or transferred to Nueces County, Texas, then Berry GP (having invested $25 million in the Project) would be forced to intervene in these Harris County proceedings, despite the Nueces County Lawsuit with Berry GP, et al, being first filed. The Nueces County Lawsuit and this Harris County lawsuit are also interrelated given the two (2) jurisdictions no-existing and competing injunctive relief: (1) Nueces County's Honorable Judge Robert Galvan refused to enjoin the transfer of Berry-Related Companies' real property (after 48 hours' notice), but Harris County's Honorable Judge Laura Redden has enjoined " . . . transferring in any way the ownership [or] property . . . rights of any entity associated with the Project;"[42] and (2) Nueces County's Honorable Judge Robert Galvan refused to enjoin changes in

---

[42] See Exhibit 1 (TRO).

management of Berry-Related Companies,[43] but Harris County's Honorable Judge Laura Redden has enjoined "[h]olding any meetings that in any way seek to affect the management . . . of Axis or any other entity   . . . associated with the Project . . . ."[44]  The Nueces County Lawsuit is all about control of Berry GP and the Berry-Related Companies (including Axis, LSP, Midway, and others) – all companies directly involved in the Project and Powers' / Allied Ports LLC's lawsuit.

## III.
## Jurisdiction

It is rudimentary that two (2) courts cannot possess jurisdiction of the same case or controversy at the same time.

> "Having [first acquired] possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction [in the first-filed case] lasted it was exclusive, and could not be trenched upon by any other tribunal."[45]

The issue is exhaustively briefed in Movants' Motion to Abate / Plea in Abatement (on file), and all such briefing is hereby incorporated by reference as though fully restated herein. Texas law is quite clear that the jurisdiction of the ***first-filed*** action (now, still pending in Nueces County) is "exclusive," and cannot be "trenched upon by any other tribunal."  For

---

[43] Lawrence TI application requested Marty Berry and Berry GP (and those acting in concert with them) be enjoined from changing management of Berry GP or any of its related entities by removing Lawrence as a director.  Judge Galvan refused the requested relief by ruling: the "Bylaws provide for the removal and appointment of a Board of Director, so I'm not gonna interfere with that."

[44] For documents in support of statements in this paragraph, see footnote nos. 2 – 41, above.

[45] *Cleveland v. Ward, 285 S.W. 1063, 1071 (Tex. 1926).*  For about 100 years, Texas law has remained unchanged. *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Tex. 1988).

literally one hundred (100) years, Texas jurisprudence has shown tremendous respect and given deference to the Texas court first acquiring jurisdiction.

Texas Government Code, Chapter 25A, is also quite adamant about the solemnity of the Business Court's consideration of its own jurisdiction.

> "If the business court does not have jurisdiction of the action, the court shall, at the option of the party filing the action:
> (1) transfer the action to a district court or county court at law in a county of proper venue; or
> (2) dismiss the action without prejudice to the party's rights." Texas Government Code, Chapter 25A, section 25A.006(b).[46]

Respectfully, this Business Court, Eleventh Division, is properly guided by the Texas Supreme Court authority cited herein (and additional Texas judicial authority cited and discussed in Movants' Motion to Abate / Plea in Abatement); along with Texas Government Code Chapter 25A. As such, this Business Court "shall" either transfer the action to Nueces County, Texas; or "dismiss the action without prejudice."[47]

## IV.
## Venue

Texas Rule of Civil Procedure ("TRCP") 355(b)(2) requires that Lawrence's Notice of Removal "plead facts to establish . . . venue in a county in an operating division of the business court." Of course, the record demonstrates Lawrence agreed to the transfer of venue of the first-filed lawsuit (the Nueces County Lawsuit),[48] yet now having lost his bid for

---

[46] Compare section 25A.006(d): . . . "If the business court does not have jurisdiction of the action, the business court shall remand the action to the court in which the action was originally filed.
[47] *Cleveland v. Ward, 285 S.W. 1063, 1071 (Tex. 1926); Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Tex. 1988); Texas Government Code, Chapter 25, section 25.006(b).
[48] See Exhibit 8.

11

injunctive relief in the Nueces County Lawsuit[49] is a 'friendly Defendant'[50] aiding and abetting Powers' / Allied Ports LLC's requests for the same injunctive relief (an attempted mulligan).[51] Lawrence likely hamstrung by his previous agreement to transfer the first-filed case to Nueces County, Movants would show that Lawrence's Notice of Removal fails to "plead facts to establish . . . venue . . . ."[52]  Instead, Lawrence merely footnotes by reference the Powers' / Allied Port LLC's petition (which is not a 'pleading of facts to establish venue' by Lawrence).[53]  Lawrence has failed to comply with TRCP 355(b)(2), and thus there is no proper pleading upon which venue in the Business Court is established.

Lawrence's Notice of Removal is also procedurally flawed pursuant to Texas Government Code, section 25A.006(e).  This provision of law confirms:

> "A party to an action filed in a district court or county court at law
> in a county of proper venue that is not within an operating division
> of the business court or the judge of the court in which the action
> is filed may not remove or transfer the action to the business court."

Lawrence is a "party" to the Nueces County "action filed in a district court . . . in a county of proper venue" (agreed venue in Nueces County) "that is not within an operating division of the business court" (Fifth Business Court Division) . . . "may not remove or transfer the action to the business court."  Lawrence's removal of the matter to the Eleventh Business Court Division is expressly prohibited by statute.

---

[49] See Exhibit 9, at p. 3.
[50] See Plaintiffs' Second Amended Petition, at p. 1.
[51] Compare Exhibit 9 (Judge Galvan's ruling on Lawrence's Application for Temporary Injunction) and Exhibit 7, with Exhibit 1 (TRO signed by Judge Redden).
[52] TRCP 355(b)(2).
[53] See Lawrence's Notice of Removal, at p. 6-7 (including footnote 2).

Most importantly, and as set forth in Movants' Motion to Transfer Venue (on file), the only mandatory venue provision applicable to the instant matter requires transfer of the dispute to Nueces County, Texas[54] (even if there were not a first-filed case in Nueces County, Texas – which there is). Movants would show the venue issue has been substantially supported by evidence and briefed with the filing of Movants' Motion to Transfer Venue (on file), and all such evidence and briefing is hereby incorporated by reference as though fully set forth and restated herein.[55] Simply stated: Texas Civil Practice and Remedies Code ("TCPRC") Chapter 15, section 15.011, is a mandatory venue provision requiring transfer of this case to Nueces County, Texas (TCPRC 15.020 being inapplicable because the Powers / Allied Ports LLC contracts in question are not "major transactions"[56]).

Texas Government Code, Chapter 25A, further addresses venue. In pertinent part, section 25A.006(c) states:

> "If, after an action is assigned to a division of the business court, the court determines that the division's geographic territory does not include a county of proper venue for the action, the court shall:
> (1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or
> (2) if there is not an operating division of the court that includes a county of proper venue, at the option of the party filing the action, transfer the action to a district court or county court at law in a county of proper venue.

---

[54] Texas Civil Practice and Remedies Code, section 15.011.
[55] See Exhibit 14 (affidavit of Mike Hummell, with exhibits).
[56] *Hughes v. Pearcy,* No. 03-10-00319-CV, 2014 Tex.App. LEXIS 13059, at *7-8 (Tex.App. – Austin, December 8, 2014, no petition); see also *In re Togs Energy, Inc.,* No. 05-09-01018-CV, 2009 Tex.App. LEXIS 7949, 2009 WL 3260910, at *1 (Tex.App. – Dallas, October 13, 2009, no petition). Further, please note that neither Marty Berry nor Dennis Berry signed any contract with a provision allowing for venue in Harris County, Texas.

As set forth herein, venue is mandatory in Nueces County, Texas. Presently, there is no operating Fifth Business Court Division. As such, this Eleventh Business Court Division may – pursuant to Texas Government Code 25A.006 – transfer the proceeding to Nueces County district court.

## V.
## Conclusion

This dispute is already pending, and has long been pending, in Nueces County, Texas. The precise dispute made the subject of the Nueces County Lawsuit is largely determinative of the Powers / Allied Ports LLC dispute; that is, a resolution of the Berry GP 'power and control' dispute in the Nueces County Lawsuit will resolve the 'power and control' disputes for other Berry-Related Companies; and resolve whether Lawrence had unilateral power to have supposedly transferred Axis out of Berry GP to RBT; and/or out of RFT to LSPH. As such, the first-filed Nueces County Lawsuit is completely interrelated to this Powers / Allied Ports LLC lawsuit. The two (2) cases involve substantially the same parties or parties that can be added (as allowed for per the Texas Supreme Court opinions cited); the two (2) cases involve the identical 'power and control' dispute for Berry GP; the two (2) cases inevitably involve Marty, Bonnie, Lawrence, Berry GP, Axis, LSP, RFT, and Midway (and other Berry-Related Companies); the two (2) cases involve now-active and competing court orders for injunctive relief (Judge Galvan allowing transfer of property, but Judge Redden enjoining it); the two (2) cases involve now-active and competing court orders for other injunctive relief (Judge Galvan allowing change in directors (management), but Judge Redden enjoining it); and more. The cases are interrelated, and thus the jurisdiction of the court in which the first-filed

14

action is pending dominant.  Moreover, venue (as previously agreed to by Lawrence, and Marty (et al)) is mandatory in Nueces County.

WHEREFORE, PREMISES CONSIDERED, Movants pray that this Honorable Eleventh Business Court Division remand, dismiss, or transfer venue of the matter as requested herein, and for such other and further relief to which Movants may show themselves justly entitled, both at law and in equity.

Respectfully Submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:     _/s/ Douglas A. Allison_____
        **Douglas A. Allison**
        State Bar No. 01083500

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing document has been or will be served upon all counsel of record for the parties in accordance with the Texas Rules of Civil Procedure on this the 20th day of November 2024.

 /s/ Douglas A. Allison_____
**DOUGLAS A. ALLISON**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 94534970
Filing Code Description: Motions - All Other
Filing Description: 2024.11.20 Movant's Motion to Remand, Dismiss, MTV
Status as of 11/21/2024 8:04 AM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 11/20/2024 5:42:06 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/20/2024 5:42:06 PM | SENT |

Case Contacts

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 94534970
Filing Code Description: Motions - All Other
Filing Description: 2024.11.20 Movant's Motion to Remand, Dismiss, MTV
Status as of 11/21/2024 8:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/20/2024 5:42:06 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 11/20/2024 5:42:06 PM | SENT |

# SUPPLEMENTAL APPENDIX 9

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2024 11:47 AM
Accepted by: Beverly Crumley

| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § § | IN THE BUSINESS COURT |
|---|---|---|
| *Plaintiff,* | § § | Case No. 24-BC11A-0025 |
| v. | § § | ELEVENTH DIVISION |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY as successor in interest to DENNIS WAYNE BERRY | § § § § § § § | |
| *Defendants.* | § § | HARRIS COUNTY, TEXAS |

## DEFENDANT'S RESPONSE TO MOTION
## TO REMAND, DISMISS, OR TRANSFER VENUE

Defendant Lawrence Berry ("Lawrence") files this Response to Defendants Marty Berry ("Marty") and Bonnie Berry's ("Bonnie")[1] Motion to Remand, Dismiss, and/or Transfer Venue ("Motion to Remand") and would respectfully show the Court as follows:

### INTRODUCTION

In three separate filings, Marty and Bonnie attempt to muddy the waters between this case and another currently pending in Nueces County, brought by Lawrence against different parties and involving different issues, all in service of securing procedurally improper relief. To be clear, this case and the Nueces County case are distinct, unrelated, and entirely separate; Plaintiffs are not mentioned at all in the Nueces County case, and resolution of either case will not affect the issues or outcome of the other. Further, the Nueces County District Court cannot have dominant jurisdiction over this case because venue is improper in Nueces County, as it is fixed under

---

[1] Lawrence, Marty, and Bonnie are collectively referred to herein as the "Berry Defendants." Bonnie is sued in her capacity as successor in interest to Dennis Berry ("Dennis"). Lawrence, Marty, and Dennis are referred to herein as the "Berry Brothers."

1

mandatory application of Texas law in Harris County, pursuant to Plaintiffs' Investment Agreement.

Lawrence properly removed this case to the Eleventh Division of the Business Court, and this Court has both jurisdiction and venue over this action. Marty and Bonnie seek now to either have it remanded to Harris County District Court, dismissed entirely, or transferred to Nueces County. Each option is procedurally improper and unsupported under blackletter Texas law, and Marty and Bonnie's Motion to Remand should be denied.[2]

**BACKGROUND**

I.     **The Harris County Lawsuit**

On October 31, 2024, Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied Ports") filed their Original Petition and Motion for a Temporary Restraining Order and Temporary Injunction against Axis Midstream Holding LLC ("Axis") and the Berry Defendants in the 215th District Court of Harris County, Texas, Cause No. 2024-76060 (hereinafter the "Harris County Lawsuit"). Plaintiffs secured a temporary restraining order on the same day and subsequently amended their petition and request for a temporary injunction, with the latest amendment on November 27, 2024. *See* Pls.' 3rd Am. Pet. ("Pet.").

In this Harris County Lawsuit, Plaintiffs allege breaches by the Berry Defendants of an Investment Agreement and Consulting Agreement, and also an attempt by Marty and Bonnie to divest Plaintiffs of an alleged ownership interest in a crude oil delivery and export facility project

---

[2] Of note, when Marty and Bonnie filed their Motion to Remand on November 20, 2024, they failed to provide four of their referenced exhibits to the parties: Exhibits 3, 4, 5, & 13. Lawrence's counsel repeatedly requested those Exhibits from Marty and Bonnie's counsel beginning on November 21, 2024. Near the close of business on December 2, 2024, just hours before Lawrence's response to the Motion to Remand was due, Marty and Bonnie's counsel provided Exhibits 4 and 5. At 8:30 PM on December 2, Marty and Bonnie's counsel provided Exhibit 13. As of this filing, Marty and Bonnie's counsel have yet to provide Exhibit 13.

2

(the "Lone Star Ports Project" or "Project"). *Id.* ¶¶ 25-31. The Project is a significant and valuable development, and was previously valued by a third party at over $400 million. *Id.* ¶ 13. Indeed, Marty and Bonnie's counsel represented to the 215th District Court that the Project is worth over $1 billion. *See* Ex. 1, at 4:21-22 & 6:8 (11/12/24 Hearing Transcript). On November 8, 2024, Marty and Bonnie filed a Motion to Transfer Venue ("Motion to Transfer") and a Plea in Abatement/Motion to Abate ("Motion to Abate"), followed by a Motion for Leave to File Motion to Transfer Venue on November 11, 2024. After a short hearing on November 12, 2024—which did not delve into the merits of any pending motions or the merits of Plaintiffs' application for injunctive relief—the 215th District Court extended the temporary restraining order to November 28, 2024. *See* 11/14/24 Order.

Lawrence then timely removed this Harris County Lawsuit to the 11th Division of the Business Court of Harris County on November 15, 2024, within the 30-day removal period provided by the Texas Government Code. *See* TEX. GOV'T CODE § 25A.006(f)(1); *see also* 11/15/24 Notice of Removal. Marty and Bonnie then filed their Motion to Remand on November 20, 2024, incorporating most their arguments from their previously filed Motion to Transfer and Motion to Abate. *See generally* Motion to Remand.

The Harris County Lawsuit centers on the alleged breach of the Investment and Consulting Agreements and on Plaintiffs' claimed 20% ownership and management interests in the Project. Plaintiffs' claims in this Harris County Lawsuit also revolve in part around proper ownership and control of Axis, one of the Project entities.[3] *See* Pet. ¶¶ 25-31. The Investment and Consulting

---

[3] Marty and Bonnie argue in their Motion to Remand that Lawrence made unauthorized transfers of ownership in Axis. *See* Motion to Remand, at 4-5. This is false. Axis was incorporated by Lawrence and wholly owned by his Trust until he transferred ownership in Axis to Berry GP, which is owned in equal shares by the Berry Brothers. *See* Exs. 11-13 (Axis Transfers). On April 21, 2020, ownership of Axis was transferred from Berry GP to Redfish Bay Terminal, Inc. ("Redfish Bay"), in a transaction that was signed by both Lawrence (on behalf of Berry GP) and Dennis (on behalf of Redfish Bay). *See* Ex. 14 (Powers TI

3

Agreements both fix venue in Harris County. *See* Exs. 2 & 3. Marty and Bonnie argue in their Motion to Remand that the Court should either remand, dismiss, or transfer venue of this Harris County Lawsuit to Nueces County District Court, in favor of a previously filed dispute pending there between Lawrence, Marty, and several other parties unrelated to—and not named in—the Harris County Lawsuit.

## II. The Nueces County Lawsuit

Over a year ago, Lawrence—directly and derivatively on behalf of Becon, Inc.; LDMA Limited Partnership; and Berry GP, Inc. ("Berry GP")—sued Marty; Mike Hummell ("Hummell"); and three Berry Entities (as nominal defendants) for breaches of fiduciary duties and self-dealing transactions related to those three Berry Entities,[4] and sought injunctive relief against those defendants. *See generally* Ex. 4 (Pls.' 2nd Am. Pet.) (the "Nueces County Lawsuit").[5] Specifically, Lawrence alleged in the Nueces County Lawsuit that:

- Marty, with the assistance of Hummell and other management, imperiled a longstanding Berry GP line of credit in excess of $50 million, causing the line of credit to be placed in default, *see* Ex. 4 ¶¶ 3, 45-56;

- Marty, with the assistance of Hummell and other management, colluded in secret to authorize $75 million in self-dealing loans between Berry GP and Marty and Dennis, *see id*. ¶¶ 37-41;

---

Ex. 14). On the same day, ownership of Axis was then transferred from Redfish Bay to Lone Star Ports Holdings, LLC ("LSPH"). *See id*. While the transfer to LSPH was signed only by Lawrence, it was circulated by Powers to a third-party potential investor in the Project, copying Marty and Dennis on the email chain. *See id*. At no point did either Marty or Dennis indicate that this transfer was somehow inappropriate or unapproved.

[4] Berry GP; Berry Operating Company LLC; and Berry Contracting LP are defined in the Nueces County Lawsuit as the "Berry Entities." *See* Ex. 4 ¶ 1. The other Berry entities at issue in the Nueces County Lawsuit are LDMA Limited Partnership and Becon, Inc. *See id*. ¶¶ 25-27. None of the Berry entities named in the Nueces County Lawsuit are parties to this Harris County Lawsuit.

[5] Lawrence agreed to transfer the Nueces County Lawsuit from the 333rd District Court of Harris County to the 94th District Court of Nueces County.

4

- Marty has been secretly usurping Berry GP corporate opportunities by buying cranes through a personally owned business named Western Gulf Equipment and then leasing them back to Berry GP, *see id.* ¶¶ 3, 72, 117; and

- Marty and the other defendants, in violation of the Berry GP bylaws, secretly attempted to sell a valuable Berry GP dock facility without notice to or approval of the Berry GP Board of Directors, *see id.* ¶¶ 3, 104.

Lawrence did not assert claims against Powers or Allied Ports, who were not involved with the internal, self-dealing corporate transactions at issue in the Nueces County Lawsuit. Nor did Lawrence assert claims related to the Lone Star Ports Project. Indeed, Powers, Allied Ports, Axis, the Project, and the Investment and Consulting Agreements are not mentioned anywhere in Lawrence's Petition in the Nueces County Lawsuit. *See* Ex. 4.

On January 23, 2024, Marty and the three named Berry Entities filed counterclaims against Lawrence in the Nueces County Lawsuit. *See* Ex. 5 (Counter-Pls.' 1st Am. Pet.). They alleged mismanagement and conversion by Lawrence related to the use of funds pertaining to a series of companies Lawrence owns, referred to as "Orca." *See* Ex. 5 ¶¶14-20. Orca is entirely separate and unrelated to the Lone Star Ports Project and the issues in dispute in the Harris County Lawsuit. Again, Powers, Allied Ports, Axis, the Project, and the Investment and Consulting Agreements are not mentioned anywhere in defendants' counterclaims against Lawrence in the Nueces County Lawsuit. *See id.*[6]

On February 16, March 22, and March 25, 2024, the 94th District Court of Nueces County held a three-day hearing on the temporary injunction relief sought by Lawrence in the Nueces

---

[6] Attempting to bootstrap Axis onto the Harris County Lawsuit, Marty points solely to the fact that his Requests for Production defined "Berry-Related Companies" broadly to include Axis, Midway Junction, and Lone Star Ports LLC (among a list of over 50 entities), and sought some organizational and financial documents related to those entities. *See* Motion to Abate at 10-11. This is a red herring. Marty sought discovery related to any and all entities owned in part by Lawrence or Lawrence's trust to determine if Lawrence improperly transferred Orca funds to any of those companies. The Orca project and the alleged transfer of Orca-related funds is plainly ***not*** what is at issue in the Harris County Lawsuit. Marty's counterclaims in the Nueces County Lawsuit have nothing to do with this Project.

5

County Lawsuit. Specifically, Lawrence sought to enjoin the defendants there from (1) removing Lawrence from the Board of Directors of the Berry Entities, and (2) selling real property wholly owned by the Berry Entities without first giving two weeks written notice of the proposed sale to the Board of Directors, consistent with the Berry Entities' operating agreements. *See* Ex. 6 at 17:7-18:9 (2/16/24 Transcript); *see also* Ex. 9 ¶ 134 (3/14/24 Pl.'s 1st Am. Pet.). Nowhere in the hundreds of pages of testimony and evidence admitted over the three-day hearing was Powers, Allied Ports, Axis, or the Investment and Compensation Agreements even mentioned. And the Lone Star Ports Project was mentioned only once in passing in response to a background question regarding what Lawrence's assistant, Tonja Fulghum, was currently working on for Lawrence. *See* Ex. 8, at 268:1-2 (3/25/24 Transcript). Notably, under cross examination, Defendants never asked a single follow-up regarding Lone Star Ports Project. *See* Exs. 6-8 (Transcripts).

After the hearing, the 94th District Court of Nueces County granted Lawrence's injunctive relief in part, enjoining the defendants in the Nueces County Lawsuit from selling any of the Berry Entities' real property without at least 48-hours' notice to the Berry Entities' Board of Directors. *See* Ex. 10 (3/25/24 Ruling). Contrary to Marty and Bonnie's assertions, this relief was limited only to the sale of real property owned by the Berry Entities, and has nothing to do with Axis (which is not a party to the Nueces County Lawsuit) or the Lone Star Ports Project.

## **ARGUMENT**

### I. **The Business Court Has Proper Subject Matter Jurisdiction and Remand Is Improper**

In his Notice of Removal, Lawrence identified four separate bases satisfying the jurisdictional requirements of the Business Courts. *See* Notice of Removal. Specifically, jurisdiction is proper because the Harris County Lawsuit: (1) involves a transaction in excess of $5 million that concerns the internal affairs and corporate governance of Axis and the Lone Star

6

Ports Project, *see* TEX. GOV'T CODE § 25A.004(b)(2); (2) involves a transaction in excess of $5 million that is an action by an organization or its owners against other owners of an organization, alleging various acts and omissions by those owners, *see id*. § 25A.004(b)(4); (3) arises out of a qualified transaction where Plaintiffs have alleged they are entitled to receive consideration with an aggregate value of at least $10 million, *see id*. § 25A.004(d); and (4) seeks injunctive and declaratory relief involving claims under the aforementioned Subsections (b) and (d), *see id*. § 25A.004(e).

Marty and Bonnie do not substantively challenge any of the four stated bases for jurisdiction in their Motion to Remand. Rather, their motion focuses on venue and dominant jurisdiction arguments that Nueces County, not Harris County, is the proper venue—despite all parties having signed an Investment Agreement that places **mandatory** venue squarely in Harris County. As detailed below, those venue and abatement arguments are neither proper challenges to this Court's subject matter jurisdiction over Plaintiffs' claims, nor a compelling basis to transfer these claims away from Harris County, which has mandatory venue.

The only true remand argument Marty and Bonnie assert in their motion is based on a misapprehension of a provision of Texas Government Code.[7] That provision provides:

> A party to an action filed in a district court or county court at law in a county of proper venue that is not within an operating division of the business court or the judge of the court in which the action is filed may not remove or transfer the action to the business court.

---

[7] Marty and Bonnie also cite to Texas Rule of Civil Procedure 355(b)(2) to support the passing argument that Lawrence—as the removing party—failed to "plead facts" to establish venue because he merely cited to the Plaintiffs' petition in his Notice of Removal. But Marty and Bonnie cite no law indicating that Lawrence, as a defendant, is required to do anything more on removal than cite to the venue facts pleaded by Plaintiffs.

TEX. GOV'T CODE § 25A.006(e).  Marty and Bonnie contend that because Lawrence is a party to some other, unrelated action in Nueces County (which has no operating Business Court), he may not now remove this distinct and separate Harris County Lawsuit, even though Harris County **does** have an operating Business Court.  *See* Motion to Remand at 12.  This is nonsensical.  Texas Government Code Section 25A.006(e) simply stands for the unremarkable proposition that if a lawsuit is filed in a county where no operating Business Court exists, removal and transfer of that action to another county's Business Court is not allowed.  Nothing about Lawrence's removal of the Harris County Lawsuit to the Business Court here is prohibited by this statute, and Marty and Bonnie's arguments to the contrary offer no basis for dismissal.

This Court has proper jurisdiction over the claims in the Harris County Lawsuit and Marty and Bonnie's Motion to Remand should be denied.[8]  As further detailed below, Marty and Bonnie's venue and abatement arguments are likewise without merit.

## II.      Harris County Is the Only Proper Venue for This Lawsuit

Ignoring entirely the Investment Agreement that Marty and Dennis signed fixing mandatory venue in Harris County,  Marty and Bonnie wrongly urge that venue is proper in Nueces County pursuant to (1) Texas Civil Practice and Remedies Code ("CPRC") Section 15.011's provision applying to disputes over real property;[9] (2) CPRC Section 15.002(a)'s permissive venue

---

[8] Even if remand were somehow appropriate here, which it is not, Marty and Bonnie's requested relief under Texas Government Code Section 25A.006(b) for a transfer to Nueces County is entirely improper.  Any remand for lack of jurisdiction would be to the Harris County District Court, **not** a transfer to a Court where venue is improper and where Plaintiffs have not agreed to venue.  *See* TEX. GOV'T CODE § 25A.006(d) ("If the business court does not have jurisdiction of the action, the business court shall remand to the court in which the action was originally filed.").  And as noted below in Part II.B.2, if the Court has jurisdiction but venue is somehow improper in Harris County (which it is not), then the only proper alternative venue would be the Business Court in San Patricio County.

[9] Motion to Remand, at 13.

provision;[10] and (3) CPRC Section 15.002(b)'s permissive venue provision pertaining to convenience of the parties.[11] As detailed below, each of these arguments fails.

A. **The Investment Agreement Constitutes a Major Transaction and Fixes Venue in Harris County**

CPRC Section 15.020(a) is a mandatory venue provision governing major transactions where the transaction agreement specifies an agreed venue. *See* TEX. CIV. PRAC. & REM. CODE § 15.020(a). A "major transaction" is defined as "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* Here, the Investment Agreement constitutes a "major transaction" with the express agreed venue of Harris County, making venue mandatory in Harris County.

Marty and Bonnie repeatedly assert that "Lawrence was the only person to sign the [Investment Agreement], and he signed in his individual capacity"[12]; "[t]he Berry Defendants never signed the . . . Investment Agreement, nor did they ever give Lawrence permission to sign the agreements on their behalf"[13]; and "Lawrence acted without the Berry Defendants' consent or knowledge[.]"[14] ***This is wrong***. Indeed, Marty and Dennis **_did_** sign the Investment Agreement and did so in their individual capacities without influence or duress. *See* Ex. 2, at 7-8. Thus, the Investment Agreement constitutes a written agreement signed by Powers, Lawrence, Marty, and Dennis.

---

[10] Motion to Transfer ¶ 6.

[11] Motion to Transfer ¶ 8.

[12] Motion to Transfer ¶ 5 & n.1.

[13] *Id*. ¶ 7; *see also* Motion to Remand, at 4 & n.12.

[14] *Id*.

### 1. The Investment Agreement is a written agreement with aggregate consideration greater than $1 million.

Contrary to Marty and Bonnie's offhanded comment that the Investment Agreement specifies consideration of only $5,000, the Investment Agreement is a written agreement under which the Berry Brothers are entitled to receive over $1 million. *See* TEX. CIV. PRAC. & REM. CODE § 15.020(a). The face of the Investment Agreement states that the Berry Brothers are "entitle[d] to receive priority distributions and preferred returns" related to the Project of "Two Hundred Fifty Million United States Dollars ($250,000,000), plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount." *See* Ex. 2, at 2-3. This plainly establishes that the Berry Brothers are "entitled to receive[] consideration with an aggregate stated value equal to or greater than" $250 million in relation to the Project, well clearing the "major transaction" threshold of $1 million. *See* TEX. CIV. PRAC. & REM. CODE § 15.020(a); *see also Shamoun & Norman, LLP v. Yarto Intern. Group, LP*, 398 S.W.3d 272, 294 (Tex. App.—Corpus Christi-Edinburg 2012, pet. dism'd) (settlement agreement evidenced "major transaction" because "[t]he amounts of the payments were explicitly set forth in the agreement").

### 2. Plaintiffs' claims "arise from" the Investment Agreement.

Under CPRC Section 15.020(b), "[a]n action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county." In determining whether the claims "arise from" a major transaction, the courts conduct a "commonsense examination of the substance of the claims made to determine if they arise from the [major transaction]." *See In re Fisher*, 433 S.W.3d 523, 529 (Tex. 2014). This includes "consider[ing] whether a claimant seeks a direct benefit from a contract and whether the contract or some other general legal obligation establishes the duty at issue." *Id.* Here, Plaintiffs seek a declaratory judgment to construe and enforce the

10

Investment Agreement, as well as injunctive relief to prevent Defendants from acting in violation of the Investment Agreement. *See* Pet. ¶¶ 24-25, 31-35. Applying the common-sense analysis outlined by the Texas Supreme Court, Plaintiffs' claims plainly "arise from" the Investment Agreement. *See In re Fisher*, 433 S.W.3d at 529-31.

### 3. The Investment Agreement fixes venue for this suit in Harris County.

Because the Investment Agreement is a "major transaction," and because Plaintiffs' claims arise from the Investment Agreement, this suit must be brought in Harris County. As stated above, CPRC Section 15.020(b) mandates that actions arising from a major transaction be brought in a particular county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county. The Investment Agreement is crystal clear that "any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated" therein "shall be brought in the state or federal courts in Harris County[.]" *See* Ex. 2, at 4. Lawrence, Marty, and Dennis all signed the Investment Agreement,[15] so this venue provision is enforceable against the Berry Defendants, including Bonnie as successor in interest to Dennis. *See* TEX. CIV. PRAC. & REM. CODE § 15.020(b).

The Supreme Court of Texas has repeatedly held that CPRC Section 15.020(b) "requires enforcement of a pre-litigation agreement fixing venue in major transactions." *See In re Fox River Real Estate Holdings, Inc.*, 596 S.W.3d 759, 763 (Tex. 2020) (citing TEX. CIV. PRAC. & REM. CODE § 15.020); *see also In re Fisher*, 433 S.W.3d at 528-534. Further, "Section 15.020 is one of the

---

[15] Despite the fully executed copy of the Investment Agreement having been produced, Marty and Bonnie's counsel suggested they may raise a forgery defense. The document itself is prima facie evidence that all parties signed, and therefore is sufficient proof at the removal stage. *See, e.g.*, *In re Missouri Pac. R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999). Moreover, Lawrence recalls being present when both Marty and Dennis signed the Investment Agreement.

mandatory venue provisions contained in chapter 15 of the civil practice and remedies code and is therefore enforceable by mandamus." *Shamoun & Norman*, 398 S.W.3d at 293-94; *see also In re Fisher*, 433 S.W.3d at 528-29 ("Mandamus relief is specifically authorized to enforce a statutory mandatory venue provision."); *In re Texas Ass'n of School Boards, Inc.*, 169 S.W.3d 653, 656 (Tex. 2005) (same). "[I]t is reversible error if the trial court erroneously denie[s] application of the mandatory venue provision." *See Hughes v. Pearcy*, 2014 WL 7014353, at \*2 (citing *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996)). Thus, the Court must enforce the Investment Agreement's Harris County venue provision.

### B. Marty and Bonnie's Venue Arguments Are Wrong

Marty and Bonnie attempt to sidestep the Investment Agreement's mandatory venue provision fixing venue in Harris County, arguing that venue is instead proper in Nueces County. But none of Marty and Bonnie's purported bases for venue in Nueces County are proper and none trump mandatory venue in Harris County.

### 1. CPRC Section 15.020 controls over other venue provisions.

First, Texas law is clear that CPRC Section 15.020 trumps other mandatory venue provisions. As the Texas Supreme Court noted, Section 15.020 "applies to an action arising from a major transaction ***notwithstanding any other provision of this title***." *See In re Fisher*, 433 S.W.3d at 533-34 (emphasis added). In *Fisher*, the Texas Supreme Court reasoned, based on the plain language of the provision, "that the Legislature intended for [Section 15.020] to control over other mandatory venue provisions." *Id*. at 534 (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 413-14 (Tex. 2011)). The Texas Supreme Court reaffirmed this holding several years later, holding that Section 15.020 "requires enforcement of the parties' venue agreement notwithstanding any other provision of this title [Title 2], unless section 15.020 does not apply for one of the reasons stated

in subsection (d)." *In re Fox River*, 596 S.W.3d at 764 (citing TEX. CIV. PRAC. & REM. CODE § 15.020(a)-(c)).

An exception to the enforcement of CPRC Section 15.020 over other mandatory venue provisions arises only if mandatory venue "is established under a statute of this state other than this title," referring to Title 2 of the Texas Civil Practice and Remedies Code. *See id*. (citing TEX. CIV. PRAC. & REM. CODE § 15.020(d)(3)). Here, however, Marty and Bonnie only urge the application of other venue provisions contained in Title 2, including Sections 15.011, 15.002(a), and 15.002(b). Because each of those venue provisions is superseded by Section 15.020, venue is only proper in Harris County.

### 2. This is not a land dispute for which venue would be proper in Nueces County.

Second, this is not a dispute over real property that would be subject to the venue provision outlined in CPRC Section 15.011. Land disputes are suits to (1) recover real property; (2) recover an estate or interest in real property; (3) partition real property; (4) remove encumbrances on title to real property; (5) recover damages to real property; and (6) quiet title to real property. *See* TEX. CIV. PRAC. & REM. CODE § 15.011. Plaintiffs here seek to do none of those things; in fact, there is no mention of any real property in Plaintiffs' Petition. *See generally* Pet. Rather, Plaintiffs bring a breach-of-contract claim related to the Compensation Agreement, and additionally seek: (1) a declaration that certain agreements, including the Investment Agreement, are valid and enforceable; (2) a declaration that Plaintiffs own a 20% interest in the Project consistent with the Investment Agreement; (3) a declaration that transferring ownership or control of certain Project companies inconsistent with the Investment Agreement would constitute a breach of the Investment Agreement; and (4) injunctive relief consistent with that declaratory relief. *See* Pet. ¶¶ 23-35. Marty and Bonnie's attempt to apply Section 15.011's land-dispute venue provision in this

13

context is without merit. Under their view of Section 15.011, any dispute over ownership of a company that happens to own real property would always have to be brought in the county of the property, regardless of whether the real property itself is at issue.

Moreover, Marty and Bonnie's attempt to use CPRC Section 15.011 to transfer this Harris County Lawsuit to Nueces County is improper. Texas Government Code Section 25A.006(c) is clear that if the Business Court determines that its geographic territory does not include a county of proper venue, it shall:

> (1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or
>
> (2) if there is not an operating division of the court that includes a county of proper venue, at the option of the party filing the action, transfer the action to a district court or county court at law in a county of proper venue.

*See* TEX. GOV'T CODE § 25A.006(c). But Marty and Bonnie state that "[t]he real property at issue is located in Nueces and San Patricio counties," so under their argument, venue would be proper in **either** Nueces County **or** San Patricio County. *See* Motion to Transfer ¶ 1; *see also* 11/8/24 Hummell Affidavit ¶ 3. While Nueces County is not subject to an operating division of the Business Court, San Patricio County is subject to the Fourth Division. Thus, even if Marty and Bonnie's argument about the application of Section 15.011 were correct, Texas Government Code Section 25A.006(c)(1) would mandate that the Court transfer this action to the Fourth Division of the Business Court, **_not_** to Nueces County. No situation exists in which transfer of this case to Nueces County would be procedurally proper under Texas law.

### 3. Permissive venue provisions are inapplicable here.

Third, the permissive venue provisions outlined in CPRC Section 15.002 do not apply, and it would be reversible error to transfer this case to Nueces County on "convenience" grounds. Section 15.001(b) makes clear that if a mandatory venue provision applies, a suit must be filed in

the county of mandatory venue. If, and only if, there is no applicable mandatory venue provision does the permissive venue provision detailed in Section 15.002 apply. *See* TEX. CIV. PRAC. & REM. CODE § 15.001(b)(2). Because Section 15.020 is a mandatory venue provision which must be enforced, the Court cannot transfer venue to Nueces County on permissive or "convenience" grounds under Section 15.002. Indeed, it would be "reversible error if the trial court erroneously denied application of the mandatory venue provision." *See Hughes*, 2014 WL 7014353, at *2 (citing *Wichita Cnty.*, 917 S.W.2d at 781). For these reasons, venue is improper in Nueces County, and Marty and Bonnie's Motion to Remand must respectfully be denied.

## III.    Dominant Jurisdiction Does Not Lie in Nueces County

Marty and Bonnie's abatement arguments under a theory of dominant jurisdiction are equally unavailing. Foundationally, the term "dominant jurisdiction" is a misnomer because it is not a doctrine of jurisdiction, but one of venue. *Phillips v. Phillips*, 651 S.W.3d 112, 119 n.4 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also Gordon v. Jones*, 196 S.W.3d 376, 382–83 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Curtis v. Gibbs*, 511 S.W.2d 263, 266 (Tex. 1974) (dominant jurisdiction resolves ***venue*** conflict between two courts with subject-matter jurisdiction). Thus, to the extent that Marty and Bonnie attempt to frame this alternative venue dispute as a subject matter jurisdiction issue, that is incorrect; it is simply one of venue.

Dominant jurisdiction does not apply here. The law is clear that to demonstrate dominant jurisdiction in Nueces County, Marty and Bonnie must prove ***both*** (1) that venue for this lawsuit is proper in that county, ***and*** (2) the existence of an "inherent interrelation" between the subject matter of the two pending lawsuits. *See In re J.B. Hunt Transport, Inc*., 492 S.W.3d. 287, 294 (Tex. 2016); *In re Red Dot Building System, Inc*., 504 S.W.3d 320, 322 (Tex. 2016); *Gonzalez v. Reliant Energy, Inc*., 159 S.W.3d 615, 622 (Tex. 2005) (holding no dominant jurisdiction where

movant failed to demonstrate venue was proper in the first-filed suit); *In re Forney*, 554 S.W.3d 145, 151 (Tex. App.—San Antonio 2018, no pet.) (refusing to find dominant jurisdiction where lawsuits were not inherently interrelated).  Because they can demonstrate neither prong, Marty and Bonnie's Motion to Remand on a dominant jurisdiction argument fails.

### A.     Venue Is Improper in Nueces County

The Nueces County Case cannot have dominant jurisdiction over this case because venue is *improper* in Nueces County.  The Texas Supreme Court has made clear that the first-filed court "cannot have 'dominant jurisdiction' if it does not have proper venue."  *See Gonzalez*, 159 S.W.3d at 619 (internal citations omitted).  Under blackletter Texas law, then, if venue is not proper in Nueces County, the dominant jurisdiction inquiry ends here.  *See id*.

As detailed above in Part II, Harris County is the only proper venue for this lawsuit.  The Investment Agreement signed by Powers and the Berry Brothers qualifies as a major transaction, thus triggering CPRC Section 15.020's *mandatory* venue provision which controls over all other venue provisions in Title 2 of the CPRC.  Venue is therefore improper in Nueces County, so the dominant jurisdiction inquiry ends here.  The Nueces County District Court cannot adjudicate Plaintiffs' claims, which properly belong *only* in Harris County.

### B.     This Lawsuit Is Not Inherently Interrelated to the Nueces County Lawsuit

Even if venue was somehow proper in Nueces County, no dominant jurisdiction lies because the Harris County and the Nueces County Lawsuits are separate and distinct from one another.  In determining whether two suits are inherently interrelated, Texas courts are guided by the compulsory counterclaim rule.  *See Encore Enterprises, Inc. v. Borderplex Realty Trust,* 583 S.W.3d 713, 722 (Tex. App.—El Paso, 2019, no pet.) (citing *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d at 292).  A counterclaim is compulsory if: (1) it is a claim within the jurisdiction of the

16

court; (2) not the subject of a pending action; (3) ***which at the time of filing the pleading the pleader has against any opposing party***; (4) ***it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim***; and (5) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. *See* TEX. R. CIV. P. 97(a) (emphasis added); *Casterline v. OneWest Bank, FSB*, No. 13-17-00118-CV, 2018 WL 1755821, at \*5 (Tex. App.—Corpus Christi Apr. 12, 2018, pet. denied). Marty and Bonnie cannot satisfy either the third or fourth elements here.

### 1. Plaintiffs are not compulsory counter-claimants in the Nueces County Lawsuit.

Plaintiffs are not and cannot be compulsory counterclaimants in the Nueces County Lawsuit. For a counterclaim to be compulsory, the pleader must have the claim against ***any opposing party*** at the time he files his pleading. TEX. R. CIV. P. 97(a) (emphasis added). Here, Plaintiffs are not and never have been parties to the Nueces County Lawsuit, so their claims could not properly be asserted as counterclaims in the Nueces County Lawsuit. Further, Lawrence never sued Powers or Allied Ports in the Nueces County Lawsuit because they had no relationship to the claims Lawrence asserts in that case, as detailed below. Nor did the defendants in the Nueces County Lawsuit add Powers or Allied Ports as parties to their counterclaims in the Nueces County Lawsuit, because Powers and Allied Ports have nothing to do with those counterclaims, either. In fact, of the twelve parties sued in both cases, only Lawrence and Marty overlap. *Compare* Exs. 4 & 5 *with* Pet.

### 2. The Harris County Lawsuit does not arise out of the same transactions at issue in the Nueces County Lawsuit.

The Harris County Lawsuit does not arise out of the same transaction or occurrence as the Nueces County Lawsuit, despite Marty and Bonnie's attempts to muddy the water by distorting

the facts and claims pled in that case. To determine whether counterclaims arise out of the same transaction or occurrence, courts apply a logical relationship test. *Moore v. First Fin. Resolution Enterprises, Inc.*, 277 S.W.3d 510, 516 (Tex. App.—Dallas 2009, no pet.). Application of this test requires that at least some of the facts surrounding the causes of action arise from the same transaction or occurrence. *Jack H. Brown & Co. v. Nw. Sign Co.*, 718 S.W.2d 397, 400 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Here, the test is not met on this record—these two suits lack both commonality of parties and relatedness of claims.

In the Harris County Lawsuit, Powers and Allied Ports assert breach of contract and declaratory judgment claims related to the Investment and Compensation Agreements signed by Berry Brothers concerning the Lone Star Ports Project. *See* Pet. ¶¶ 25-37. As such, Plaintiffs' claims **solely** concern their alleged ownership rights in the Project, including through the Axis company. *See id.* Plaintiffs' claims in this lawsuit are entirely independent and divorced from the various complained-of self-dealing transactions and alleged intercompany transfer disputes at issue in the Nueces County Lawsuit (described below). The Harris County Lawsuit also does not include claims or requested injunctive relief related to real property, let alone the real property at issue in the Nueces County Lawsuit; rather, Plaintiffs focus their claims on alleged unauthorized actions by Marty and Bonnie to change the ownership structure of the Lone Star Ports Project. *See id.*

Conversely, the Nueces County Lawsuit involves an internal dispute over a family-owned business to which Powers and Allied Ports have no relation. Specifically, the Nueces County Lawsuit alleges various breaches of fiduciary duties and other improper actions asserted by Lawrence against his brother Marty and other management personnel not named in the Harris County Lawsuit. These include: (1) imperiling a long-standing line of credit that represented the

18

Berry Entities' primary source of operational funding, causing it to be placed in default; (2) colluding in secret to authorize self-dealing loan agreements from Marty and Dennis—themselves officers, directors, and shareholders of the Berry Entities—to the Berry Entities without notice or consultation with the other officers and directors; (3) secretly usurping corporate opportunities by buying cranes through a personally owned company called Western Gulf, and then leasing them back to the Berry Entities in a series of undisclosed self-dealing transactions; and (4) secretly attempting to sell the company's real property—a dock unrelated to the Lone Star Ports Project— without notice to or authorization from the Board of Directors. *See* Ex. 4 ¶¶ 3, 70-122. None of those claims concern a breach of the Investment or Consulting Agreement and none have anything to do with ownership rights relating to the Lone Star Ports Project. Nor do any of the defendants' counterclaims against Lawrence in the Nueces County Lawsuit. Those focus solely on alleged "Director account" receivables owed by Lawrence to Berry GP, primarily relating to the "Orca Transaction," which has nothing to do with Powers, Allied Ports, Axis, the Investment Agreement, or the Lone Star Ports Project. *See* Ex. 5 ¶¶ 16-49; *see also* n. 5, supra.

Notably, entirely absent from the Nueces County Lawsuit is any mention of Powers, Allied Ports, Axis, the Lone Star Ports Project, or the Investment and Consulting Agreements at issue in this Harris County Lawsuit. *See* Ex. 4 & 5. In fact, in the three-day hearing on Lawrence's motion for a temporary injunction in the Nueces County Lawsuit, there was not a single mention of Powers, Allied Ports, Axis, or the Investment and Consulting Agreements. *See generally* Exs. 6-8. And the sole mention of the Lone Star Ports Project in hundreds of pages of hearing transcripts was one sentence of background testimony by Lawrence's assistant explaining generally the kind of work she has currently been performing for Lawrence. *See* Ex. 8, at 268:1-2 ("Most recently we've been working on the Lone Star Ports project.").

In contrast, Plaintiffs' claims in this lawsuit are entirely and exclusively about the Lone Star Ports Project. *See generally* Pet. In this lawsuit, the Court will be required to construe various provisions of the Investment and Consulting Agreements, declare the parties' rights and obligations thereunder, resolve conflicting factual allegations, and determine if a breach occurred—all related to the Lone Star Ports Project. None of that is at issue in the Nueces County Lawsuit, which concerns entirely different transactions, claims, entities, and parties. In other words, Plaintiffs' declarations sought in this lawsuit will not be litigated whatsoever in the Nueces County Lawsuit.

And even if some overlap or general connection existed, that is insufficient to demonstrate that the two lawsuits are inherently interrelated. Indeed, courts have repeatedly declined to find inherent interrelation even when certain facts and parties overlap where they concern differing transactions and where resolution of one suit would not resolve the issues in the other. *See In re Forney*, 554 S.W.3d at 151 ("Although the two suits involve overlapping parties and the claims in both suits arise out of the prior employment relationship between relators and McCombs Energy, the subject matter of the two suits is not inherently interrelated.").[16] Here, because the claims in the Nueces County and Harris County Lawsuits arise out of different alleged facts, agreements, and parties, a judgment in one suit would not foreclose the issues in the other suit. *See Dolenz*, 620 S.W.2d at 575 (trial court did not abuse its discretion by denying a plea in abatement where a judgment in the first-filed suit would not have foreclosed all issues between the parties). For these reasons, Marty and Bonnie's attempts to abate or dismiss the Harris County Lawsuit fail.

---

[16] *See also In re Martin,* 358 S.W.3d 767, 771 (Tex. App.—Texarkana 2012, no pet.) (suits not inherently interrelated where in first suit, shareholder sued company and other shareholders alleging they wrongfully issued shares to increase voting power, and in second suit, company sued shareholder claiming he breached fiduciary duty to company); *see also Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 26 (Tex. 2008) (second-filed court need **not** be abated where parties overlapped but were not the same, most but not all of plaintiffs in both cases were the same, certain claims in two cases were legally similar but factually distinct, and other claims were more closely related but not identical).

## CONCLUSION

For the foregoing reasons, Lawrence Berry respectfully asks that the Court deny Marty and

Bonnie's Motion to Remand.

**Dated**: December 3, 2024

Respectfully submitted,

By: */s/ Barrett H. Reasoner*
Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael R. Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903


**ATTORNEYS FOR DEFENDANT**
**A. LAWRENCE BERRY**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2024, a true and correct copy of this document was served via E-filing notification or by email on the following counsel:

Alistair B. Dawson
adawson@beckredden.com
M. Jake McClellan
jmcclellan@beckredden.com
Madeline E. Gay
mgay@beckredden.com
BECK REDDEN
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010


***Attorneys for Plaintiffs***

Douglas A. Allison
doug@dallisonlaw.com
LAW OFFICES OF DOUGLAS A. ALLISON
403 N. Tancahua Street
Corpus Christi, Texas 78401

Vanessa Gilmore
vg@robertsmarkland.com
ROBERTS MARKLAND LLP
2555 N MacGregor Way
Houston, Texas 77004

***Attorneys for Defendants Marvin Berry and Bonnie Berry***


*/s/ Bruce Baldree*
Bruce Baldree

22

**VERIFICATION**

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

I, Lawrence Berry, am of sound mind and capable of making this verification. I have read the foregoing Response to Motion for Remand. I declare under penalty of perjury that the facts and statements contained therein are within my personal knowledge and true and correct.

Executed in Harris County, State of Texas, on the _02_ day of December, 2024.

_____<br>
Lawrence Berry

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

SWORN TO AND SUBSCRIBED BEFORE ME BY Lawrence Berry on this _02_ day of December, 2024, to certify which witness my hand and seal of office.

_____M. Antunez_____<br>
Notary Public, State of Texas

MAURICIO ASENCIO ANTUNEZ
Notary ID #13301764
My Commission Expires
August 27, 2025

23

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosa Brennan on behalf of Barrett Reasoner
Bar No. 16641980
rbrennan@gibbsbruns.com
Envelope ID: 94874370
Filing Code Description: Answer/Response
Filing Description: Defendants Response to Motion to Remand, Dismiss, or Transfer Venue
Status as of 12/3/2024 2:15 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/3/2024 11:47:08 AM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 12/3/2024 11:47:08 AM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/3/2024 11:47:08 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/3/2024 11:47:08 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/3/2024 11:47:08 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/3/2024 11:47:08 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/3/2024 11:47:08 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2024 11:47:08 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/3/2024 11:47:08 AM | SENT |

# SUPPLEMENTAL APPENDIX 10

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2024 11:51 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | IN THE BUSINESS COURT |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ELEVENTH DIVISION** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS,** | § | |
| **LLC; ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; AND** | § | |
| **BONNIE BERRY, as successor in** | § | |
| **interest to DENNIS WAYNE BERRY** | § | |
| | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE AND MOTION TO REMAND/DISMISS/TRANSFER

## INTRODUCTION

Defendants Marvin Berry ("Marty") and Bonnie Berry ("Bonnie") have filed a Motion to Transfer Venue ("MTV") and Motion to Remand, Dismiss, and/or Transfer Venue ("MTR") and a Plea in Abatement (the "Motions") all of which ignore the fact that Marty and Bonnie (through her husband Dennis) contractually agreed that exclusive jurisdiction in this case lies ***only*** in Harris County, Texas. Plaintiffs respectfully submit that the most efficient path to resolving the Motions is to enforce the parties' agreement and rule that exclusive jurisdiction for disputes under the Investment Agreement is in Harris County and Harris County only. There are two independent paths to such a conclusion. First, the contractual clause at issue is an enforceable forum selection clause which is presumptively enforceable in Texas and can only be ignored if the party challenging the enforceability of the clause meets an onerous burden of proof which Marty and Bonnie have not met in this case.

Alternatively, the clause at issue is a venue selection clause which grants mandatory and exclusive jurisdiction in Harris County for this case, evidence of which Plaintiffs have established by prima facie proof. *See, e.g.*, Tex. R. Civ. P. 87(3)(a); *Sustainable Tex. Oyster Research Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 106 (Tex. App.—Houston [1st Dist.] 2016, pet. denied (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993)) (A plaintiff's "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof."). ***If this Court determines that claims in this lawsuit are subject to either a forum selection clause or an enforceable venue selection clause, then both the Plea in Abatement and the Motion to Transfer Venue must be denied.***

Plaintiffs' claim for an ownership interest in the project that is the subject of this lawsuit is based on an Investment Agreement signed by all parties (the "Investment Agreement."). *See, e.g.*, Plaintiffs' Third Amended Petition at p. 1. The Investment Agreement between these sophisticated parties from separate states includes a provision that *requires* this lawsuit to be brought and litigated *only* in Harris County, Texas and *may not* be brought in Nueces County or any other county. **Ex. 1** at §5(a). In the Agreement, the Berry Defendants not only consented to "exclusive jurisdiction" in Harris County for any suit "seeking to enforce any provision of, or based on any matter arising out of in connection with this Agreement or the transactions contemplated hereby," but they also "**irrevocably waive[d]**, to the fullest extent permitted by relevant law, any objection that may now have or hereafter have to the laying of venue or any of any such suit, action, or proceeding in any such court." **Ex. 1** at § 5(a) (emphasis added). Simply put, the courts in Harris County are the *only* courts where Plaintiffs' claims can be brought. Nueces County does not have jurisdiction over this lawsuit, and Marty and Bonnie waived their right to object to venue in Harris County just as they have attempted to do here.

Aside from that dispositive issue, Marty and Bonnie's venue arguments are unpersuasive and irrelevant, and none lead to mandatory venue in Nueces County. The assertion that "real property" involved with the Lone Star Ports Project at issue in this lawsuit is located in Nueces County is a red herring and, even absent the Investment Agreement, would still not support transfer to Nueces County. Plaintiffs are not seeking to adjudicate any issues involving "real property," and the entity at the center of this lawsuit, Axis Midstream Holdings, LLC, does not own any real property in Nueces County. Similarly, Lawrence Berry is not "sham" defendant, as the relief Plaintiffs seek applies equally to him as it does to the other Berry Defendants.

Regardless, Nueces County is not a county of proper venue that (1) is within another operating business court division or (2) a county of proper venue that would be considered "at the option of the party filing the action." *Id.* at § 25.006A(c). If this Court determines that it does not have jurisdiction or that venue is not proper in Harris County, then the Plaintiffs get to pick which county this case should be transferred to and the Plaintiffs do not select Nueces County.[1] Finally, transfer for convenience is not appropriate when a forum selection clause or mandatory venue applies, and Marty and Bonnie woefully failed to meet their burden anyway. Defendants' Motions should be denied.

---

[1] If the Court determines that this case should be transferred to another court, Plaintiffs suggest that it be transferred to the Business Court in San Antonio. One of the entities involved in the Project that is the subject of this lawsuit owns property in San Patricio County, which is within the jurisdiction of the Fourth Business Court Division in San Antonio. Tex. Gov't Code § 25A.003(f); *id.* at § 74.042(e); *see also* MTR at Ex. 14, Hummell Affidavit at ¶ 3 ("The Midway to Harbor Island Project that is the subject of the TRO in the above-referenced litigation is located entirely in San Patricio and Nueces Counties.").

I.     **The parties agreed to "exclusive jurisdiction" in Harris County in a mandatory forum selection clause.**

While Marty and Bonnie have attempted to create several different smokescreens over jurisdiction and venue over this action, at bottom both are straightforward. In the Investment Agreement, Powers and the Berry Defendants agreed to "**exclusive jurisdiction**" "**in the state or federal courts in Harris County, Texas**" for suits "seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort or otherwise… so long as one of such courts shall have subject-matter jurisdiction[3] over such suit[.]" **Ex. 1** at §5(a) (emphasis added). Moreover, the Berry Defendants agreed to "irrevocably waive[], to the fullest extent permitted by relevant law, **any objection** that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding or that any such suit, action, or proceeding which is in any such court has been brought in an inconvenient forum." *Id*. (emphasis added). A full copy of the provision is reproduced below for convenience:

---

[2] Plaintiffs' Verified Third Amended Petition contains a fulsome recitation of the facts applicable to this action, and Plaintiffs' Response to Marty's Plea in Abatement contains a condensed factual background. The facts relevant to venue are referenced through this section and supported by the Declaration of Plaintiff Albert Theodore Powers attached as **Exhibit 10**.

[3] The Court's subject matter jurisdiction can be plainly derived from Tex. Gov't Code § 25A.004(d), as this action involves a "qualified transaction"[3] with an amount in controversy of more than $10,000,000. *See, e.g.*, Plaintiffs' Third Am. Pet. at ¶ 8, 13; *see also* Defendant Lawrence Berry's Notice of Removal. The Motion to Remand is not based on an assertion that this Court lacks subject matter jurisdiction. Rather, it is based on assertions that there were procedural defects in the removal to this Court. Those defects are being addressed by Lawrence Berry as the removing party.

> (a) **Governing Law, Jurisdiction, and Venue.** This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas. Powers and each of the Berrys hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in Harris County, Texas, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Texas. Powers and each of the Berrys hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

Despite their agreement, Marty and Bonnie are now ignoring that Harris County has "exclusive jurisdiction" and seeking to object to venue that they "irrevocably waive[d]." As set forth further below, the Court should hold them to their agreement.

**A.      The forum selection clause is valid and enforceable.**

In Texas, forum selection clauses are "presumptively valid." *See, e.g.*, *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010). "A trial court abuses its discretion in refusing to enforce the clause unless the party opposing enforcement clearly shows (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit is brought, or (4) the selected forum would be seriously inconvenient for trial." *Id*. Notably, the "burden of proof

is heavy for the party challenging enforcement." *Id.* And in this case, Marty and Bonnie can come nowhere close to meeting their burden of proof.

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects the parties 'legitimate expectations' and furthers 'the vital interests of the justice system,' such as sparing litigants the time and expense of pretrial motions to determine the proper forum for disputes." *See, e.g.*, *In re Agresti*, 2014 WL 3408691, at *3 (Tex. App.—Corpus Christi May 29, 2014, mand. denied) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991). Not surprisingly, Texas courts have routinely enforced and construed contractual provisions as "forum selection clauses" that, like this one, provide "exclusive jurisdiction" to certain enumerated courts:

- *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558 (Tex. 2004) ("The parties hereto consent to the **exclusive jurisdiction** of the courts of Montgomery County, Pennsylvania.") (emphasis added);

- *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 230-31 ("AGREE TO SUBMIT FOR THEMSELVES, IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY SCHEDULE OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE **EXCLUSIVE JURISDICTION** OF THE COURTS OF THE COMMONWEALTH [sic] OF PENNSYLVANIA, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE COMMONWEALTH OF PENNSYLVANIA, AND APPELLATE COURTS FROM ANY THEREOF, (B) CONSENT THAT ANY ACTION OR PROCEEDING SHALL BE BROUGHT IN SUCH COURTS, AND WAIVE ANY OBJECTION THAT EACH MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT") (capitals in original) (emphasis added);

- *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 674 (Tex. 2009) ("It is agreed that **exclusive jurisdiction** and venue shall vest in the Nineteenth Judicial District of Lake County, Illinois, Illinois law applying.") (emphasis added).

- *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 434 (Tex. 2017) ("[T]he Delaware state courts of Wilmington, Delaware (or, if there is exclusive federal jurisdiction, the United States District Court for the District of Delaware) shall have **exclusive jurisdiction** and venue over any dispute arising out of this Agreement, and the parties hereby consent to the jurisdiction of such courts.") (emphasis added).

- *Rieder v. Woods*, 603 S.W.3d 86, 90 (Tex. 2022) ("ANY CLAIMS OR CONTROVERSIES UNDER OR RELATED TO THIS AGREEMENT SHALL BE **EXCLUSIVELY** DETERMINED IN THE STATE AND/OR FEDERAL COURTS LOCATED IN TARRANT COUNTY, TEXAS, TO WHOSE **JURISDICTION** EACH PARTY IRREVOCABLY CONSENTS.") (capitals in original) (emphasis added).

Texas appellate courts have done the same:

- *Deep Water Slender Wells, Ltd. v. Shell Int'l Explor. & Prod., Inc.*, 234 S.W.3d 679, 683-84 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("the parties irrevocably agree that the courts of The Hague, The Netherlands shall have **exclusive jurisdiction** to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement or breach thereof") (emphasis added);

- *In re Counsel Fin. Servs., L.L.C.*, 2013 WL 3895317, at \*1 (Tex. App.—Corpus Christi, Jul. 25, 2013, no pet.) ("BORROWER HEREBY CONSENTS AND AGREES THAT ANY FEDERAL OR STATE COURT LOCATED IN ERIE COUNTY, NEW YORK, SHALL HAVE **EXCLUSIVE JURISDICTION** TO HEAR AND DETERMINE ANY CLAIMS AND DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE…") (capitals in original) (emphasis added);

- *Loya v. Loya*, 507 S.W.3d 871, 874 (Tex. App.—Houston [1st Dist.] 2016, mand. denied) ("Any dispute arising out of or [i]n connection with this Agreement or the breach, termination or invalidity thereof shall be submitted **exclusively** to the **jurisdiction** of the courts of Rotterdam, the Netherlands.") (emphasis added);

- *Xia v. Floyd*, 638 S.W.3d 821, 824 (Tex. App.—Fort Worth 2021, no pet.) ("such action shall be filed exclusively in the courts of the State of California or of the United States of America located in the counties of ... Orange or Los Angeles, as selected by the Member that is the plaintiff in the actions, or that initiates the proceeding or arbitration. Each Member agrees not to commence any action, suit or other proceeding arising from, relating to, or in connection with this Agreement except in such a court and each Member irrevocably and unconditionally consents and submits to the personal and **exclusive jurisdiction** of such courts for the purposes of litigating any such actions, and hereby grants jurisdiction to such courts…") (emphasis added);

- *In re Apex Tool Group*, 2024 WL 969735, at \*3 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, no pet.) ("[e]ach party irrevocably submits to the **exclusive jurisdiction** and venue of the federal and state courts located in the County of Mecklenburg, North Carolina in any legal suit, action or proceeding...") (emphasis added).

Section 5(a) is no different than the forum selection clauses addressed in the cases cited above. Under Texas law, Section 5(a) is a forum selection clause that is presumptively valid, and the Court has not been provided with evidence to invalidate this clause. Accordingly, the Court should rule that Section 5(a) constitutes a mandatory forum selection clause and deny Marty and Bonnie's Motions.

### B. Marty and Bonnie (through Dennis) signed the Investment Agreement containing the forum selection clause.

Marty and Bonnie have not provided the Court with any evidence to meet the heavy burden of invalidating the forum selection clause to which they contractually agreed. The best they could do to date is claim that neither Marty nor Dennis signed the Investment Agreement. This is easily rejected, as the Investment Agreement is fully executed by all four parties—Lawrence, Marty, Dennis and Powers (**Ex. 1**; *see also* **Ex. 10** at ¶ 5 ("I witnessed Marty Berry and Dennis Berry execute the Agreements at the Berry GP office in Corpus Christi, Texas; I have an original Investment Agreement signed in ink by all parties."):



ALLEN LAWRENCE BERRY

MARVIN GLEN BERRY



DENNIS WAYNE BERRY

ALBERT THEODORE POWERS

Having established the existence of a signed written contract with prima facie evidence sufficient to meet Plaintiffs' burden of proof in a venue challenge, Marty and Bonnie are not permitted to challenge, rebut or try and disprove the existence of a signed written Investment Agreement. Tex. R. Civ. P. 87(3)(a) ("Prima facie proof is made when the venue facts are properly pleaded and an

affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting each pleading."). This proof, at the motion to transfer stage, "is not subject to rebuttal, cross-examination, impeachment, or disproof." *See, e.g.*, *Hannah Reef, Inc.*, 491 at 106 (citing *Ruiz*, 868 at 757).

Moreover, this is not the first time that parties to a signed contract have attempted to deny they signed in order to avoid a mandatory forum. In *Aerotek v. Boyd*, 624 S.W.3d 199, 202 (Tex. 2021), a group of employees filed declarations denying they electronically signed an arbitration agreement associated with their employment documents. The court noted, relevant here, that for "a paper document with a handwritten, wet-ink signature, the genuineness of a signature can be proved by direct evidence—for example, testimony by an eye witness,[4] a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen." *Id.* at 204-05. But the court went further, finding that the employees did not present evidence that demonstrated "how their electronic signatures could have wound up on [the agreement] without their having placed them there themselves." *Id.* at 209. The court put it bluntly—"[m]ere denials do not suffice." *Id.* "Evidence cannot be disregarded when it demonstrates physical facts that cannot be denied, so that reasonable people could differ in their conclusions." *Id.* The court accordingly reversed and compelled the employees' claims to arbitration. *Id.* at 210.

Similarly, in *Knox Waste Serv., LLC v. Sherman*, 2021 WL 4470876, at *8 (Tex. App.—Eastland Sept. 30, 2021, no pet.), a party seeking to avoid an arbitration agreement filed an affidavit claiming that "he did not sign the document." The court rejected this assertion, stating that "a mere denial by the [party] that he did not sign the agreement, without more, fails to create

---

[4] As noted above, Plaintiff Powers witnessed both Marty and Dennis sign both the Investment Agreement and Agreement at issue. **Ex. 10** at ¶ 5.

a genuine issue of material fact." *Id.* The court accordingly reversed the trial court and compelled the action to arbitration—the required forum for disputes within the agreement's scope. *Id.* at 10.

Moreover, the conduct of both Powers and the Berry Defendants is consistent with both the Investment Agreement and the Agreement being signed by all parties. For example, the Berry Defendants paid Powers compensation and expenses totaling over $2 million dollars. **Ex. 10** at ¶¶ 6-7. At the Berry Defendants' request, the compensation portion of the Agreement was terminated, which was memorialized in a letter and email discussion. *Id.* at ¶ 6; *see also* **Ex. 3**; **Ex. 4**. If there was no signed agreement, why send a letter terminating the compensation portion of the agreement in 90 days according to that Agreement's terms? And perhaps more importantly, why agree to keep paying Mr. Powers' expenses? *Id.* Because all parties understood that the Investment Agreement and Agreement had been signed by all parties and were enforceable contracts.

That same month, Mr. Powers sent Marty and Dennis a proposed structure for the Project that plainly showed Mr. Powers' 20% interest (i.e., "ATP") at the ownership level (**Ex. 5**) – which is consistent with the terms of the signed Investment Agreement:



None of the Berry Defendants objected or otherwise claimed that Mr. Powers did not have any ownership interest. **Ex. 10** at ¶ 8. Nor did the Berry Defendants object when Mr. Powers sent transfer documents and operating agreements for entities involved in the Project to Energy Capital Partners—a potential investor in the Project. *Id.*; **Ex. 6, 7**. Nor did the Berry Defendants object or claim Mr. Powers did not have an interest when he sent an organizational chart showing "the

structure currently being discussed with ECP" with his company, Plaintiff Allied Ports, LLC listed at the ownership level. *Id.* at ¶ 9; **Ex. 8**.



Again, not only is the evidence that all parties signed the contract overwhelming, the parties' conduct is consistent with the terms of the Investment Agreement. When parties contend that there is a signed contract and the parties' conduct is consistent with the terms of the alleged signed contract, the court may infer that the parties agreed to the terms. *See, e.g.*, *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) (cleaned up) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract."); *see also Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. App.—El Paso 2015, no pet.) ("In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract," which "includes the party's conduct.").

The reality is that Marty and Dennis (now Bonnie) do not have evidence that they did not sign the Investment Agreement and instead the evidence establishes that they did. Indeed, Marty and Bonnie have significantly less evidence than that present in *Aerotek* or *Knox*. They have no real evidence at all. They did not even file a verified pleading denying execution as required by the Rules. Tex. R. Civ. P. 93.7. With all the contrary evidence, little wonder why. As in *Aerotek* and *Knox*, the Court should reject Marty and Bonnie's manufactured attempt to avoid the forum selection required by the Investment Agreement.

As such, the Court should rule that Section 5(a) of the Investment Agreement is a mandatory forum selection clause and enforce the parties' agreement. Doing so moots Marty and Bonnie's remaining jurisdictional and venue issues.

## II. If Section 5(a) is a "venue clause" the Investment Agreement is "major transaction" requiring mandatory venue in Harris County.

### A. Plaintiffs do not believe that Section 5(a) is a "venue clause."

Plaintiffs do not believe that Section 5(a) can reasonably be construed as a mere venue selection clause—that would contravene the plain meaning of the parties' agreement. *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.EW.3d 198, 202-03 ("The Court's task is to ascertain the true intentions of the parties as expressed in the writing itself."). Indeed, venue "*does not* refer to any grant or restriction of subject-matter jurisdiction providing for a civil action to be adjudicated only by the district court for a particular district or districts." 28 U.S.C. § 1390(a); *see Velasco v. Tex. Kenworth Co.*, 144 S.W.3d 632, 635 (Tex. App.—Dallas 2004, pet. denied) (recognizing that Texas's venue statute "appears to have been patterned after a federal venue statute" and looking to "federal cases to guide our interpretation of the [Texas] statute"); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 232–33 (Tex. App.—Houston [1st Dist.] 1996, no writ.) ("The similar wording in the federal and state statutes allows us to look to federal cases as a guide to interpreting th[e] [state] statute."). Thus, construing Section 5(a) merely as selecting venue (rather than as a mandatory forum selection clause) would effectively nullify the parties' agreement to vest "exclusive jurisdiction" in the state and federal courts in Harris County, Texas. Otherwise, this language would be rendered meaningless. *See Burlington*, 573 S.W.3d at 203 ("We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.") (quotation omitted).

Accordingly, Plaintiffs submit that this Court should rule that Section 5(a) is a forum selection clause.

**B.** **If Section 5(a) is a venue clause, venue is mandatory in Harris County under Tex. Civ. Prac. And Rem. Code Section 15.020.**

If this Court determines that Section 5(a) is a "venue clause," then venue is mandatory in Harris County because the Investment Agreement qualifies as a "major transaction" under Tex. Civ. Prac. & Rem. Code § 15.020. Under that provision, if any party to an agreement is to receive greater than $1 million, then venue is mandatory in the county selected by the parties to the agreement. *Id.* at 15.020(a).

Marty and Bonnie argue that the Investment Agreement—which forms the underlying basis for a state of the art crude oil terminal project in Nueces and San Patricio counties (the "Project")—does not qualify as a "major transaction" and instead only reflects a $5,000 contribution payment. MTV at pp. 2-3. This is nonsensical and contrary to the plain text of the Investment Agreement. Even if Section 5(a) of the Investment Agreement was merely a venue selection clause (it is not), it is plainly a "major transaction,"[5] for which venue is mandatory in Harris County. Tex. Civ. Prac. & Rem. Code 15.020(b) ("An action arising from a major transaction ***shall be brought*** in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county.") (emphasis added); *see also* Tex. Gov. Code § 25A.015 ("A jury trial for a case in which a written contract specifies a county as venue shall be held in that county.").

---

[5] "[M]ajor transaction" means a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million. Tex. Civ. Prac. & Rem. Code § 15.020(a).

13

Indeed, Marty and Bonnie either ignore or fail to consider what they, under the plain text, are "entitled to receive" under the Investment Agreement. Tex. Civ. Prac. & Rem. Code § 15.020(a). The Agreement entitles Plaintiffs to receive as consideration a 20% interest in the Project, while the Berry Defendants receive as consideration "priority distributions to the Berrys or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount." **Ex. 1** at § 2. On the face of the Investment Agreement, the Berry Defendants are "entitled to receive" as consideration for Plaintiffs' interest far more than the $1,000,000 "major transaction" threshold under the Agreement. *See id.*; *see also* **Ex. 10** at ¶ 6.

To be sure, this is consistent with other documents associated with the Investment Agreement. *See SM Energy Co. v. Union Pac. R.R. Co.*, 652 S.W.3d 830, 840 (Tex. App.—Eastland 2023, pet. denied) (considering other documents related to the agreement at issue to determine whether a transaction was a "major transaction"). The Investment Agreement discusses "another Agreement" as part of this transaction that "appoint[ed] Powers as [the Berry's] representative and chief negotiator for the financing for the Project." **Ex. 1** at p. 1; *see also* **Ex. 2** at § 1. The Agreement being referred to is the compensation agreement entitled "Agreement" which was executed at the same time as the Investment Agreement (referred to herein as the "Agreement"). Under the Agreement, the Berry Defendants paid Powers more than $1,000,000 in compensation and reimbursed expenses. **Ex. 2** at § 3; *see also* **Ex. 10** at ¶ 7 ("For my performance of the Agreements and work on the Project, the Berry Defendants have paid to me and I have received a total $2,051,421.99.").

Moreover, in February 2019, a well-respected private equity firm, the Carlyle Group, valued the Berry Defendants' interest in the Project at "no less than $400,000,000." **Ex. 9** at p. 7;

*see also* **Ex. 4** at p. 2 ($400,000,000 value assigned to Berry Defendants' interest). And at a hearing just days ago, Defendants' counsel admitted[6] the transaction described in the Agreement "is literally a billion dollar project." **Ex. 10** at p. 4. Even at the more conservative $400,000,000 estimate, Plaintiffs' 20% interest is worth $80,000,000. *See, e.g.* Plaintiffs' Third Am. Pet. at ¶ 14. Marty and Bonnie cannot deny the transaction's "billion dollar" value to avoid venue now. *Fleming*, 669 S.W.3d at 461 ("As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant and he cannot introduce evidence to contradict it.").

Marty and Bonnie's cited authorities are inapplicable here. In *In re Togs Energy, Inc.*, for instance, there was <u>no</u> <u>language</u> stating the value of the consideration each party was entitled to receive at all. 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, no pet.). And similarly, in *Hughes v. Pearcy*, the contract did not expressly state that one party or the other was "entitled to receive" more than $1 million as a condition or consideration in the contract. *See* 2014 WL 7014353, at *3 (Tex. App.—Austin, Dec. 8, 2014, pet. denied). Quite the opposite—one party to the contract had control over the amount of payments to the other. *Id*. Here, by contrast, the Agreement plainly and expressly states that the Berry Defendants are entitled to receive over $250,000,000 as a result of Plaintiffs' work that is covered by and the subject of the Investment Agreement. And unlike in *Pearcy*, Plaintiff Powers did actually receive more than $1 million dollars in consideration for his performance. **Ex. 10** at ¶ 7.

---

[6] "A judicial admission is a clear, deliberate, and unequivocal assertion of fact which conclusively disproves a right of recovery or a defense and makes the introduction of other evidence on an issue unnecessary." *See, e.g.*, *Wilson v. Fleming*, 669 S.W.3d 450, 461 (Tex. App.—Houston [14th Dist.] 2021, pet. *granted on other grounds*, 694 S.W.3d 186). To constitute a judicial admission, the statement must be: (1) made in the course of a judicial proceeding; (2) contrary to a fact essential for the party's recovery or defense; (3) deliberate, clear, and unequivocal; (4) in accordance with public policy if given conclusive effect; and (5) consistent with the opposing party's theory of recovery. *Id.* "A party's pleadings or **a counsel's factual statements** on behalf of a client may constitute judicial admissions." *Id.* (emphasis added).

As set forth in Section 1 above, Plaintiffs' respectfully submit that the Investment Agreement contains a forum selection clause that is presumptively enforceable and for which Marty and Bonnie have not met their heavy burden to show it should not be enforced or why the Court should not enforce their agreement to "irrevocably waive[]" objections to venue. Regardless, Plaintiffs' the signed Investment Agreement, Powers' declaration, and other supporting evidence cited herein, at this stage, meets the required prima facie proof standard applicable to motions to transfer venue.[7] Tex. R. Civ. P. 87(3)(a) ("When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact."); *see, e.g.*, *Hannah Reef, Inc.*, 491 at 106 (citing *Ruiz*, 868 at 757) (A plaintiff's "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof.").

This action arose to "enforce" the Agreement due to Defendants' disregard for their obligations. Marty and Bonnie should not be allowed to flout their agreement to exclusive venue in Harris County the same way they have treated their other obligations under the Investment Agreement. The Court should enforce the Agreement, which moots the remaining jurisdictional[8] and venue issues.

## III. Venue over real property is inapplicable and irrelevant to this action.

If the Court enforces the forum selection clause or finds venue under the "major transaction" statute as set forth above, it need not go further. Nonetheless, Marty and Bonnie claim in both Motions that Tex. Civ. Prac. & Rem. Code § 15.011—a venue provision related to disputes

---

[7] "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." Tex. R. Civ. P. 87(3)(a).

[8] Plaintiffs are simultaneously filing a Response to the Plea in Abatement in which Marty and Bonnie assert that the case filed in Nueces County has dominant jurisdiction over this case. As discussed more fully in the response to the Plea in Abatement, because mandatory and exclusive jurisdiction is only in Harris County – and this case cannot be brought in or transferred to Nueces County—dominant jurisdiction does not apply.

over <u>real</u> <u>property</u>—should be applied to this case.  This is wrong for several reasons.  First, "exclusive jurisdiction" lies in Harris County under the mandatory forum selection clause.  Second, as a matter of law, the major transaction statute trumps other mandatory venue provisions in Chapter 15 (i.e., Title 2).  *See, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014).  There, the Supreme Court held that section 15.020 applies "to an action arising from a major transaction '[n]otwithstanding any other provision in this title,' indicating "that the Legislature intended for it to control over other mandatory venue provisions."  *Id.*; *see also In re Fox River Real Estate Holdings, LLC*, 596 S.W.3d 759, 768 (Tex. 2020) ("[W]e clarify that section 15.020 means what it says and indicates that the Legislature intended for it to control over other venue provisions within Title 2.").  Plaintiffs' claims cannot be brought in another venue because the Investment Agreement *requires* they be brought in Harris County and *cannot* be brought in Nueces County.  Tex. Civ. Prac. & Rem. Code § 15.020(c)(2) ("Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:  the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.").

Even so, this case has nothing to do with real property in Nueces County or anywhere else.  The entity at issue in this case—Axis Midstream Holdings, LLC—owns no real property in Nueces County.  In their MTR, Marty and Bonnie ramble through several merits-related questions regarding the transfer of interest of Axis amongst various non-party companies and Lawrence's authority to do so in an attempt to muddy the water.  MTR at pp. 4-5.  But these facts are not relevant to the venue standard nor do they change the result (nor are they correct in any event), as Plaintiffs have (1) sought enforcement of the forum selection clause between the parties and (2)

alternatively provided "prima facie proof" as required to support their venue allegations. Tex. R. Civ. P. 87(3). Moreover, Marty and Bonnie misconstrue the relief sought by Plaintiffs. The relief Plaintiffs seek can be summed up simply—follow the Investment Agreement for Plaintiffs' ownership and do not do anything to steal it. *See generally* Plaintiff's Third Am. Pet. This case is about Plaintiffs' ownership interest in the <u>Project</u> and Defendants' attempt to steal it—not title of or possession of a piece of <u>property</u> owned by other entities in Nueces County.

### IV.     Marty and Bonnie's remaining assertions for transfer have no merit.

Marty and Bonnie devote a collective page in their MTV to assert that "none of the acts" underlying the Plaintiffs' TRO or claims occurred in Harris County, that Lawrence Berry is a "sham defendant," and that the case should be transferred "for convenience." Each of these kitchen-sink style arguments (1) do not affect the application of the forum selection clause, (2) do not affect the application of the major transaction statute, and (3) are easily rebutted by prima facie proof and can be quickly rejected.

A few examples make the point. First, Marty and Bonnie purport to "specifically deny all Plaintiffs' venue allegations," and that "none of the acts giving rise to the TRO or claims occurred in Harris County. Motion at p. 3. This misses the point, as many "events and omissions" giving rise to Plaintiff's contractual claims and work on the Project occurred in Harris County, Texas. *See, e.g.*, **Ex. 10 at ¶¶** 2, 7. Marty and Bonnie cannot and do not provide any proof to rebut that the initial framework for the Agreement was negotiated in Houston, Texas. Third Am. Pet. at ¶ 11; **Ex. 10** at ¶ 2. They provide no proof to rebut the several Houston, Texas meetings where the underlying agreement at issue was confirmed and significant details about the Project were discussed. Third Am. Pet. at ¶¶ 12, 14; **Ex. 10** at ¶¶ 2, 7. They provide no proof to rebut that

Plaintiff Powers spent most of his time working on the project in Houston, Texas—in an apartment paid for by the Berry Defendants no less. Third Am. Pet. at ¶ 14; **Ex. 10** at ¶ 7.

Second, Marty and Bonnie baldly assert that Lawrence is a "sham defendant." Though again irrelevant to venue under the major transaction statute, this is simply not true. The declarations, breach of contract cause of action, TRO and Temporary Injunction application sought by Plaintiffs apply equally to *all* of the defendants. That Lawrence correctly admits that he signed the *fully executed* Agreement at issue does not make him a "sham defendant"—it makes him honest. And if it were necessary to reach additional venue bases (it is not), Lawrence's residence in Harris County serves as a basis for proper venue in this dispute. Tex. Civ. Prac. & Rem. Code § 15.002(2).

Finally, Marty and Bonnie assert that this action should be transferred "for convenience" to Nueces County. As a matter of law, "convenience" cannot trump a mandatory forum selection clause or a venue provision like the major transaction statute. *See, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014). Even if it could, Marty and Bonnie come nowhere close to meet their burden to transfer and do not even cite any evidence to support their allegations. *See* Motion at p. 4.

**V.      Regardless, Nueces County is not a proper transferee court.**

Based on the above, the Court can deny Marty and Bonnie's Motion without further analysis. However, Plaintiffs wish to briefly address Marty and Bonnie's assertions that this Court can or should "remand" the case or transfer to Nueces County based on the Government Code. First, Mary and Bonnie's procedural complaints about the removal have no merit and are dependent on their misguided and wrong arguments on jurisdiction and venue. But even if this Court does not have jurisdiction after removal, this Court should transfer this case to the Business Court in San Antonio. The Code provides:

19

(c) "If, after an action is assigned to a division of the business court, the court determines that the division's geographic territory does not include a county of proper venue, the court shall:

    (1) if an operating division of the court includes a county of proper venue, transfer the action to that division; or

    (2) if there is not an operating division of the court that includes a county of proper venue, <u>at the option of the party filing the action</u>, transfer the action to a district court or county court at law in a county of proper venue.

Tex. Gov. Code §25A.006 (emphasis added).

Under 25A.006(c)(1), the case would not be transferred to Nueces County as Marty and Bonnie seek. Even if Marty and Bonnie's argument regarding the import of other parties' real property were accepted as relevant and dispositive (it is not), it is undisputed that there is real property involved with the Lone Star Ports Projects in San Patricio County, which is part of the Fourth Business Court Division. Tex. Gov't Code § 25A.003(f); *id.* at § 74.042(e); *see also* MTR at Ex. 14, Hummell Affidavit at ¶ 3 ("The Midway to Harbor Island Project that is the subject of the TRO in the above-referenced litigation is located entirely in San Patricio and Nueces Counties."). Nueces County does not fall within an established Business Court division and accordingly would not be available as a venue under 25A.006(c)(1).

Nor would the case be properly transferred to Nueces County under 25A.006(c)(2). Because there is not an operating division in Nueces County, any transfer would be to a county of proper venue "at the option of the party filing the action." Tex. Gov't Code § 25.006(c)(2). Plaintiffs do not agree that Nueces County is a county of mandatory venue or proper venue. Plaintiffs would not request this Court transfer this action to Nueces County. Instead, if the Court determines that transfer is required, Plaintiffs would request a transfer to the Business Court in San Antonio.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's Motion to Transfer Venue and grant any further relief to which Plaintiffs are entitled.

DATED: December 3, 2024

Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 3rd day of December, 2024.

*/s/ M. Jake McClellan*
M. Jake McClellan

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 94874807
Filing Code Description: Answer/Response
Filing Description: Plaintiffs' Response to Defendants' Motion to Transfer Venue and Motion to Remand/Dismiss/Transfer
Status as of 12/3/2024 2:17 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/3/2024 11:51:44 AM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 12/3/2024 11:51:44 AM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/3/2024 11:51:44 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/3/2024 11:51:44 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/3/2024 11:51:44 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/3/2024 11:51:44 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/3/2024 11:51:44 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2024 11:51:44 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/3/2024 11:51:44 AM | SENT |

# SUPPLEMENTAL APPENDIX

# 11

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2024 12:07 PM
Accepted by: Beverly Crumley

**CAUSE NO. 24-BC11A-0025**

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; | § | IN THE BUSINESS COURT |
| ALLIED PORTS LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | ELEVENTH DIVISION |
| | § | |
| AXIS MIDSTREAM HOLDINGS, | § | |
| LLC; ALLEN LAWRENCE BERRY; | § | |
| MARVIN GLENN BERRY; AND | § | |
| BONNIE BERRY, as successor in | § | |
| interest to DENNIS WAYNE BERRY | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S PLEA IN ABATEMENT AND MOTION TO REMAND, DISMISS, AND/OR TRANSFER**

---

**INTRODUCTION**

Defendants Marvin Berry ("Marty") and Bonnie Berry ("Bonnie") have filed a Motion to Transfer Venue ("MTV") and Motion to Remand, Dismiss, and/or Transfer Venue ("MTR") and Marty has filed a Plea in Abatement (the "Plea") (collectively the "Motions"). The Plea is based solely on the assertion that "dominant jurisdiction" over this case lies in Nueces County. *See generally* Plea. Concurrently with filing this Response, Plaintiffs have filed a Response to the Motion to Transfer Venue and Motion to Remand, Dismiss, and/or Transfer. If the Court determines that exclusive jurisdiction is in Harris County, then the court in Nueces County does not have jurisdiction over this case and the Plea in Abatement must be denied.

1

The Plea also fails because the other case—the Berry Family Dispute[1]—is not "inherently interrelated" to this lawsuit. *See, e.g.*, *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) ("If such an inherent relationship exists, we then assess dominant jurisdiction. But if not, then dominant jurisdiction is not an issue, and both suits may proceed."); *Ruebbling v. Foremost Cty. Mut. Ins. Co.*, 2024 WL 339114, *5 (Tex. App.—El Paso Jan. 29, 2024, no pet.) ("If no inherent interrelation exists, both suits may proceed in their respective trial courts."). The test for whether dominant jurisdiction applies—the compulsory counterclaim rule—is not met here. Indeed, this lawsuit is not within the jurisdiction of Nueces County, does not involve claims against "an opposing party" in the Berry Family Dispute, and does not arise from the same transaction or occurrence as the Berry Family Dispute. *See id.* (elements of dominant jurisdiction test). Notably, Marty's Plea makes no effort to satisfy the test.

Nor could it, because the Berry Family Dispute, according to Marty, is "about a disgruntled one-third shareholder (L. Berry)… trying to hold the reasonable business operations of Berry GP hostage." **Ex. 3**, Marty's Emergency Motion to Transfer Venue in the Berry Family Dispute, at ¶ 6. This lawsuit does not involve Berry GP or disputes among its owners. In contrast, this lawsuit involves declaratory relief and breaches of contract by the Berry Defendants related to Plaintiffs' work on and ownership interest in a specific project—the Lone Star Ports Project (the "Project")—that is not mentioned in the petition or the counterclaim in the Berry Family Dispute. Plaintiffs are not parties to the Berry Family Dispute or members of the Berry family. None of the claims to be adjudicated in this action will be adjudicated in that case (and vice versa). The Plea and Motions should be denied.

---

[1] Cause No. 2024DCV-0045-C, *Lawrence Berry, et. al. v. Marty Berry, et. al.*, in the 94th Judicial District Court, Nueces County, Texas.

**FACTS**

**Plaintiffs' Claims in this Case**

1. In 2018, Defendant Lawrence Berry came up with the idea of creating a crude oil delivery and export facility in and around the Corpus Christi Port (the "Project"). Lawrence and his brothers Marty and Dennis (succeeded by Bonnie) decided to pursue the Project. The Berry Defendants engaged Plaintiff Powers, living in New York City at the time, to represent them and advise them in shaping, structuring, securing financing for, and furthering development of the Project. **Ex. 7** at ¶ 3. The Berry Defendants sought Powers' expertise and experience in negotiations regarding major corporate transactions because they were in the process of negotiating with a private equity firm to obtain financing for the Project. *Id.*

2. The Berry Defendants agreed that Powers would be paid a base compensation of $100,000 per month plus expenses and receive a 20% interest in the Project subject to priority distributions to the Berry Defendants. *Id.* This agreement was confirmed by the Berry Defendants at a later meeting in early December 2018 and memorialized in a written Investment Agreement and a written Agreement that sets forth the terms of Powers' compensation (referred to as the "Agreement"). *Id.* at ¶ 4. The enforceability of these two agreements and the fact that the parties' conduct was consistent with the terms of the two agreements is addressed in the Response to the Motion to Transfer Venue. See Response to MTV at pp. 3-11. Plaintiffs' claims in this lawsuit seek declaratory relief under the contracts at issue and relief for breach of those contracts. *See generally* Third. Am. Pet. at ¶¶ 25-31.

**The Berry Family Dispute**

3. Separate from this lawsuit, the Berry Family Dispute involves an inter-family dispute over how their many jointly-owned companies have been managed:

- **Lawrence Berry's Original Petition (Plea at Ex. 1. ¶ 1):** "This action concerns the management and finances of several Texas companies—Berry GP, Inc.; Berry Operating Company LLC; and Berry Contracting LP (collectively, the Berry Entities)—which are majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis")."; *see also id.* at ¶¶ 53-82 (asserting claims for breach of fiduciary duty, knowing participation in a breach of fiduciary duty, demand for an equitable accounting, and demand for books and records).

- **Berry Operating Company LLC, Berry Contracting LP and Marty Berry's Original Petition Asserting Counterclaims (Plea at Ex. 5, ¶ 11):** "Counter-Plaintiffs file this counter-petition asserting claims against L. Berry for conversion, breach of fiduciary duty, breach of contract, unjust enrichment, breach of constructive trust, fraud, and other causes of action. Counter-Plaintiffs' causes of action pleaded against and complaining of L. Berry are directly responsive to L. Berry's claims for self-dealing and breach of fiduciary duty filed against one or more Counter-Plaintiffs."

Until this lawsuit was filed, Marty apparently agreed. Indeed, when Marty sought transfer of the Berry Family Dispute to Nueces County, Marty represented to that court that the Berry Family Dispute involved totally different facts and issues than those that are at issue in this case:

> **C. Background**
>
> 6. This is a case about a disgruntled one-third shareholder (L. Berry), and one of three (3) directors of the board of directors (L. Berry) of Berry GP trying to hold the reasonable business operations of Berry GP hostage. Plaintiff L. Berry concedes in his Petition, as he must, he (L. Berry) is only a one-third owner of Berry GP and is only one of three (3) board members of Berry GP.

**Ex. 3**, Marty's Emergency Motion to Transfer Venue.

4. Notably, none of the factual allegations or issues described in the Plaintiffs' lawsuit are pled or mentioned in the Berry Family Dispute. Nor are any of the assertions made in the Berry Family Dispute mentioned in this case. Here is a chart comparing the two lawsuits:

| **Berry Family Dispute** | **Plaintiffs' Lawsuit** |
|---|---|
| "This action concerns the management and finances of several Texas companies—Berry GP, Inc.; Berry Operating Company LLC; and Berry Contracting LP (collectively, the "Berry Entities")—which are majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis")." Pet. at ¶ 1. | No allegation |
| "In the past several months, it has become apparent that the Berry Entities have been unlawfully usurped, controlled, and mismanaged in secret by Defendants Marty Berry; Marty's son-in-law, Robert Rickett; Rob Powers, the President of and Chief Executive Officer of Berry GP, Inc.[2]; and Mike Hummell, Berry GP, Inc.'s Vice President and General Counsel." Pet. at ¶ 1. | No allegation |
| "In recent months, Lawrence—an officer, director, and shareholder of the Berry Entities—has come to learn that Marty Berry, with assistance from Robert Rickett, Rob Powers, and Mike Hummell, has been mismanaging the Berry Entities' finances such that he imperiled a long-standing line of credit that represented the Berry Entities primary source of operational funding, causing that line of credit to be placed in default." Pet. at ¶ 3. | No allegation |
| "Further, Powers and Hummell colluded in secret to authorize a self-dealing loan agreement from Marty and Dennis—themselves officers, directors, and shareholders of the Berry Entities—to the Berry Entities without notice or consultation with the other officers and directors." Pet. at ¶ 3. | No allegation |
| "Finally, presumably in an attempt to repay their self-interested loan, Defendants have recently begun secretly attempting to sell the company's real property, including an important and valuable dock facility, without notice to or authorization from the Board of Directors." Pet. at ¶ 3. | No allegation |
| "This type of undisclosed engagement in self-dealing and ultra vires transactions violate the fiduciary obligations and Texas law." Pet. at ¶ 3. | No allegation |
| "When Lawrence inquired about this mismanagement and apparently covert self-dealing through valid requests for books and records information, his requests went ignored, in further violation of Texas law." Pet. at ¶ 4. | No allegation |
| "Lawrence, both directly and derivatively on behalf of the Berry Entities, brings this lawsuit against Marty Berry, Rickett, Powers, Hummell, and the Berry Entities, to recover damages, enforce his rights to inspect the Berry Entities' books and records, and to demand an accounting of the Berry Entities' finances." Pet. at ¶ 5. | No allegation |

[2] Rob Powers, as mentioned in the Berry Family Dispute, has no relation or relevance to Plaintiff Albert Theodore "Ted" Powers who brings claims in this lawsuit.

| | |
|---|---|
| "Defendants have excluded Lawrence from key decisions related to the Berry Entities, including improper self-interested transactions." Pet. at Heading B. | No allegation |
| "An organizational chart reflecting the structure and ownership of the various entities at issue is attached hereto as Exhibit A." Pet. at ¶ 28; *see also id.* at Ex. A. | No allegation |
| "Of particular concern, Lawrence recently came to learn that Marty, Rickett, Powers, and Hummell have engaged in improper self-dealing transactions with the Berry Entities." Pet. at ¶ 33. | No allegation |
| "Specifically, it appears that Powers and Hummell approved and executed a loan agreement between Marty and Dennis, on the one hand, and one of the Berry Entities, on the other, by which Marty and Dennis loan a total of approximately $75 million to the Berry Entities (the "Berry Loan"). Pet. at ¶ 34. | No allegation |
| "Although Powers has thus far refused to provide the loan documents despite requests from Lawrence, Lawrence has been informed that Marty loaned $45 million and Dennis loaned $30 million to one or more of the Berry Entities." Pet. at ¶ 34. | No allegation |
| "Marty, Dennis, and Powers have threatened the financial operations of the Berry Entities." Pet. at Heading C. | No allegation |
| "Under Defendants' management, the Berry Entities recently failed to meet certain of the thresholds detailed in the Loan Agreement." Pet. at ¶ 42. | No allegation |
| "Because of these claimed defaults, IBC (1) elected to limit future advances to the Berry Entities on the LOC to $30 million rather than the full $50 million, and (2) accelerated maturation of the LOC to March 31, 2023, at which time IBC was going to require the entire balance due and payable." Pet. at ¶ 45. | No allegation |
| "Powers refuses to honor Lawrence's legitimate requests for information related to the Berry Entities." Pet. at Heading D. | No allegation |
| "Breach of Fiduciary Duty (against Marty Berry, Rob Powers, and Mike Hummell)." Pet. at Count 1. | No allegation |
| "Knowing Participation in a Breach of Fiduciary Duty (against Robert Rickkett)" Pet. at Count 2. | No allegation |
| "Demand for an Equitable Accounting" Pet. at Count 3. | No allegation |
| "Demand for Books and Records" Pet. at Count 4. | No allegation |

Similarly, the Counterclaim filed in the Berry Family Dispute does not mention the factual allegations or claims made in this lawsuit:

| **Berry Family Dispute** | **Plaintiffs' Lawsuit** |
|---|---|
| "Counter-Plaintiffs file this counter-petition asserting claims against L. Berry for conversion, breach of fiduciary duty, breach of contract, unjust enrichment, breach of constructive trust, fraud, and other causes of action. | No allegation |

6

| | |
|---|---|
| Counter-Plaintiffs' causes of action pleaded against and complaining of L. Berry are directly responsive to L. Berry's claims for self-dealing and breach of fiduciary duty filed against one or more Counter-Plaintiffs." Counterclaim at ¶ 11. | |
| "For purposes of this pleading, the Berry Entities refers to Berry GP, Berry Operating, and Bay Ltd. For purposes of this pleading, the Berry-Related Entities refer to the Allen Lawrence Berry 2007 Trust, Orca Assets GP LLC ("Orca"), Inner Channel Investments Inc. ("ICI"), Orca ICI Development ("Orca ICI," a Texas partnership), West 17th Resources LLC, Gansevoort Investments LLC, Halcon Mineral Interest LLC, Orca Petroleum Ltd., Zilker Acquisitions LLC, Three Rivers Pipe and Rental LLC, Southern Comfort Equipment, Ridgefield Energy Investments LLC, Ridgefield Energy Operating LLC, Ridgefield Eagle Ford, LLC, Ridgefield Permian, LLC, Ridgefield Permian Minerals, LLC (and related companies). The Berry Entities and Berry-Related Entities may be sometimes referred to as the 'Berry Companies.'" Counterclaim at ¶ 14. | No allegation |
| "Specifically, L. Berry has participated in self-dealing transactions involving the Investment (and the Investment's earnings)—taking of seeded money and assets of value (wealth) for his own personal benefit, and not for the benefit of any one or more of the Counter-Plaintiffs. This on-going practice by L. Berry/Orca of self-dealing transactions and ultra vires transactions violate the fiduciary obligations owed by L. Berry to Counter-Plaintiffs (and others)." Counterclaim at ¶ 20. | No allegation |
| "In furtherance of L. Berry's wrongful conduct, L. Berry has intentionally obscured his self-dealing transactions by transfers of money/assets of substantial value to and/or through the following entities: Allen Lawrence Berry 2007 Trust, West 17th Resources LLC, Gansevoort Investments LLC, Halcon Mineral Interest LLC, Orca Petroleum Ltd., Zilker Acquisitions LLC, Three Rivers Pipe and Rental LLC, Ridgefield Energy Investments LLC, Ridgefield Energy Operating LLC, Ridgefield Eagle Ford, LLC, Ridgefield Permian, LLC, Ridgefield Permian Minerals, LLC, and Southern Comfort Equipment. All such transactions constitute L. Berry's wrongful taking of money and assets belonging to, held in trust for, and held for the benefit of Counter-Plaintiffs. L. Berry not only is and has been engaged in such wrongful takings, but also has failed to disclose same (as is required by his (L. Berry's) fiduciary duties owed."). Counterclaim at ¶ 21. | No allegation |
| "Conversion" Counterclaim at Count 1 | No allegation |
| "Breach of Fiduciary Duty" Counterclaim at Count 2 | No allegation |
| "Breach of [different] Contract" Counterclaim at Count 3 | No allegation |
| "Unjust Enrichment" Counterclaim at Count 4 | No allegation |
| "Breach of Constructive Trust" Counterclaim at Count 5 | No allegation |
| "Fraud" Counterclaim at Count 6 | No allegation |

5.    And to be sure, the Berry Family Dispute does not address the allegations or issues set forth in *this* lawsuit:

| **Plaintiffs' Lawsuit** | **Berry Family Dispute** |
|---|---|
| "Powers met with Lawrence Berry in Houston in November 2018 to, among other things, discuss Powers' compensation in connection with his role in the Project.  They agreed that Powers would be paid a base compensation of $100,000 per month plus expenses and receive a 20% interest in the Project subject to priority distributions to the Berry Defendants.  This agreement was confirmed by the Berry Defendants at a later meeting in December 2018."  Third Am. Pet. at ¶ 12. | No allegation |
| "This agreement was later memorialized in a written Compensation Agreement and written Investment Agreement in 2019 (collectively, the "Agreements") confirming the compensation of $100,000 per month plus expenses and a 20% interest in the Project subject to priority distributions to the Berry Defendants of $250,000,000 plus a 10% preferred return on the outstanding balance of such amount. **Ex. 1; Ex. 2.** At the time that the Agreements were executed by the parties, Powers believed that the Project had a value in excess of $400,000,000. Thus, the value of Powers' ownership interest in the Project was in excess of $80,000.000." Third Am. Pet. at ¶ 13. | No allegation |
| "At first, all parties performed the Agreements. Powers spent most of his working time in Houston where he stayed in an apartment paid for by the Berry Defendants, and he worked tireless hours on the Project. In addition, Powers was paid the $100,000 monthly stipend for his work for eighteen months and was reimbursed for expenses as set forth in the Agreements.  Powers has been paid more than $2,000,000 by the Berry Defendants under the Agreements."  Third Am. Pet. at ¶ 14. | No allegation |
| "Powers' work involved developing and implementing a structure for the Project and trying to arrange a financing package for the Project. On behalf of the Berry Defendants and himself, Powers created several entities for the Project. The formation of these entities was paid for by the Berry Defendants. Powers also drafted operating agreements for those entities. Those documents were shared and fully discussed with all of the Berry Defendants. Never once did any of the Berry Defendants ever complain or assert that the holding structure being created and put in place by Powers was wrong or inconsistent with the agreement of the parties." Third. Am. Pet. at ¶ 15. | No allegation |
| "This structure was reaffirmed and further memorialized in two separate written Amended and Restated Operating Agreements of Lone Star Ports Holdings, LLC (including the current Operating Agreement) and has been in place for more than five years. Now that the permit for the Project has been obtained from the U.S. Army Corps of Engineers, the Project is worth significantly more than when the Carlyle Group entered into its | No allegation |

| | |
|---|---|
| term sheet. Indeed, counsel for Marty and Bonnie Berry recently announced to Judge Palmer in the 215th District Court that the Project has a value in excess of $1 billion. Using that valuation (and the true value may be more), the value of Plaintiffs' ownership interest in Lone Star Holdings, LLC and in the Project is worth more than $200 million." Third Am. Pet. at ¶ 17. | |
| "Of the several entities formed, in particular focus in this lawsuit (and the temporary relief sought) is Defendant Axis. Axis holds intangible property of the Project, including the permitting rights associated with development of the Project. Axis's sole Member and Manager is Lone Star Ports Enterprises, LLC ("LSPE"), which through the chain of entities above is ultimately managed by Plaintiffs. Most importantly, none of the Berry Defendants (including Marty and Bonnie) have individual ownership or management rights in Axis. Relevant to this dispute, only LSPE has the right to call a meeting of Axis – and Marty and Bonnie have no right to call such a meeting." Third Am. Pet. at ¶ 18. | No allegation |
| "However, things changed in 2024 when Marty and Bonnie sensed that the most important Federal permit for the Project was about to be approved. Now, Marty and Bonnie contend that the Project is owned by the Berry Defendants and that the Plaintiffs have no ownership interest in the Project. On July 26, 2024, Powers was alerted that a meeting was being called of the "Shareholders, Directors and Owners" of some of the entities involved in the Project, including Axis. *See* **Ex. 6**. Notably, none of the owners of Axis actually called the meeting and those who purported to call the meeting are not owners or managers of Axis and have no legal authority to call such a meeting. In response to the attempt to call this meeting, Powers notified the Berry Defendants that he was a 20% owner of the Project and that he wanted to attend any meetings that involved the Project. *See* **Ex. 7**. Powers did attend the meeting that took place on August 6, 2024. During the course of that meeting, Powers once again described the holding structure for the Project, that Allied Ports LLC owned 20% of Lone Star Ports Holdings, LLC and that Axis was owned and managed by Lone Star Ports Enterprises, LLC. None of the Berry Defendants challenged Plaintiffs' ownership interest in the Project (or in Lone Star Ports Holdings, LLC) and none of the Berry Defendants disputed Powers' description of the holding structure for the Project. Nor did any of the Berry Defendants object to Powers' request to be notified of any future meetings to discuss or address any aspect of the Project." Third Am. Pet. at ¶ 19. | No allegation |
| "Marty and Bonnie purported to call a "meeting of owners" of Axis for November 6, 2024, where they intended to take action on (1) "Appointment and/or removal of Company Managers" and (2) Appointment and/or removal of Officers." **Ex. 5**. This meeting was obviously improper given Marty and Bonnie are admittedly not "owners" of Axis. Further, Marty and Bonnie intentionally did not provide notice of this meeting to Powers as he had previously requested. Moreover, | No allegation |

| | |
|---|---|
| changing the ownership and management would effectively divest Plaintiffs of their ownership and management rights in the Project, which constitutes a breach of the Investment Agreement. Third Am. Pet. at ¶ 24. | |
| "Declaratory Judgment" Third. Am. Pet. at Count I. | No allegation |
| "Breach of [Investment Agreement and Agreement] Contract" Third Am. Pet. at Count II. | No allegation |

6.      Indeed, the Court can search the pleadings submitted from the Berry Family Dispute (Exhibits 1 and 5 to the Plea) and there is no mention of Plaintiff Powers, Plaintiff Allied Ports, LLC, Axis Midstream Holdings, LLC or the Lone Star Ports Project – not one.  Nor is the Investment Agreement or the Agreement mentioned in the Berry Family Dispute.  The Plaintiffs here are not parties to the Berry Family Dispute and the Berry Entities (as defined in the Berry Family Dispute petitions) are not parties to this case (and would not be proper parties).

7.      If the pleadings were not enough, the parties in the Berry Family Dispute also previously underwent a three-day temporary injunction hearing.  Transcripts of that hearing are attached as **Exhibits 4-6**.  The Court can search those transcripts as well and will find that Plaintiffs were not mentioned *one time*.  Neither the Investment Agreement nor the Agreement was mentioned *one time*.  Axis Midstream Holdings, LLC was not mentioned *one time*.

Little wonder why there is no factual or legal overlap between this lawsuit and the Berry Family Dispute.  Out of twelve different parties, only **two** overlap between the two cases:

| **This Lawsuit** | **Berry Family Dispute** |
|---|---|
| Plaintiffs:   Albert Theodore Powers; Allied Ports LLC<br><br>Defendants:  Axis Midstream Holdings, LLC; **Allen Lawrence Berry**; **Marvin Glenn Berry**; Bonnie Berry (as successor in interest to Dennis Wayne Berry) | Plaintiffs: **Lawrence Berry**; Berry GP, Inc.<br><br>Defendants:   **Marty Berry**; Robert Rickett; Robert Powers; Michael Hummell; Berry GP, Inc.; Berry Operating Company LLC; Berry Contracting LP |

8.      To be sure, Plaintiffs are not seeking to adjudicate any of the issues asserted among the Berrys in the Berry Family Dispute, nor does it appear that the Berry Family Dispute will decide the issues presented before this Court.

<h1 style="text-align:center">ARGUMENT AND AUTHORITIES</h1>

**I.      Dominant jurisdiction is inapplicable.**

Marty asserts that the court presiding over the Berry Family Dispute obtained dominant jurisdiction over this matter and that this action should be abated and/or dismissed. Plea at pp. 12-13. At the threshold, this argument fails because the forum selection clause in the Investment Agreement vests "exclusive jurisdiction" in Harris County, to which Marty and Bonnie "irrevocably waive[d]" their right to object. **Ex. 1** at § 5(a). On that basis alone, this Court can and should deny the Plea in Abatement. In addition, if no "inherent interrelation" exists between the two lawsuits, dominant jurisdiction is not applicable, and both suits may proceed in the respective trial courts. *See, e.g.*, *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016). On their face, these suits are not interrelated.

As an initial matter, despite it being "well established that a party seeking abatement must prove the allegations in its plea by a preponderance of the evidence," Marty's Plea and MTR make no effort to grapple with the relevant test for "inherent interrelation." *See, e.g.*, *In re HPGM, LLC*, 629 S.W.3d 418, 423 (Tex. App.—Texarkana 2020, orig. proceeding). As a threshold matter, Marty has not submitted any evidence to this Court in support of his Plea and, thus, he has not met his burden of proof. Further, in determining whether an inherent interrelationship exists, courts should be guided by the compulsory counterclaim rule. *J.B. Hunt*, 492 S.W.3d at 292 (discussing Tex. R. Civ. P. 97(a)). A counterclaim is compulsory if it is "[1] within the jurisdiction of the court, [2] not the subject of a pending action, [3] which at the time of filing the pleading the pleader

has against any opposing party, [4] if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and [5] does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Tex. R. Civ. P. 97 (brackets inserted). The first, third and fourth elements necessary for a compulsory counterclaim are plainly lacking here meaning that this case and the Berry Family Dispute are not inherently interrelated.

### A. The claims in this action are not within the jurisdiction of Nueces County.

As set forth in Plaintiffs' Response to the Motion to Transfer Venue, exclusive jurisdiction of this lawsuit is in Harris County pursuant to the terms of the Investment Agreement. Thus, it is not "within the jurisdiction of the [Nueces County] court" as required by the "compulsory counterclaim" test set forth in *J.B. Hunt*. 492 S.W.3d at 292. Marty's Plea failed to address the Investment Agreement at all. *See generally* Plea. The Court should enforce the forum selection clause or determine that this matter involves a "major transaction" and deny the Plea and Motions.

### B. Plaintiffs' claims are not against an "opposing party" in the Berry Family Dispute.

The Plea also fails because Plaintiffs' claims are not against an "opposing party" in the Berry Family Dispute. A counterclaim is compulsory is if it is a claim "at the time of the filing the pleading the pleader has against <u>any opposing party</u>." Tex. R. Civ. P. 97(a) (emphasis added). In truth, Plaintiffs' claims are not and cannot be "compulsory counterclaims" because they are not counterclaims at all.[3] Plaintiffs are not parties to the Berry Family Dispute and never have been (and should not be). Plaintiffs' claims are based on two contracts (the Investment Agreement and the Agreement) among Plaintiff Powers and Defendants Lawrence, Marty, and Dennis (now

---

[3] "The compulsory counterclaim rule contemplates situations where the primary parties—the cross-plaintiff and at least one cross-defendant—are already before the court as parties to the action. It does not contemplate a situation where no cross-defendant is a party to the action and one can be brought in only with leave of the court and for such purposes only as the court may permit. The latter situation is governed by Tex. R. Civ. P. 38, concerning third-party practice." 2 McDonald & Carlson Tex. Civ. Prac. § 9:79 (2d. ed.) (citing *Heights Funeral Home v. McClain*, 288 S.W.2d 839, 843 (Tex. App.—Beaumont 1956, writ ref'd n.r.e.)).

Bonnie) wherein they agreed that in exchange for his working on the Project, they would pay him $100,000 per month plus expenses, and he would receive a 20% interest in the Project subject to priority distributions to the Berry Defendants. **Ex. 1**; **Ex. 2**. As noted above, neither the Investment Agreement nor the Agreement has been litigated or even mentioned in the Berry Family Dispute.

Some courts, including the almost 40 year-old *Wyatt* court on which Marty relies, have stated that "[i]t is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties." *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988). That reasoning is obsolete and no longer consistent with Rule 97(a) or the dominant jurisdiction doctrine and in any event, inapplicable here. Indeed, the Texas Supreme Court more recently in *J.B. Hunt* granted mandamus relief to correct another portion of the *Wyatt* opinion that varied from Rule 97(a)'s plain language. 492 S.W.3d at 294. And "Rule 97(a) does not require anyone who is not already a party to a lawsuit to intervene in the lawsuit and bring forth related claims," particularly, as in this case, when doing so would violate an enforceable forum selection clause. *See Ruebbling*, 2024 WL 339114 at *6.

The *Ruebbling* case provides an instructive example. There, the "first filed" case was a wrongful death claim that settled. 2024 WL 339114 at *1. After the settlement, a dispute arose between the claimants, and the insurer filed a "second filed" interpleader action to determine proper entitlement to the settlement proceeds in a different county. *Id*. One of the claimants filed a plea in abatement, claiming that dominant jurisdiction required the interpleader action to be filed in the same venue as the underlying lawsuit. *Id.* at *5. The court disagreed, finding that the interpleader claim was not a "compulsory counterclaim" because the insurer "is not—and cannot

13

be—a party in that suit." *Id.* at *6. And like here, the insurer could not have been joined to the original suit, because an insurer is not a proper party to an underlying tort suit. *Id.* Thus, the court found that the cases were not inherently interrelated and allowed the case to proceed.

Dominant jurisdiction faces the same obstacle here as in *Ruebbling*. Plaintiffs are not proper parties in the Berry Family Dispute in Nueces County as their claims are subject to the "exclusive jurisdiction" of Harris County, just as the *Ruebbling* court observed that the insurer was not a proper party in the "first-filed" court. If *Ruebbling* did not present a case of "inherent interrelation," this case is not a close call. The Plea and Motions should be denied.

### C. This case does not arise from the same transaction or occurrence as the Berry Family Dispute.

Finally, the two actions do not arise from the same transaction or occurrence. To determine whether a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims," Tex. R. Civ. P. 97(a), courts "apply a logical relationship test." *Encore Enter., Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 722 (Tex. App.—El Paso 2019, no pet.). This test is only met when the same facts, which may or may not be disputed, are significant and logically related to both claims. *Id.* Claims are logically related where separate trials on each claim "would involve substantial duplication of effort and time by the parties and courts." *White v. Rupard*, 788 S.W.2d 175, 178 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

These cases are not logically related. This case is a breach of contract and declaratory judgment case involving two distinct contracts between Plaintiffs and the Berry Defendants setting forth Plaintiffs' compensation for the Project. *See generally* Plaintiffs' Third Am. Pet.; *see also* **Ex. 1**, **Ex. 2**. The main issue in dispute—the Berry Defendants' attempt to steal away Plaintiffs' 20% interest in the Project—did not accrue until recently, long *after* the events of the Berry Family Dispute had taken place and *after* that lawsuit had been pending several months.

14

By contrast, and as set forth in more detail in the charts above, the Berry Family Dispute involves allegations of fiduciary duty, improper loans and self-dealing between the owners of the various Berry entities, Berry GP Inc., Berry Operating Company LLC, and Berry Contracting LP (the "Berry Entities")—none of which are parties to this proceeding or the contracts at issue in this lawsuit. *See generally* Plea at Ex. 1; Ex. 5. Again, Plaintiffs are not mentioned in these allegations, nor could they be, because they do not have an interest or role in the Berry Entities. In fact, Plaintiffs here asks the Court to prevent Defendants from transferring his interests in the Project exclusively *to* the Berry Entities,[4] precisely for that reason. These two disputes are not the "exact" same fights, much less even logically related. At bottom, these claims have nothing to do with one another, and the Plea is merely an attempt to delay the Temporary Injunction hearing.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's Plea in Abatement and grant any further relief to which Plaintiffs are entitled.

DATED: December 3, 2024

Respectfully submitted,

/s/ Alistair B. Dawson
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700

---

[4] Defendants allege that the same issues are involved with the Berry Family Dispute and the present lawsuit because the Berry Entities requested the corporate and financial documents of Axis, Lone Star Ports LLC, and Midway Junction Properties LLC during discovery. Plea at p. 10. However, Defendants do not explain how a request for production for documents from companies also involved in this lawsuit renders the two lawsuits so inherently interrelated that abatement is necessary.

Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 3rd day of December, 2024.

*/s/ M. Jake McClellan*
M. Jake McClellan

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 94876117
Filing Code Description: Answer/Response
Filing Description: Plaintiffs' Response to Defendants' Plea in Abatement and Motion to Remand, Dismiss and/or Transfer Venue
Status as of 12/3/2024 2:49 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/3/2024 12:07:47 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 12/3/2024 12:07:47 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/3/2024 12:07:47 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/3/2024 12:07:47 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/3/2024 12:07:47 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/3/2024 12:07:47 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/3/2024 12:07:47 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2024 12:07:47 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/3/2024 12:07:47 PM | SENT |

# SUPPLEMENTAL APPENDIX 12

**CAUSE NO. 2024DCV-0045-C**

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § | |
| Defendants. | § § | 94TH JUDICIAL DISTRICT |

## COUNTER-PLAINTIFFS' SECOND~~FIRST~~ AMENDED ORIGINAL PETITION ASSERTING COUNTER-CLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Berry GP Inc., Berry Operating Company LLC, Berry Contracting LP, and Marty Berry, sometimes collectively referred to as Counter-Plaintiffs, and make and file this Counter-Plaintiffs' First Amended Original Petition Asserting Counter-Claims complaining of A. Lawrence Berry, in his personal capacity and as Trustee of the Allen Lawrence Berry Trust, sometimes referred to as Counter-Defendants, and in support of same would show:

I.

PARTIES

1.      Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409.  Berry GP is one of the "Berry Entities" as may be referenced herein.

2.      Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409.  Berry Operating is one of the "Berry Entities" as may be referenced herein.

3.      Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409.  Bay Ltd. is one of the "Berry Entities" as may be referenced herein.

4.      Marty Berry ("M.Berry") is a natural person who is presently an Officer, Director, and shareholder of Berry GP, Berry Operating, and Bay Ltd.  Marty Berry resides in Nueces County, Texas.

5.      A. Lawrence Berry ("L.Berry") is a natural person who is presently an Officer, Director, and shareholder of Berry GP, Berry Operating, and Bay Ltd.  A. Lawrence Berry resides in Harris County, Texas.  A. Lawrence Berry may and shall be served by notice of these proceedings upon legal counsel for A. Lawrence Berry:  Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.  Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.      Allen Lawrence Berry, as Trustee of the Allen Lawrence Berry Trust ("ALB Trust") is a trust wherein Allen Lawrence Berry serves as trustee of the ALB Trust, and is – along with others – a beneficiary of the Trust.  ALB Trust has already appeared in these proceedings, and thus this

Counter-Plaintiffs First Amended Original Petition Asserting Counter-Claims will be served upon Allen Lawrence Berry, Trustee, and the Trust by service upon their attorney: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6. Berry GP, Berry Operating, Bay Ltd., Marty Berry, and A. Lawrence Berry may be sometimes referred to as the "Parties," or any one of them referred to as a "Party."

7. L.Berry is the original Plaintiff in this legal action by having filed Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Verified Petition"). The legal action initiated by Plaintiffs' Verified Petition was filed in Harris County, Texas, but promptly transferred to Nueces County, Texas. A Counter-Plaintiffs' Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' Verified Petition in compliance with Texas Rule of Civil Procedure ("TRCP") 97. L.Berry, adding Lawrence Berry in his capacity as trustee of the Allen Lawrence Berry Trust ("Trust"), then filed Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction. The~~This~~ Counter-Plaintiffs' First Amended Original Petition Asserting Counter-Claims was~~is now being~~ filed as counter-claim to Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction in compliance with Texas Rule of Civil Procedure ("TRCP") 97.

## II.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all Parties. Specifically, Berry GP, Berry Operating, and Bay Ltd. are legal entities formed in Texas that maintain their principal offices in Texas. M.Berry and L.Berry reside in Texas. As such, all Parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

9.     Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) inasmuch as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 inasmuch as Counter-Plaintiffs seek to recover an interest in and/or quiet title to real property. See Exhibit C (with attachment. See Exhibit C (with attachments).

Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3).  See Exhibit B.

**III.**

**DISCOVERY**

10.    Discovery should be conducted in accordance with Level 3, as permitted by TRCP 109.4.

**IV.**

**EXECUTIVE SUMMARY**

11.    Counter-Plaintiffs file this amended counter-petition asserting claims against L.Berry and the Trust for conversion, breach of fiduciary duty, breach of contract, unjust enrichment, breach of constructive trust, fraud, and other causes of action. Counter-Plaintiffs' causes of action pleaded against and complaining of L.Berry and Trust are directly responsive to L.Berry's claims for self-dealing and breach of fiduciary duty filed against one or more Counter-Plaintiffs.  For all claims referenced in this Counter-Plaintiffs' SecondFirst Amended Original Petition Asserting Counter-Claims, Counter-Plaintiffs now sue Counter-Defendants.

**VI.**

**FACTUAL BACKGROUND**

12.    The Berry Entities and Berry-Related Entities are a large organization of companies engaged in various businesses throughout the United States, and have successfully done so since the 1950s.

4

13.     Marvin Berry had four (4) sons: Marty Berry (M.Berry), Dennis Berry (D.Berry), A. Lawrence Berry (L.Berry), and Kenneth Berry. After Marvin Berry passed in 1997, control of the Berry Entities shifted to Laura Berry (Marvin's wife), and then to their (Marvin's and Laura's) sons — M.Berry, D.Berry, and L.Berry. LDMA LP ("LDMA") sits at the top of the Berry Entities. LDMA's 3% general partner is Beacon Inc. which is owned by M.Berry, D.Berry, and L.Berry. LDMA owns Berry GP which, through a series of legal entities, own Berry Operating and Bay Ltd. The Board of Directors of Berry GP (M.Berry, Bonnie Berry, L.Berry, and Chrissy Hinojosa Phd.) — in accordance with the by-laws of Berry GP — primarily govern Berry GP, the Berry Entities, and some of the other affiliated entities (indirectly). All considered (generally), ownership of the Berry Entities is vested with M.Berry, Bonnie Berry,[1] and L.Berry (shareholders); and control of the Berry Entities (generally, at a policy level) is with M.Berry, Bonnie Berry, L.Berry, and Chrissy Hinojosa, Hinojsa Phd. (all serving as directors of Berry GP).[2]

14.     For purposes of this pleading, the Berry Entities refers to Berry GP, Berry Operating, and Bay Ltd. For purposes of this pleading, the Berry-Related Entities[3] refer to the Allen Lawrence Berry 2007 Trust, Redfish Bay Terminals Inc. ("RBT"), Orca Assets GP LLC ("Orca"), Inner Channel Investments Inc. ("ICI"), Orca ICI Development ("Orca ICI," a Texas partnership), Orca ICI Development JV, Orca Petroleum Ltd., Orca Properties LLC (a/k/a Orca Specialty Equipment LLC, Providence Plantation, and/or Casa de Juego), West 17th Resources LLC, Gansevoort Investments LLC, Axis Midstream Holdings LLC (TX), Lone Star Ports LLC (TX), Midway Junction Properties LLC (TX), Halcon Mineral Interest LLC, Zilker Acquisitions LLC, Three Rivers Pipe and Rental LLC, Southern Comfort Equipment, Ridgefield Energy Investments LLC,

[1] Successor in interest to Dennis Berry, recently deceased
[2] In mid-2024, L.Berry was removed as director of Berry GP.
[3] Please note that the definition of Berry-Related Entities in this Nueces County, Texas, legal action was broadened to include Axis Midstream Holdings LLC, Lone Star Ports LLC, Midway Junction Properties LLC, and Redfish Bay Terminals Inc. in May, 2024 (approximately six (6) months in advance of Allied Ports LLC's filing of a competing lawsuit in Harris County, Texas).

Ridgefield Energy Operating LLC, Ridgefield Eagle Ford LLC, Ridgefield Eagle Ford Minerals LLC, Ridgefield Permian LLC, Ridgefield Permian Minerals LLC, Ridgefield Energy Partners LLC, CEC Ridgefield Holdings LLC, Blue Wagon Energy Investments LLC, Alamo Resources IV JV LLC, B.B.I. Inc., Escopeta Oil & Gas Corporation, Furie Operating Alaska LLC, Helios Power Capital LLC, Danskammer Energy LLC, Berry Y&V Fabricators LLC (and related companies). The Berry Entities and Berry-Related Entities may be sometimes referred to as the "Berry Companies."

15. The Berry-Related Entities Companies, except for the Trust and RBT, are and have been started up, owned (legally and/or beneficially), held in trust, managed, developed, operated, and/or controlled at various times by and through Berry GP, and/or by and through (in part) M.Berry, D.Berry, and/or L.Berry (one or all of them), since the 2000s. Such business practices are investments for one or more of the Berry Entities and/or their owners/shareholders.

16. As an example of how Berry Entities invested, Counter-Plaintiffs invested substantially in ICI, ICI Orca, and Orca (related companies). Berry Entities/Counter-Plaintiffs also substantially invested in Axis and LSP (related companies). Specifically, Counter-Plaintiffs seeded capital (money, assets, manpower) to Orca/Axis (et al) to start-up, manage, develop, operate, and/or control an investments investment in the Eagle Ford Shale and/or Permian Basin — which, in turn, became seed-money/assets (including mineral/real property interests as assets) for several of the Berry-Related Entities (the "Investment").

17. From time to time, M.Berry, D.Berry, and/or L.Berry (or all of them) had meetings to discuss how to manage the Investment, whether to sell or continue with the Investment, and other business-type meetings/discussions.

18. Seeded capital money/assets from Counter-Plaintiffs to some Berry-Related Entities ICI to Orca/ICI to Orca involved an agreement/contract as between these legal entities requiring payment-in-full for the base value of the seeded money/assets received by Orca. In contravention

6

of such agreement/contract, L.Berry, individually and as trustee for the Trust, has very recently refused to pay and/or transfer rights as required by the agreement/contract.

19. Seeded capital money/assets from Counter-Plaintiffs to some Berry-Related Entities~~ICI to Orca/ICI to Orca~~ also included the agreement/contract that L.Berry~~/Orca~~/Trust (all or in part) would initiate the Investment (start-up); manage, develop, operate, and control the Investment, and hold the Investment in trust and for the benefit of Counter-Plaintiffs. In contravention of such agreement/contract, L.Berry/~~Orca~~/Trust (all or in part) has engaged a series of self-dealing transactions without notice to, consultation with, or vote (in-meeting or otherwise) of a majority of the owners/shareholders/directors of Counter-Plaintiffs.

20. Specifically, L.Berry/Trust has participated in self-dealing transactions involving the Investment (and the Investment's earnings) — taking of seeded money and assets of value (wealth) for personal benefit, and not for the benefit of any one or more of the Counter-Plaintiffs. This on-going practice by L.Berry/~~Orca~~/Trust of self-dealing transactions and ultra vires transactions violates the fiduciary obligations owed by L.Berry, individually and as trustee of the Trust, to Counter-Plaintiffs (and others).

21. In furtherance of L.Berry's/Trust's wrongful conduct, L.Berry/Trust has intentionally obscured self-dealing transactions by transfers of money/assets of substantial value to and/or through the Berry-Related Entities. All such transactions constitute L.Berry's, individually and as trustee for the Trust, wrongful taking of money and assets belonging to, held in trust for, and held for the benefit of Counter-Plaintiffs. L.Berry, individually and as trustee for the Trust, has and is engaged in wrongful takings, and also has failed to disclose same (as is required by his (L.Berry's, individually and as trustee of the Trust) fiduciary duties owed).

22. L.Berry's (individually and as trustee of the Trust) wrongful conduct (as described herein) continues to-date. Counter-Plaintiffs file this legal action to demand L.Berry (individually and as

7

trustee of the Trust) provide financial information as shall be requested through the legal discovery process. Counter-Plaintiffs now plead the following claims and causes of action against L.Berry (individually and as trustee of the Trust) and the Trust: conversion, breach of fiduciary duty, breach of contract, unjust enrichment, breach of constructive trust, and fraud.

**VII.**
**CAUSES OF ACTION**

**Count 1**
**Conversion**

23. Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 1 in their entirety.

24. Counter-Plaintiffs would show that L.Berry (individually and as trustee of the Trust, Counter-Defendants) are liable to Counter-Plaintiffs for conversion of Counter-Plaintiffs' Investment (+ earnings). Specifically, Counter-Plaintiffs seeded capital (money, assets) to L.Berry/~~Orca/~~Trust (and their benefit) to start-up, manage, develop, operate, and/or control Investment ~~an investment in the Eagle Ford Shale and/or Permian Basin~~ — which, in turn, became seed-money/assets for several of the Berry-Related Entities (the Investment). L.Berry and the Trust were to hold the Investment (+ earnings) in trust for Counter-Plaintiffs.[4] Wrongfully, L.Berry and the Trust have absconded with the Investment (+ earnings) through a series of self-dealing transactions without notice to, consultation with, or vote (in-meeting or otherwise) of a majority of the owners/shareholders/directors of Counter-Plaintiffs. L.Berry's/Trust's wrongful conduct is a conversion of Counter-Plaintiffs' Investment (+ earnings).

25. The elements of conversion are: 1) claimants (Counter-Plaintiffs) owned or were entitled to

---

[4] Although some monies have been paid by L.Berry or one of his legal entities to one or more Counter-Plaintiffs as part of these transactions, the amounts of money paid have only been a partial repayment of monies owed to Counter-Plaintiffs — still in disregard for that which was agreed to be held in trust by L.Berry/Trust for Counter-Plaintiffs.

8

possession of property; 2) another assumes or exercises control of the property in an unauthorized manner to the exclusion of the claimants; and 3) the claimants' demand for return of

the property is refused. By this Counter-Plaintiffs' Second~~First~~ Amended Counter-Claim these Counter- Plaintiffs continue to request return of all converted assets. In this case, Counter-Plaintiffs clearly own and are entitled to possession of the Investment (+ earnings). Such Investment (+ earnings) were supposed to be held in trust by L.Berry, individually and as trustee for the Trust (the sole person in control of such Investment (+ earnings)) for Counter-Plaintiffs. Counter-Defendants have wrongfully assumed and exercised control over such Investment (+ earnings), and done so in a manner unauthorized by Counter-Plaintiffs and to the exclusion of Counter-Plaintiffs. Further, and in disregard of requests from Counter-Plaintiffs, Counter-Defendants have failed and refused to return the Investment (+ earnings) to Counter-Plaintiffs. This is a wrongful conversion of such Investment (+ earnings) — the money/assets — belonging to Counter-Plaintiffs, for which Counter-Plaintiffs now sue.

26.     Counter-Defendants' wrongful conversion of Counter-Plaintiffs' Investment (+ earnings) has caused substantial financial harm and losses to Counter-Plaintiffs. Counter-Plaintiffs now sue for the return of such Investment (+ earnings), or alternatively for the value of such Investment (+ earnings).

## Count 2
## Breach of Fiduciary Duty

27.     Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 2 in their entirety.

28.     Counter-Defendant L.Berry has been a shareholder, officer, and director of Counter-Plaintiffs for all relevant times. Counter-Defendants held the Investment (+ earnings) in trust for Counter-Plaintiffs all relevant times. As such, Counter-Defendants owe fiduciary duties to

Counter-Plaintiffs for all relevant times. The fiduciary duties owed by Counter-Defendants to Counter-Plaintiffs include, but are not limited to, the duty of loyalty, duty of utmost good faith and fair dealing, and duty of fairness and honesty. The fiduciary duties owed by Counter-Defendants to Counter-Plaintiffs further include putting Counter-Plaintiffs' interest before his (L.Berry's, individually and as trustee of the Trust) own interest, inclusive of devoting full time and efforts in favor of Counter-Plaintiffs' best interests — not L.Berry's own or just the Trust's interests. These duties that Counter-Defendants owe to Counter-Plaintiffs encompass obligations and/or duties to refrain from self-dealing transactions and to make full disclosures of information.

29.     While owing fiduciary duties to Counter-Plaintiffs, Counter-Defendants have engaged in, directed, approved, and/or taken actions in contravention of fiduciary duties owed, including but without limited to the following:

a.      L.Berry/Trust took substantial money/assets from Counter-Plaintiffs, and failed to invest same in the name of and/or for the benefit of Counter-Plaintiffs (thereby putting their own financial interest ahead of Counter-Plaintiffs' financial interest). By way of example, L.Berry and Trust took Counter-Plaintiffs money/assets yet wrongfully placed things of value (mineral leases) into Orca (a legal entity that ultimately (later) was determined to be 100% for the benefit of Trust). L.Berry and Trust took Counter-Plaintiffs money/assets for Axis/LSP, yet wrongfully purport to have transferred some of this interest to others (e.g., Allied Ports LLC); and other. This breach of fiduciary duty caused substantial financial harm and losses to Counter-Plaintiffs, and for which Counter- Plaintiffs now sue.

b.      L.Berry/Trust were supposed to hold the Investment (+ earnings) in trust for Counter-Plaintiffs, yet L.Berry/Trust refuses to account for and

10

surrender such Investment (+ earnings) in favor of Counter-Plaintiffs —
but rather appears to have absconded with the Investment (+ earnings).
This failure to hold, account for, and then surrender the Investment (+
earnings) for the benefit of Counter-Plaintiffs is self-dealing — and a
breach of fiduciary duty. This breach of fiduciary duty has caused
substantial financial harm and losses to Counter-Plaintiffs, and for which
Counter-Plaintiffs now sue.

c.    L.Berry/Trust took the Investment (+ earnings) for their own benefit (as
set forth above), and did so without full disclosure of details of the
Investment (and earnings) to Counter-Plaintiffs.    Rather than comply
with Counter- Defendants' fiduciary duties owed, Counter-Defendants
have engaged a series of transactions to obscure Counter-Plaintiffs'
rights to its Investment (+ earnings). This lack of full disclosure is
L.Berry's and Trust's breach of fiduciary duty of full disclosure and
candor owed to Counter-Plaintiffs. This breach of fiduciary duty has
caused substantial financial harm and losses to Counter-Plaintiffs, and
for which Counter- Plaintiffs now sue.

d.    L.Berry/Trust have used Counter-Plaintiffs money/assets to promote and
make profit for their own businesses in various manners and locations.
This is more self-dealing, and a breach of the fiduciary duty owed by
L.Berry/Trust to the Counter-Plaintiffs. This breach of fiduciary duty has
caused substantial financial harm and losses to the Counter-Plaintiffs, and
for which Counter-Plaintiffs now sue.

e.    There are additional transactions / ventures by Counter-Defendants that

11

are a breach of fiduciary duties owed to Counter-Plaintiffs, and all of which have caused substantial financial harm and losses to Counter-Plaintiffs.

For same, Counter-Plaintiffs now sue.

30. Counter-Defendants have taken money/assets/manpower from one or more of the Counter-Plaintiffs; the Investment (+ earnings) from one or more of Counter-Plaintiffs; misappropriated equipment, personnel, and other assets from one or more of the Counter-Plaintiffs; and all to the detriment of one or more of the Counter-Plaintiffs — while only benefiting Counter-Defendants. This is self-dealing. All such conduct described herein evidences Counter-Defendants' breaches of fiduciary duties owed; that is, self-dealing, advancing their (L.Berry's/Trust's) own interest rather than Counter-Plaintiffs' interest, breaches of loyalty to the Counter-Plaintiffs, breaches of good faith and fair dealing owed to Counter-Plaintiffs, breaches of full disclosure and candor owed to Counter-Plaintiffs, and more. Counter-Defendants' misconduct has been and continues to be designed as a subterfuge of obligations to the Counter-Plaintiffs (whereas other shareholders who may have received benefits account for same to the Berry Entities). Counter-Defendants' breaches of fiduciary duties owed to Counter-Plaintiffs have caused substantial financial harm and losses to Counter-Plaintiffs, for which Counter-Plaintiffs now sue.

## Count 3
## Breach of Contract

31. Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 3 in their entirety.

32. As noted herein, seeded capital money/assets from Counter-Plaintiffs included the agreement/contract that L.Berry, individually and as trustee of the Trust, would initiate the Investment (start-up); manage, develop, operate, and control the Investment, and hold the

Investment (+ earnings) in trust and for the benefit of Counter-Plaintiffs. In contravention of such agreement/contract, L.Berry, individually and as trustee of the Trust, have refused to perform as promised, but rather engaged a series of self-dealing transactions designed to allow L.Berry and the Trust to keep all (or some) of the Investment (+ earnings) for himself (L.Berry) and/or the Trust.

33.     Counter-Defendants' refusals to abide by the agreement/contract is a breach of agreement/contract. Counter-Defendants' breach of the agreement/contract has caused Counter-Plaintiffs substantial financial harm and losses, and for such substantial financial harm and losses Counter-Plaintiffs now sue.

**Count 4**
**Unjust Enrichment**

34.     Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 4 in their entirety.

35.     Recent events now give rise to a concern on Counter-Plaintiffs' behalf that Counter-Defendants may deny the agreement/contract (and/or some terms of the agreement/contract) as between Counter-Plaintiffs and Counter-Defendants — all in an effort by Counter-Defendants to wrongfully abscond with Counter-Plaintiffs' Investment + earnings. Such a result would be inequitable, and unjustly enrich Counter-Defendants.

36.     Counter-Plaintiffs would show that Counter-Plaintiffs did, in fact, provide seed capital money/assets from Counter-Plaintiffs to Orca/ICI /Orca and Axis/LSP as a benefit to Counter-Defendants, and to allow Counter-Defendants to invest (again, the Investment). This benefit to Counter-Defendants was provided by Counter-Plaintiffs, and it will cause a substantial detriment to Counter-Plaintiffs if the Investment + earnings are not returned to Counter-Plaintiffs. As such, equity demands that the Investment + earnings be returned to Counter-Plaintiffs or compensation

13

for value.

37. For these reasons set forth herein, Counter-Plaintiffs now sue Counter-Defendants for unjust enrichment, as fairness demands Counter-Plaintiffs be made whole by: (1) return of all Investment (+ earnings); or (2) the value of all Investment (+ earnings) be paid by Counter-Defendants to Counter-Plaintiffs.

## Count 5
## Breach of Constructive Trust

38. Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 5 in their entirety.

39. As noted above, Counter-Defendant L.Berry has been a shareholder, officer, and director of Counter-Plaintiffs for all relevant times. Counter-Defendant L.Berry held the Investment (+ earnings) in trust for Counter-Plaintiffs for all relevant times. L.Berry, as trustee for the Trust, held the Investment (+ earnings) in trust for the Counter-Plaintiffs for all relevant times. As such, Counter-Defendants owed and owe fiduciary duties to Counter-Plaintiffs for all relevant times.

40. Counter-Plaintiffs made transfer of monies/assets to Counter-Defendants (money, manpower, and assets). Counter-Plaintiffs made these transfers of monies/assets in reliance upon Counter-Defendants' promise to protect and deliver Counter-Plaintiffs' share of the Investment (+ earnings) to Counter-Plaintiffs.

41. Counter-Defendants now refuse to perform upon Counter-Defendants' promise (but rather now wants to keep for L.Berry's and his Trust's own gain/profit all of the Investment (+ earnings)). As such, Counter-Defendants will be unjustly enriched. Given these facts, Counter-Plaintiffs now sue for breach of constructive trust for the Investment (+ earnings) and related, traceable monies/assets. All such monies and assets should be placed in a constructive trust for the benefit of Counter-Plaintiffs or distributed to same.

14

## Count 6
## Fraud

42.     Counter-Plaintiffs incorporate all paragraphs herein as if set forth within Count 6 in their entirety.

43.     As noted above, Counter-Plaintiffs invested heavily ($millions$, the Investment) in ICI/, Orca ICI/,Orca and Axis/LSP, and other Berry-Related Entities for the benefit of Counter-Plaintiffs.  Such Investment was seed-money/assets for — and investment in — Berry-Related Companies.

44.     Counter-Plaintiffs invested the millions of dollars/assets based specifically upon Counter-Defendants' representations/promises to start-up, manage, develop, operate, and/or control Investmentsforinvestments in the Eagle Ford Shale and/or Permian Basin for the benefit of Counter-Plaintiffs (which is also for the benefit of L.Berry and his Trust, in part).

45.     More specifically, and to induce the Investment, Counter-Defendants promised to re-pay the original value of the Investment ($millions$) to the Counter-Plaintiffs; and further promised that the Investment would be for the benefit of the Counter-Plaintiffs (and understandably so given that L.Berry and the Trust would still share substantially in the benefits/profits).

46.     Instead, Counter-Defendants — although Counter-Defendants have paid some interest-only payments from time to time — have absconded with all or a substantial portion of the value of the Investment monies/assets + earnings.  On information and belief, Counter-Defendants apparently made interest payments to prolong the process (run out the clock) — all the while never intending to re-pay the original value of the Investment; and all the while never intending to deliver such Investment (+ earnings) to Counter-Plaintiffs.

47.     Presently, Counter-Defendants have gone dark on this discussion, and thereby indicated that L.Berry, individually and as trustee for the Trust, never intended to abide by the

representations/promises designed to induce the Investment.

48.     Counter-Defendants' fraud/fraud in the inducement has resulted in substantial, unearned profits for Counter-Defendants, personally and for the Trust; and great financial losses to the Counter-Plaintiffs.

49.     The above-described conduct constitutes fraud and fraud in the inducement, and thus is actionable in favor of one or more of the Counter-Plaintiffs.  For such fraud and fraud in the inducement, the Counter-Plaintiffs now file and assert all such claims and causes of action against Counter-Defendants.

## VIII.
## CAUSATION

50.     Counter-Plaintiffs incorporate all above paragraphs as if set forth herein in their entirety.

51.     Counter-Plaintiffs would show that all causes of action/claims set forth herein have been the cause, proximate cause, producing cause, and cause-in-fact of substantial harm and financial losses to Counter-Plaintiffs.  For all such harm and financial losses, these Counter-Plaintiffs sue.

## IX.
## LEGAL DAMAGES / REMEDIES

52.     Counter-Plaintiffs incorporate all above paragraphs as if set forth herein in their entirety.

53.     For all harm and financial losses suffered by Counter-Plaintiffs and arising from wrongful and/or inequitable conduct of Counter-Defendants, these Counter-Plaintiffs now sue.

54.     Counter-Plaintiffs file all causes of action/claims as set forth herein to recover monetary relief for the substantial harm and financial damages suffered by Counter-Plaintiffs; to wit; compensatory damages, actual damages, consequential damages, restitution damages, disgorgement damages, and other damages.  Counter-Plaintiffs claims asserted herein are for substantial harm and financial losses greatly in excess of $1,000,000.00.

55.     Counter-Plaintiffs file all causes of action/claims as set forth herein to recover monetary

16

relief for the harm and financial damages suffered by Counter-Plaintiffs; to wit; attorneys' fees.

56.     Counter-Plaintiffs file all causes of action/claims as set forth herein to recover monetary relief for the harm and financial damages suffered by Counter-Plaintiffs; to wit; prejudgment and post-judgment interests — as allowed by law.

57.     Counter-Plaintiffs, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers / conveyances / contracts / Manager appointments executed/ accepted by Counter-Defendant L.Berry (e.g., purportedly involving Orca Assets GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.), and/or others)) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiffs pray for all relief as requested herein, for costs of court in addition thereto, and for such other and further relief to which Counter-Plaintiffs may show themselves justly entitled as against Counter-Defendants (L.Berry and the ALB Trust).

Respectfully submitted,

LAW OFFICE OF DOUGLAS ALLISON

By: /s/ Douglas A. Allison
Douglas A. Allison
State Bar No. 01083500
doug@dallisonlaw.com
403 N. Tancahua Street
Corpus Christi, Texas 78401
Telephone: (361) 888-6002
Facsimile: (361) 888-6651

ATTORNEY FOR MARTY BERRY,
BERRY GP, INC., BERRY
OPERATING COMPANY, LLC and
BERRY CONTRACTING LOP

17

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd~~14th~~ day of December 3,~~April~~ 2024, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

/s/ Douglas A. Allison
Douglas A. Allison

# SUPPLEMENTAL APPENDIX 13

E-filed in the Office of the Clerk
for the Business Court of Texas
1/9/2025 4:23 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS and ALLIED PORTS LLC | § § § § | IN THE BUSINESS COURT |
| v. | § § | |
| AXIS MISTREAM HOLDINGS, LLC, ALLEN LAWRENCE BERRY, MARVIN GLENN BERRY, and BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | 11A – STATE OF TEXAS<br><br>HONORABLE SOFIA ADROGUE |

DEFENDANTS' BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Marty Berry ("Marty"), Bonnie Berry ("Bonnie"), and Axis Midstream Holdings LLC ("Axis"), and file this Defendants' Brief and in support of same would show:

I.
PRELIMINARY STATEMENT

Subject-Matter Jurisdiction:

The Court's request for additional briefing probes that interplay as between jurisdiction (as traditionally defined) and venue (as traditionally defined). This cross-roads is dominant jurisdiction. Please consider.

> **Subject-Matter Jurisdiction:** "Jurisdiction" refers to the power of the court, under the Constitution and laws, to determine the merits of an action between parties and to render a judgment."[1]
> . . . Subject-matter jurisdiction 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver.'"[2]

---

[1] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Reliant Energy Inc. v. Gonzalez,* 102 S.W.3d 868, 871 (Tex.Civ.App. – Houston [1st District] 2003), affirmed 159 S.W.3d 615 (Texas 2005) (citing *National Life Company v. Rice,* 167 S.W.2d 1021, 1024 (1943).

[2] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Dubai Petroleum Company v. Kazi,* 12 S.W.3d 71, 76 (Texas 2000) (quoting *Federal Underwriters Exchange v. Pugh,* 174 S.W.2d 598, 600 (1943); see also *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443-444 (Texas 1993).

The parties to this Harris County Lawsuit[3] seemingly concede that this Business Court has acquired subject-matter jurisdiction, and that Judge Robert Galvan presiding over the Nueces County Lawsuit[4] also has acquired subject-matter jurisdiction. As further discussed below, this circumstance is precisely what triggers the filing of Movants' Plea in Abatement and this Court's consideration of dominant jurisdiction.

**<u>Venue:</u>**

Of course, "**Venue is Not Jurisdictional:** Jurisdiction and venue are not synonymous."[5]

> ""Venue" refers to the propriety of prosecuting, in a particular forum, a suit on a given subject matter with specific parties, over which the forum must, necessarily, have subject-matter jurisdiction.[6] See id. [*State v. Pounds*, 525 S.W.2d 547, 550 (Tex. Civ.App. – Amarillo 1975, writ ref'd n.r.e.); *Reliant Energy Inc.* 102 S.W.3d at 871; *Nat'l Life Co. v. Rice*, 167 S.W.2d at 1025; see also *Herring v. Welborn*, 27 S.W.3d 132, 140-141 (Tex.App. – San Antonio 2000, petition denied) (holding that issue of subject-matter jurisdiction "trumps" venue provisions of Civil Practice and Remedies Code).[7]

---

NOTE: If a court lacks subject-matter jurisdiction, the case must be dismissed – and any judgment rendered is void. *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

[3] *Albert Theodore Powers, and Allied Ports LLC v. Axis Midstream Holdings LLC, Allen Lawrence Berry, Marvin Glenn Berry, and Bonnie Berry, as successor in interest to Dennis Wayne Berry,* Cause No. 24-BC11A-0025, pending in the Texas Business Court (Eleventh Division).

[4] *Lawrence Berry, individually and as Trustee of the Allen Lawrence Berry Trust, directly and derivatively on behalf of Becon Inc.; LDMA Limited Partnership, and Berry GP Inc. (Berry GP Inc., LDMA Limited Partnership, and Becon Inc., nominal Plaintiffs) v. Marty Berry, Michael Hummell, Berry GP Inc., Berry Operating Company LLC, and Berry Contracting LP,* Cause No. 2024DCV-0045-C, pending before the 94th Judicial District Court, Nueces County, Texas (Honorable Judge Robert Galvan, presiding).

[5] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006). In the sense that dominant jurisdiction determines the location of the court contest, Texas judicial authority speaks of dominant jurisdiction as deciding the venue of the court contest. Notwithstanding, the Texas common law of dominant jurisdiction must not be confused with the Texas' statutory scheme defining what Texas county or counties are proper venue for a given claim/lawsuit.

[6] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

[7] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

Venue is determined by application of Texas Civil Practice and Remedies Code ("TCPRC"), Chapter 15; or other express statutory language as may be contained in other legislation.[8]  Whereas subject-matter jurisdiction may be challenged at any time (it cannot be waived), a party may waive venue if not challenged on a timely basis.[9]  Venue is not jurisdictional.[10]

**Dominant Jurisdiction:**

"When the jurisdiction of [two (2) different Texas courts] are concurrent, the issue is one of dominant jurisdiction"[11]  "When, as here, two courts have concurrent jurisdiction to determine inherently intertwined issues, filing a dilatory plea in abatement is the proper method for drawing the court's attention to another court's possible dominant jurisdiction"[12]  "Dominant jurisdiction applies when venue is proper in two or more Texas counties or courts."[13]  Texas' common law having evolved over the past one hundred (100) years informs our judiciary of how to address the

---

[8] In the Harris County Lawsuit, venue may lie in Harris County, Texas (as claimed by Plaintiffs - although their proffered venue selection clause is not an agreement as to venue in Harris County but rather only speaks of 'waiving objection' to venue (and saying nothing of exclusive venue)); or in Nueces County pursuant to TCPRC 15.011; or in Nueces County pursuant to TCPRC 15.002 (where the purported Investment Agreement was allegedly signed); or in San Patricio County pursuant to TCPRC 15.011.  As discussed herein, this venue issue is not to be addressed in the second-filed action (Harris County Lawsuit).

[9] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex.App. – Houston [1st District] 2004, no petition); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex.Civ.App. – Houston [1st District] 2000, petition denied); *Herring v. Welborn*, 27 S.W.3d 132, 141 (Tex.App. – San Antonio 2000, petition denied).

[10] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Herring v. Welborn,* 27 S.W.3d 132, 141 (Tex.App. – San Antonio 2000, petition denied); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex.Civ.App. – Houston [1st District] 2000, petition denied).

[11] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011); citing *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988); see also *Bailey v. Cherokee County Appraisal District*, 862 S.W.2d 581, 582 (Texas 1993) (district court and county probate court had concurrent jurisdiction, giving rise to determination that first-filed action had dominant jurisdiction); *In re Sims*, 88 S.W.3d 297 (Tex.Civ.App. – San Antonio, 2002) (where two (2) courts have concurrent jurisdiction, court of first-filed action should retain its jurisdiction); *Green v. Watson,* 860 S.W.2df 238, 243 (Tex.Civ.App. – Austin 1993) ("Generally, when two courts have concurrent jurisdiction, the court in which suit was first filed has dominant jurisdiction to the exclusion of the other coordinate courts").

[12] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011).

[13] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011); citing *Gonzalez v. Reliant Energy Inc.*, 159 S.W.3d 615, 622 (Texas 2005); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988); *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Texas 2001).

3

circumstance of two (2) courts having concurrent jurisdiction of intertwined issues – when both courts have venue of the cases before the two (2) courts.[14]

## II.
## ISSUE

In our present circumstance, there is the Nueces County Lawsuit and the Harris County Lawsuit. Both courts (in Nueces and Harris County) have acquired subject-matter jurisdiction, and both courts have venue (although there is a pending motion for transfer of the Harris County Lawsuit based upon mandatory venue provisions (TCPRC 15.011)). This Court requested further briefing "addressing the legal effect, if any, of the Moving Parties' claim that "neither Marty Berry nor Dennis Berry ["Dennis"] signed any contract with provision allowing for venue in Harris County, Texas" on disposition of the Motions."[15] The Court's query considers the legal effect, if any, on three (3) distinct motions; that is, the plea in abatement, motion to transfer venue, and motion to remand. For reasons that perhaps are obvious, this response will focus upon Movants' plea in abatement, and motion to transfer venue.

## III.
## ARGUMENT

**Plea in Abatement:**

As noted above, the "filing a dilatory plea in abatement is the proper method for drawing the court's attention to another court's possible dominant jurisdiction."[16] In Texas, there is no 'dominant jurisdiction statute,' but rather it is a doctrine that has evolved in Texas common law

---

[14] See *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), and other cases cited herein. All parties seeming concede the 94th Judicial District Court in Nueces County (the Nueces County Lawsuit) has subject-matter jurisdiction and proper venue (there is no venue contest in the Nueces County Lawsuit). Thus, the two (2) courts (for the Nueces County Lawsuit and the Harris County Lawsuit) have concurrent jurisdiction, and proper venue of the actions pending before them.

[15] Per this Court's Order, the term "Motions" is defined as Marvin Glenn Berry's Plea in Abatement and Motion to Abate; Movants' Motion to Remand, Dismiss, and/or Transfer Venue; and Axis Midstream Holdings LLC's Motion to Transfer Venue.

[16] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011).

over the past one hundred (100) years.[17] The most pointed answer to the Court's query is stated in the Texas Supreme Court's opinion in *Curtis v. Gibbs*,[18] wherein one litigant filed a legal action in Bowie County (the first-filed action) and the opposing litigant filed a legal action in Dallas County (the second-filed action). Given the circumstance (both courts having subject-matter jurisdiction of the dispute, and both courts having venue of the matter), the Texas Supreme Court concluded that the judge in Dallas County (second-filed lawsuit) had "no right to interfere [with the actions of the judge in Bowie County], or to take any other action with the suit filed in Dallas County except to sustain the plea in abatement . . . ."[19] The party opposing the abatement argued venue was proper in Dallas County (much like Plaintiffs argue that venue is proper in the Harris County Lawsuit), but the Texas Supreme Court held steadfast to its rule of how to manage venue in the second-filed action. The Texas Supreme Court stated:

> "The [party opposing the plea in abatement in the second-filed action] asserts that venue properly lies in Dallas County [the location of the second-filed action] . . . . This is [] irrelevant. The Dallas Court [second-filed action] did not have jurisdiction to pass on the venue question in connection with a plea of prior action pending. The court which has dominant jurisdiction of the controversy, in this case the Bowie court [first-filed action], has exclusive jurisdiction to determine the venue question."[20] . . .

Whether Marty or Dennis signed the Investment Agreement is a disputed issue. If Marty and Dennis signed the Investment Agreement, the venue provision therein is of no impact to Movants' Plea in Abatement which clearly sets forth how the judge presiding in the Nueces County Lawsuit acquired dominant jurisdiction given the inherent interrelation of a core dispute made subject of

---

[17] See *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), and other cases cited herein.
[18] *Curtis v. Gibbs*, 511 S.W.2d 263 (Texas 1974).
[19] *Curtis v. Gibbs*, 511 S.W.2d 263, 265 (Texas 1974).
[20] *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974); citing *Neal v. Texas Employers' Insurance Association*, 14 S.W.2d 793 (1929); *Wheelis v. Wheelis*, 226 S.W.2d 224 (Tex.Civ. App. 1950, no writ history).

the Nueces County Lawsuit and the Harris County Lawsuit (ownership and control of Axis Midstream Holdings LLC by Berry GP Inc./Redfish Bay Terminals Inc. (as claimed by Berry GP Inc., Marty Berry, and Bonnie Berry), or Allied Ports LLC (as claimed by Plaintiffs herein and Lawrence Berry)).[21]

The Texas Supreme Court's resolve and the result obtained in the *Curtis* matter (1974) is demonstrable in other judicial opinions. In *Herring v. Welborn*,[22] the first-filed proceeding was a probate matter (San Patricio County) and the second-filed proceeding was filed in the county wherein real property of the probate estate was located (Wilson County). The plaintiff in the second-filed proceeding (Wilson County) argued that "substantial authority exists for the filing of a lawsuit regarding real estate title in district court, particularly [in] the county . . . where the property is located, even while a probate remains open."[23] The San Antonio Court of Appeals followed the reasoning in *Goodwin v. Kent*[24] (wherein the Tyler Court of Appeals considered the issue of dominant jurisdiction as between two (2) courts with power to decide a real estate title issue), and decided the first-filed legal action in San Patricio County had "broad authority . . . which is ongoing because of the continuing administration of [the] estate, . . . to the exclusion of the Wilson County district court . . . ."[25] The San Antonio Court of Appeals decided, "the Wilson County district court should not exercise jurisdiction"[26] – and this ruling directly ignored the Wilson County plaintiff's argument that mandatory venue lies in Wilson County for disputes related to the real estate in Wilson County.[27] The trial court and appellate court gave no significance to plaintiff's argument (in the second-filed Wilson County proceeding) that a

---

[21] See Movants' briefing on file.
[22] *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000).
[23] *Herring v. Welborn*, 27 S.W.3d 132, 138 (Tex.Civ.App. – San Antonio 2000).
[24] *Herring v. Welborn*, 27 S.W.3d 132, 138-140 (Tex.Civ.App. – San Antonio 2000).
[25] *Herring v. Welborn*, 27 S.W.3d 132, 140 (Tex.Civ.App. – San Antonio 2000).
[26] *Herring v. Welborn*, 27 S.W.3d 132, 140 (Tex.Civ.App. – San Antonio 2000).
[27] *Herring v. Welborn*, 27 S.W.3d 132, 138-140 (Tex.Civ.App. – San Antonio 2000)

mandatory venue provision somehow impacted the dominant jurisdiction analysis (it did not).  The

San Antonio Court of Appeals reasoned: "The jurisdictional requirement "trumps" the venue

provision of bringing suit in the county where the land is located."[28]  This reasoning is consistent

with the Texas Supreme Court's opinion in *Curtis*.[29]  This reasoning is sound.

A review of *Wyatt v. Shaw Plumbing Company*[30] confirms the underlying reason why the

Texas Supreme Court (in *Curtis*) and a Texas Court of Appeals (in *Herring*) refused to conflate the

issue of dominant jurisdiction with a venue determination.  In *Wyatt*, the first-filed action was in

Duval County, and the second-filed action was in Nueces County.  Staying true to Texas

jurisprudence, the Texas Supreme Court supported abatement of the second-filed action, stating:

> "Abatement of a lawsuit due to the pendency of a prior suit is
> based on the principles of comity, convenience, and the necessity
> for an orderly procedure in the trial of contested issues.  (citations
> omitted) . . . There are three exceptions to the rule in *Cleveland v.
> Ward* that the court where suit is first filed acquires dominant
> jurisdiction: (1) conduct by a party that estops him from asserting
> prior active jurisdiction; (2) lack of persons to be joined if feasible,
> or the power to bring them before the court; and (3) lack of intent to
> prosecute the first lawsuit."[31]  (citations omitted).

In no way, shape, or form is there any Texas case law that states or even remotely suggests that

the purported signing of a 'contract with provision allowing for venue'[32] would have any impact

on a court's analysis and application of Texas common law on dominant jurisdiction.  There are

three (3) exceptions to application of the law of dominant jurisdiction (as stated in *Wyatt*).  None

of the three (3) judicially recognized *Wyatt* exceptions apply in this Harris County Lawsuit.

---

[28] *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000).
[29] Compare *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000), with *Curtis v. Gibbs*, 511 S.W.2d 263, 265 (Texas 1974).
[30] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988).
[31] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).
[32] Hearing Exhibit 8 (Investment Agreement), at p. 4

In summary, the Texas Supreme Court in *Curtis* informs us that consideration of a venue argument in the second-filed action is "irrelevant," and that the court in a second-filed action "did not have jurisdiction to pass on the venue question in connection with a plea of prior action pending." In similar manner, the San Antonio Court of Appeals (*Herring*) considered whether a mandatory venue provision might sway application of the doctrine of dominant jurisdiction and concluded the jurisdictional requirement "trumps" any consideration of a mandatory venue provision. Finally, the Texas Supreme Court in *Wyatt* makes clear the three (3) exceptions to the dominant jurisdiction/first-filed rule – and none of the exceptions apply in the Harris County Lawsuit (there is no exception allowing a contract, if signed, to overwhelm Texas common law relating to dominant jurisdiction).

**Motion to Transfer Venue:**

As discussed above, Movants do not believe venue is an issue to be decided in this second-filed lawsuit (the Harris County Lawsuit). If the Court is considering the dominant jurisdiction issue along-side the venue issue, then Movants request consideration of the following.

1. *Venue Has Already Been Decided*

Lawrence filed the Nueces County Lawsuit more than a year ago,[33] and this lawsuit is still-pending in Nueces County[34] – along with Movant Marty Berry's (Berry GP Inc.'s and others') counterclaims therein.[35] The Nueces County Lawsuit expressly requests that Judge Robert Galvan declare –

> "transfers / conveyances / contracts / Manager appointments
> executed / accepted by [Lawrence] (e.g., purportedly involving

---

[33] Hearing Exhibit 15: Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction

[34] Hearing Exhibit 15: Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction

[35] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims

. . . Axis Midstream Holdings LLC (as wholly owned/Managed
by Berry GP and/or Redfish Bay Terminal Inc.), and/or others))
without majority Board of Directors approval [] void, void ab
initio, voidable, invalid, and/or of no legal force or effect."[36]

This issue is pending in Nueces County, Texas, as Berry GP/Redfish Bay Terminal Inc. ("RBT")

seek a judicial determination that Berry GP or RBT (both wholly owned/controlled by Marty,

Bonnie, and Lawrence through various companies) is sole owner and solely in control of Axis

Midstream Holdings LLC (not Plaintiffs).[37] Of course, the Plaintiffs in this Harris County Lawsuit

have pleadings on file that endeavor to achieve the opposite result on the exact same issue (i.e.,

that Plaintiffs own and control Axis Midstream Holdings LLC).[38] The proper venue for a judicial

declaration to resolve this core dispute has already been ruled upon; that is, the Nueces County

Lawsuit is irreversibly cemented in Nueces County by way of a court order transferring the Nueces

County Lawsuit to Nueces County, Texas.[39]

All considered, venue of this dispute regarding ownership/control of Axis Midstream

Holdings LLC has already been decided.[40] TRCP 87(5), in pertinent part, states:

> "**Motion for Rehearing.** If venue has been sustained as against
> a motion to transfer, or if an action has been transferred to a proper
> county in response to a motion to transfer, then no further motions
> to transfer shall be considered regardless of whether the movant
> was a party to the prior proceedings or was added as a party
> subsequent to the venue proceedings . . . ."[41]

---

[36] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims, at p. 17
[37] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims, at p. 17
[38] Hearing Exhibit 12: Plaintiffs' Verified First Amended Petition and Application for Temporary Restraining Order and Temporary Injunction; see also Hearing Exhibit 17: Amended Temporary Restraining Order
[39] Hearing Exhibit 18: Agreed Order Granting Defendants Marty Berry's and Robert Powers' Emergency Motions to Transfer Venue
[40] Hearing Exhibit 18: Agreed Order Granting Defendants Marty Berry's and Robert Powers' Emergency Motions to Transfer Venue
[41] Texas Rule of Civil Procedure 87(5).

Texas law precludes a second venue determination by any court.[42]  TRCP 87(5) is fully discussed in *Hendrick Medical Center v. Howell*.[43]  In *Hendrick,* a Jefferson County judge transferred a case to Jones County – the plaintiffs dismissed the case – the plaintiffs re-filed in Dallas County – and a venue dispute ensured in the Dallas County litigation.  On appeal, the Dallas Court of Appeals ruled:

> " . . . [W]e hold that once a venue determination has been made in a cause, that determination is conclusive in a subsequent refiling after nonsuit of the same cause of action against the same parties.  Consequently, venue in the second suit filed by [plaintiffs] has been **conclusively determined to lie in Jones County as a result of the Jefferson County judge's venue determination in the first suit**."[44] (emphasis added)

> "The *res judicata* rule was adopted to prevent defendants from being subjected to the harassment and expense of presenting their venue claims in a number of successive forums as a consequence of a plaintiff's nonsuiting and subsequent refiling of the same cause of action in different counties."[45]

Obviously, Lawrence has not non-suited his claims in the Nueces County Lawsuit (strengthening Movants' argument), nor have Movants non-suited their counterclaims in the Nueces County Lawsuit.  However, Plaintiffs filing with Lawrence as a friendly defendant in this Harris County Lawsuit is substantially the same as Lawrence re-filing his Nueces County Lawsuit a second time in Harris County (both seeking control of Axis Midstream Holdings LLC and its real property associated with the Project (as more fully discussed in previous briefing and shown by evidentiary

---

[42] TRCP 87(5); see also *Hendrick Medical Center v. Howell,* 690 S.W.2d 42 (Tex.Civ.App. – Dallas 1985).
[43] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42 (Tex.Civ.App. – Dallas 1985).
[44] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 44 (Tex.Civ.App. – Dallas 1985).
[45] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 45 (Tex.Civ.App. – Dallas 1985).

exhibits[46])) – and thus *Hendricks* applies.[47]  Movants should not be required to defend venue twice[48] – irrespective of any purported contract with provision allowing for venue in Harris County.[49]  Thus, the Investment Agreement's venue provision (whether signed by Marty and Dennis, or not) is of no impact as the venue for adjudication of the core dispute has already been decided.

### 2. *The Venue Clause in the Investment Agreement is Not Applicable*

Additionally, and alternatively, Movants would show that the venue provision in the Investment Agreement is not applicable (signed or not).  A simple reading of the Investment Agreement's venue provision reveals that the circumstances that presently exist were not contemplated by the Investment Agreement; that is, the Investment Agreement commits no one to any position in the event a first-filed action (the Nueces County Lawsuit) seeking adjudication of interrelated issues is properly filed or pursued in a different venue (a venue other than Harris County).  The venue provision in the Investment Agreement does not contemplate a scenario that raises the issue of dominant jurisdiction.

3. Finally, the Court's specific query highlights the factual dispute regarding whether

---

[46] Hearing Exhibits 2, 3, and 4 (real property made subject of Nueces County Lawsuit is same real property made subject of Axis Midstream Holdings LLC's United States Army Corps of Engineer's (USACE's) permit over which all parties assert ownership/control).

[47] Compare Hearing Exhibit 12: Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction, with Hearing Exhibit 25: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims

[48] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 45 (Tex.Civ.App. – Dallas 1985).  Accord *Joiner v. Stephens,* 457 S.W.2d 351, 351-352 (Tex.Civ.App. – El Paso 1970) (plaintiff filed first lawsuit, defendant requested transfer to Grayson County, and plaintiff dismissed and re-filed "new suit" – El Paso Court of Appeals ruled venue must be in Grayson County based upon "policy that defendants are not to be subjected to repeated expense of pressing venue claims in successive actions by a plaintiff . . . ."); *Southwestern Investment Company v. Gibson*, 372 S.W.2d 754, 757 (Tex.Civ.App. – Fort Worth 1963) (plaintiff filed first lawsuit, defendant requested transfer to Potter County, plaintiff re-filed against same and new party – Fort Worth ruled venue must be in Potter County based upon policy reason that "defendant should not be subjected to the repeated expense of presenting his venue claim in successive actions").

[49] Hearing Exhibit 8: Investment Agreement

11

Marty Berry and/or Dennis Berry ever signed the Investment Agreement. This factual dispute may only be resolved by a jury. As such, any Court ruling in support of venue in Harris County would be automatic reversible error in the event a jury determines that either Marty Berry or Dennis Berry did not sign the Investment Agreement. Neither this Court nor the parties should be forced into this quandary given the core dispute among the parties is ownership and control of Axis Midstream Holdings LLC – and issue ripe for judicial declaration in the Nueces County Lawsuit.

## IV.
## PLAINTIFFS HAVE OPTIONS

For the record, Plaintiffs are not without options. If the case is abated, such is not a dismissal of Plaintiffs' Harris County Lawsuit. Allowing Judge Robert Galvan to address all matters within the scope of his jurisdiction is appropriate under Texas law, and – more importantly – consistent with the judicial policy considerations favoring comity, conservation of judicial resources, convenience, avoidance of delay, and the necessity for an orderly procedure in the trial of contested issues. Obviously, there will be no ruling on Plaintiffs' breach of contract or other claims in the Nueces County Lawsuit, absent Plaintiffs' participation in the Nueces County Litigation. Plaintiffs may choose to intervene into the Nueces County Lawsuit,[50] or may choose to wait until such time as the abatement is lifted to pursue its claims, if any, that are not inherently interrelated/intertwined in the Nueces County Lawsuit.

## V.
## CONCLUSION

A more recent Texas Supreme Court opinion holds true to that which has long been the law in the State of Texas.:

"The obvious reasons for abatement, as we explained in *Wyatt*

---

[50] See *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974) ("If the mother objects to the venue, her remedy is to file a motion to transfer in the Bowie court.").

12

> *v. Shaw Plumbing Co.*, are the conservation of judicial resources, avoidance of delay, "comity, convenience, and the necessity for an orderly procedure in the trial of contested issues" — or as we put it in *Cleveland v. Ward*, to "prevent races from court to court by vigilant counsel". The first-filed rule also has several justifications. The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, "its action must necessarily be **exclusive"** because it is "impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties."[51] (emphasis added).

Respectfully, the first-filed action to acquire "competent jurisdiction" has the "exclusive"[52] jurisdiction to be the forum for adjudication of all inherently interrelated / intertwined disputes[53] within the scope of such court's jurisdiction (including those claims asserted by later amendment of pleadings, and/or related claims requiring inclusion of additional parties[54]). This has been the law in the State of Texas for almost a century and is the law of this case irrespective of whether

---

[51] See *Perry v Del Rio*, 66 S.W.3d 239, 252 (Texas 2001); citing *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988); see also *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), citing 1 Freeman on Judgments § 335 (5th ed.)).

[52] See *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), citing 1 Freeman on Judgments § 335 (5th ed.) (with dispute in two (2) different courts, one of the court's "action must necessarily be exclusive," and it "cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court") and further reference to a French case that declared "[w]hile the jurisdiction lasted it was exclusive, and could not be trenched upon by another tribunal." See also *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Texas 2001), citing to same quote in 1 Freeman on Judgments § 335 (5th ed.); *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974) (court of first-filed action had "exclusive jurisdiction to determine the venue question").

[53] See *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988) ("When an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted."); guided by TRCP 39, 97(a) which in this Harris County Lawsuit necessarily extends to TRCP 97(e) and TRCP 97(f) given that Movants' counterclaims in the Nueces County Lawsuit are identical to the cross-claims (Marty and Bonnie against Lawrence) that would be necessary in the Harris County Lawsuit, if not abated.

[54] See *Cleveland v. Ward,* 285 S.W. 1063, at *16 (Texas 1926) (first-filed court's jurisdiction attaches to permit "pleadings to be amended and amplified, new parties to be made, to determine the essential questions . . . ); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988) ("It is not required that the exact issues and all parties be included in the first filed action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues."); see also *Encore Enterprises Inc. v. Borderplex Realty Trust,* 583 S.W.3d 713, 723 (Tex.Civ.App. – El Paso 2019) (" . . . courts have not required that the precise issues and all the parties be included in the first suit, provided that the claims in the first suit can be amended to bring in all the necessary parties and claims), citing *In re Coronado Energy E & P Co. LLC* 341 S.W.3d 479, 482 (Tex.Civ.App. – San Antonio 2011, original proceeding) and *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 246-247 (Texas 1988).

13

there is a contract argued by a later-in-time party with provision allowing for venue in Harris County.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:     */s/ Douglas A. Allison*
        **DOUGLAS A. ALLISON**
        State Bar No. 01083500

        ATTORNEY FOR DEFENDANTS
        MARTY BERRY, BONNIE BERRY, &
        AXIS MIDSTREAM HOLDINGS, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on January 9, 2025.

*/s/ Douglas A. Allison*
DOUGLAS A. ALLISON

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96055643
Filing Code Description: No Fee Documents
Filing Description: Defendants' Brief
Status as of 1/9/2025 5:01 PM CST

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/9/2025 4:23:43 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96055643
Filing Code Description: No Fee Documents
Filing Description: Defendants' Brief
Status as of 1/9/2025 5:01 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/9/2025 4:23:43 PM | SENT |

# SUPPLEMENTAL APPENDIX

# 14

E-filed in the Office of the Clerk
for the Business Court of Texas
1/27/2025 4:48 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS and** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC** | § | |
| | § | |
| **v.** | § | |
| | § | **11A – STATE OF TEXAS** |
| **AXIS MISTREAM HOLDINGS, LLC,** | § | |
| **ALLEN LAWRENCE BERRY,** | § | |
| **MARVIN GLENN BERRY, and** | § | |
| **BONNIE BERRY, as successor in interest to** | § | |
| **DENNIS WAYNE BERRY** | § | **HONORABLE SOFIA ADROGUE** |

**MOTION TO RECONSIDER COURT'S RULING ON PLEA IN ABATEMENT**

**MOTION TO STAY PENDING MANDAMUS**

NOW COMES Martin Glynn Berry ("Marty), Bonnie Berry ("Bonnie), and Axis Midstream Holdings LLC ("Axis"), together "Movants", and make and file this Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion") and, in the alternative, Motion to Stay Pending Mandamus, and in support of same would show:

**I.**

**PROCEDURAL HISTORY**

On October 31, 2024, Albert Theodore ("Ted") Powers and Allied Ports LLC ("Allied Ports") filed their Original Petition and Application for a Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Original Petition"). On November 8, 2024, Marty and Bonnie filed a Motion to Transfer Venue ("Motion to Transfer") and Plea in Abatement/Motion to

1

Abatement ("Motion to Abate").[1] On January 17, 2025, the Court signed a court order ("Order") denying the Motions. Marty, Bonnie, and Axis now file this Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion").

## II.
## RECENT EVENTS

Recent events reveal that this Plaintiffs' lawsuit (the "Harris County Lawsuit") and the "Nueces County Lawsuit" (*Lawrence Berry, et al v. Berry GP, et al,* pending in the 94th Judicial District Court, Nueces County, Texas (filed a year before the Harris County Lawsuit)) are unequivocally intertwined/interrelated. Of course, an abatement only puts the Harris County Lawsuit on hold (Plaintiffs' Harris County lawsuit will remain in Harris County abated, only until such time as the Nueces County Lawsuit exhausts its jurisdiction[2]), so that Plaintiffs may adjudicate its contract claims (such contract having the venue provision in favor of Harris County) at the appropriate time. Please consider the following.

*Recent Events Absolutely Reveal the Two (2) Cases are Intertwined/Interrelated –*

We now know with certainty that the Harris County Lawsuit and Nueces County Lawsuit are inherently intertwined/interrelated. Berry GP's filing of an application requesting injunctive

---

[1] The Motion to Transfer and Motion to Abate may be collectively referred to as the "Motions." By this Motion, Axis joins in the Motions (and fully incorporates the Motions by this reference) and joins in this request for the Court to reconsider the Order (that is, joins in this Motion).

[2] "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced everything in the case, and ever question arising which could be determined in it until it reached its termination, and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive and could not be trenched upon by any other tribunal." *Cleveland v. Ward,* 285 S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 Wall. (U.S.), 250, 253.
NOTE: Of course, Berry GP is free to file any and all meritorious pleadings, including an application seeking injunctive relief. Historically, litigants have responded to competing lawsuits by filing pleas to the jurisdiction, pleas in abatements, applications for injunctive relief (including anti-suit injunctions to enjoin litigants), and more.

relief in Nueces County ("Berry GP's Nueces Application")[3] elucidates how the two (2) lawsuits involve the same core dispute. Lawrence Berry's ("Lawrence") Response in Opposition to Application for Temporary Restraining Order and Temporary Injunction ("Lawrence's Nueces Response")[4] crystalized that both cases are inherently intertwined/interrelated.

- In Lawrence's Nueces Response, Lawrence argues that "Movants Berry GP and RBT [Redfish Bay Terminals Inc.] now seek to have this Court [in the Nueces County Lawsuit] interfere with the Business Court's jurisdiction . . . [by filing of Berry GP's Nueces Application]."[5] This is an overt confession that the two (2) cases seek judicial relief relating to the same dispute (i.e., a judicial determination of ownership and control of Axis Midstream Holdings LLC ("Axis")).

- In Lawrence's Nueces Response, Lawrence argues that Berry GP's Nueces Application is "related to the ownership of Axis that is the *very centerpiece* of the Injunction Hearing proceeding in Judge Adrogue's Court next week."[6] (emphasis added). Movants and Lawrence clearly agree that the Harris County Lawsuit and Nueces County Lawsuit are seeking judicial relief relating to the same dispute (i.e., ownership and control of Axis).[7] No party has filed any plea to the jurisdiction (or other similar plea or motion) asserting that Nueces County's Judge Robert Galvan lacks jurisdiction.

- At time of hearing on Berry GP's Nueces Application (January 24, 2025), Lawrence – via legal counsel – argued:

  "Nobody contends that directly or indirectly, Marty, Bonnie

---

[3] See Exhibit 1: (Berry GP's Verified Application for Temporary Restraining Order and Temporary Injunction, sometimes referred to as "Berry GP's Nueces Application").

[4] See Exhibit 2 (Lawrence's Nueces Response).

[5] See Exhibit 2 (Lawrence's Nueces Response), at p. 2.

[6] See Exhibit 1 (Lawrence's Nueces Response), at p. 2.

[7] See Exhibit 3 (proposed court order granting TI in Harris County Lawsuit); compare Exhibit 4 (proposed court order granting TRO in Nueces County Lawsuit).

and Lawrence all have ownership in this project. What's at issue in that [Harris County Lawsuit] case is that Mr. Powers says that he did and he has documents to that effect and is asking for the [Harris County] Court there to take action as to – as to that Axis ownership. That's what [is] central to that [Harris County] case."[8]

Agreed. Movants and Lawrence agree that the "central" issue in the Harris County Lawsuit is "Axis ownership" (same claim being made by Berry GP in the Nueces County Lawsuit). These parties also apparently agree that neither Marty, Bonnie, nor Lawrence "have ownership [of Axis] . . . ." In fact, Berry GP is the owner of Axis, and to the extent there is disagreement about ownership of Axis, the threshold documents being scrutinized involve Berry GP, Redfish Bay Terminals Inc., and Lawrence Berry.[9] Restated: The "central" issue in the two (2) cases is "ownership" of Axis, and the only lawsuit on file with party claiming ownership of Axis is the Nueces County Lawsuit (i.e., Berry GP). None of the parties in the Harris County Lawsuit claim ownership of Axis.[10]

- At time of hearing on Movants' Plea in Abatement (in the Harris County Lawsuit, December 6, 2024), Ted – via counsel – argued:

  "And you can look at the relief that is sought in the [Movant's Nueces County] petition and in the [Movants'] counterclaim and the court down there [in Nueces] can

---

[8] See Exhibit 8: January 24, 2025 Nueces County Hearing Transcript, at p. 43
[9] See Exhibit 5 (document Lawrence/Ted Powers claims transferred Axis from Berry GP to Redfish Bay Terminals Inc.) and Exhibit 6 (document Lawrence/Ted Powers claims transferred Axis from Redfish Bay Terminals Inc. to Lone Star Ports Holdings LLC) – all parties agreeing that neither document signed with any Board of Directors' majority approval (as required by each corporation's bylaws). NOTE: Apparently, Ted Powers and Allied Ports LLC seek an adjudication of ownership/control without even joining the real parties in interest.
[10] The defect in parties in the Harris County Lawsuit will be addressed in a separate filing.

4

give all that relief and it won't have one – it won't have
any bearing at all on this case.[11]  And so I think that –
I think that there is no dominant jurisdiction."[12]

Based upon the exact same "petition" to which Mr. Dawson referred, Berry GP moved for injunctive relief.  In response to Berry GP's request for injunctive relief, Mr. Reasoner – for Lawrence – argued Berry GP's request for injunctive relief in Nueces County seeks relief that is the "very centerpiece"[13] of the Harris County Lawsuit (i.e., ownership and control of Axis);[14] and that "Movants Berry GP and [Redfish Bay Terminal] RBT now seek to have this Court [in the Nueces County Lawsuit] interfere with the Business Court's jurisdiction . . . [by Movants' Nueces Application]."[15]  Which is it?  Can Judge Robert Galvan (in the Nueces County, first-filed lawsuit) grant all relief requested by Berry GP (as Mr. Dawson promised), or does the second-filed lawsuit somehow take from Judge Robert Galvan his jurisdiction (power to be a judge of the dispute pending before him)?  This moment begs for relief.  Indeed, the two (2) cases (the Harris County Lawsuit and Nueces County Lawsuit) are inherently interrelated/intertwined.

- Stated differently:  On December 6, 2024, Ted's attorney stated to this Business Court, as follows:

    . . . I will draft our proposed injunction in a way that it will not
    interfere at all with whatever the injunction that exists down
    in Nueces County.  . . . [W]e can certainly craft an injunction
    that does not in any way impinge or infringe upon what the

---

[11] NOTE:  The Nueces County Lawsuit expressly prays that certain alleged transfers of Axis Midstream Holdings LLC be declared "void" – thereby confirming that Berry GP owns Axis, not Lone Star Ports Enterprises LLC (as claimed by Ted Powers).

[12] See Exhibit 7 (transcript of December 6, 2024 hearing), at p. 55.

[13] See Lawrence's Nueces Response, at p. 2.

[14] Berry GP is claiming ownership and control of Axis in the Nueces County Lawsuit, and Plaintiffs are claiming ownership and control of Axis in the Harris County lawsuit.

[15] Lawrence's Nueces Response.

Judge Galvan, I think is his name, down in Corpus Christi, what he's doing. I just want to let the Court know that."

The reality is the two (2) cases are – at this very moment – screaming for that relief which is Texas law.

*Movants' Have Followed Proper Protocol, and First-Filed Acquires Dominant Jurisdiction –*

Allen Lawrence Berry ("Lawrence") seems intent upon attacking Movants' counsel to persuade resolution of the dominant jurisdiction issue.[16] Towards this end, Lawrence's counsel argued to Nueces County's Judge Galvan "[t]hat Movants fail to disclose either the existence of the Business Court Lawsuit to this Court . . . ." – but this is FALSE. Movants' Nueces Application states: "As of October 31, 2024, Ted Powers and Lawrence (as friendly defendant) filed a new lawsuit in Harris County, Texas, to take control of Axis Midstream Holdings LLC."[17] Movants' Nueces Application did not fail to disclose the existence of the Business Court Lawsuit, but rather expressly disclosed the existence of the Business Court Lawsuit (the Harris County Lawsuit).[18] Enough said: let us not cast aspersions, but rather embrace the present issue.

---

[16] In a recent Nueces County Lawsuit document, Lawrence characterizes Movants' counsel's Verified Application for Temporary Restraining Order and for Temporary Injunction ("Nueces Application") ***filed on behalf of Berry GP, Inc.*** ("Berry GP") as "an improper attempt to circumvent . . . Order issued by Judge Adrogue . . . ." (Lawrence's Response in Nueces, at p. 9) and "procedural impropriety." (Lawrence's Response in Nueces, at p. 11). To the contrary, Berry GP is owner of Axis, and thus has an absolute right to protect its (Berry GP's) multi-million dollar investment by filing whatever pleadings and documents are indicated in the only pending legal action wherein Berry GP (owner of Axis) is a party to the legal proceeding.

[17] See Exhibit 1: Movant's Nueces Application, at p. 10, footnote 27.

[18] See Exhibit 1: Movants' Nueces Application, at p. 10, footnote 27. On January 24, 2025, Lawrence's attorney tried to float the lie again – and argued to Judge Robert Galvan: "It was remarkable, in their [Movants'] TRO and motion for temporary injunction, there was simply no mention of the case filed by Ted Powers and an entity he owns called Allied Ports . . . ." Transcript, at p. 36 (again, this statement by Lawrence's attorney proven false by review of Exhibit 1: Movants' Nueces Application, p. 10 footnote 27); and Lawrence's attorney again argued to Judge Galvan: " . . . when you file something like this and don't disclose that this other case exists . . . " See Transcript at p. 40; and – again – the statement is false.

**Step 1:** "Where, as here, two courts have concurrent jurisdiction to determine inherently intertwined issues, filing a dilatory plea in abatement is the proper method for drawing a court's attention to another court's possible dominant jurisdiction."[19] This has occurred, and it is the proper method for seeking relief in the second-filed action (Harris County Lawsuit).

**Step 2:** Plaintiffs and Lawrence argue against application of black letter law, and so let it be said that the scope of a dominant jurisdiction inquiry includes not only the breath of the pleading on file – but also amended petitions and added parties.

> "It is not required that the precise issues and all of
> the parties be included in the first filed suit before
> the second suit is filed, provided that the claims in
> the first suit can be amended to bring in all of the
> necessary and proper parties and claims."[20]

Berry GP is owner of Axis, and a party to the Nueces County Lawsuit since inception (and not a party to the Harris County Lawsuit). Redfish Bay Terminals Inc. (a corporation that may, in the alternative, claim ownership) and Lone Star Ports Enterprises LLC (a limited liability company that Ted claims owns Axis) may both be added as parties to the Nueces County Lawsuit (and are not parties in the Harris County lawsuit). All of these parties and claims are within the scope of the Nueces County Lawsuit (per *In re Coronado Energy EP Company*).

Step 3: Are the two (2) lawsuits inherently intertwined/interrelated? Yes, and let us not argue this any further. Both lawsuits have requests pending for injunctive relief that is nearly

---

[19] *In re Puig*, 351 S.W.3d 201 (Texas 2011); citing *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Texas 1991); *Wyatt v. Shaw Plumbing Company*, 760 S.W.2d 245, 247-248 (explaining that it is proper to file a plea in abatement when two inherently interrelated cases are filed in different counties).

[20] *In re Coronado Energy EP Company,* 341 S.W.3d 479, 481-482 (Tex.Civ.App. – San Antonio, 2011); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988).

identical. All seemingly now agree the "very centerpiece" of Plaintiffs' Harris County Lawsuit has been pleaded, briefed, argued, and submitted for Judge Galvan's consideration.

Step 4: What are the public policy considerations?

- "Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues."[21] Comity asks that the judge in the second-filed action honor the judge in the first-filed action. Convenience asks that the pending case with at least one of the parties claiming ownership (Berry GP) be preferred. And the "orderly procedure" (most importantly) asks of us that two (2) courts not engage of battle for jurisdiction (power over) the dispute – but rather the second-filed action be abated.

- "The first-filed rule flows from "principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues."[22] "The default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed."[23]

- Finally, and again, "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced everything in the case, and ever question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive, and could not be trenched upon by any other tribunal."[24]

---

[21] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).
[22] *In re J.B. Hunt Transportation Inc*., 492 S.W.3d 287 (Texas 2016), citing *Wyatt* at 248.
[23] *In re J.B. Hunt Transportation Inc*., 492 S.W.3d 287 (Texas 2016).
[24] *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 Wall. (U.S.), 250, 253.

Extensive briefing has already been filed by all parties. The magma-shift is the real world shift in positions forced by Berry GP's filing of Berry GP's Nueces Application, Lawrence's Nueces Response, and transcript of hearings.

### III.

### <u>REQUEST FOR STAY OF HARRIS COUNTY PROCEEDINGS</u>

With absolute respect for this Court, Movants request reconsideration of the Order denying Movants' Motions (and a stay pending this court's further consideration of recent events). If Your Honor is not so inclined, then Movants' do intend to file a Petition for Writ of Mandamus and request a stay pending resolution of such mandamus. Candidly, a final resolution of which court (Nueces v. Harris) has acquired jurisdiction of the competing requests for injunctive relief promotes an orderly judicial process. In the meantime, please allow these contents to confirm that in the absence of a TRO (the court may recall it expired on its own terms on December 6, 2024), no party to the Harris County Lawsuit has engaged in any action relating to Axis management/control – thus there is no need (and certainly no hurry) for the court's consideration of injunctive relief against Movants.

WHEREFORE, PREMISES CONSIDERED, Movants pray for all relief requested herein; and specifically pray that this Court grant its request for reconsideration of the Order denying Movants' Motions, and pray for a stay of proceeding to allow reconsideration and/or mandamus, and pray that Movants' Motions (upon reconsideration) be granted, and for such other and further relief – both at law and in equity – to which Movants may show themselves justly entitled.

9

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**

403 N. Tancahua Street

Corpus Christi, Texas 78401

T: 361-888-6002

F: 361-888-6651

E: doug@dallisonlaw.com

BY: */s/ Douglas A. Allison*

**DOUGLAS A. ALLISON**

State Bar No. 01083500

**ROBERTS MARKLAND LLP**

2555 N MacGregor Way

Houston, Texas 77004

E: vg@robertsmarkland.com

BY: */s/ Vanessa D. Gilmore*

**VANESSA D. GILMORE**

State Bar No. 07960010

ATTORNEYS FOR DEFENDANTS
MARTY BERRY, BONNIE BERRY, &
AXIS MIDSTREAM HOLDINGS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on January 27, 2025.

*/s/ Douglas A. Allison*

DOUGLAS A. ALLISON

10

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96655627
Filing Code Description: Motions - All Other
Filing Description: Movants' Motion to Reconsider Court's Ruling on Plea in Abatement Mtn to Stay Pending Mandamus
Status as of 1/27/2025 4:57 PM CST

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/27/2025 4:48:15 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/27/2025 4:48:15 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/27/2025 4:48:15 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96655627
Filing Code Description: Motions - All Other
Filing Description: Movants' Motion to Reconsider Court's Ruling on Plea in Abatement Mtn to Stay Pending Mandamus
Status as of 1/27/2025 4:57 PM CST

Associated Case Party: MarvinGlennBerry

| | | | | |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/27/2025 4:48:15 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/27/2025 4:48:15 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/27/2025 4:48:15 PM | SENT |

# SUPPLEMENTAL APPENDIX 15



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § § | Cause No. 24-BC11A-0025 |
| Axis Midstream Holdings, LLC; Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § | |
| *Defendants.* | § § | |

---

**ORDER**

---

Before the Court is Marvin Glenn Berry, Bonnie Berry, and Axis Midstream Holdings LLC's Motion to Reconsider Court's Ruling on Plea in Abatement ("Motion to Reconsider"). At this juncture, having considered the Motion to Reconsider; Alistair B. Dawson's January 28, 2025 Correspondence; Barrett H. Reasoner's January 28, 2025 Correspondence; the evidence presented; the arguments of counsel; and the current status of the law, the Court **ORDERS** that the Motion to Reconsider is **DENIED**.

SO ORDERED.

SIGNED: January 28, 2025

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96704884
Filing Code Description: No Fee Documents
Filing Description:
Status as of 1/28/2025 4:02 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/28/2025 3:55:38 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/28/2025 3:55:38 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/28/2025 3:55:38 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/28/2025 3:55:38 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/28/2025 3:55:38 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96704884
Filing Code Description: No Fee Documents
Filing Description:
Status as of 1/28/2025 4:02 PM CST

Case Contacts

| Vanessa Gilmore | | vg@robertsmarkland.com | 1/28/2025 3:55:38 PM | SENT |
|---|---|---|---|---|
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:55:38 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/28/2025 3:55:38 PM | SENT |

# SUPPLEMENTAL APPENDIX 16

Filed in the Office of the Clerk
for the Business Court of Texas
1/28/2025 3:53 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025



## THE BUSINESS COURT OF TEXAS
### ELEVENTH DIVISION

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § § | Cause No. 24-BC11A-0025 |
| Axis Midstream Holdings, LLC; Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § § | |
| *Defendants.* | § § | |

## ORDER

Before the Court is Marvin Glenn Berry, Bonnie Berry, and Axis Midstream Holdings LLC's Motion to Stay Pending Mandamus ("Motion to Stay"). At this juncture, having considered the Motion to Stay; Alistair B. Dawson's January 28, 2025 Correspondence; Barrett H. Reasoner's January 28, 2025 Correspondence; the evidence presented; the arguments of counsel; and the current status of the law, the Court is taking the Motion to Stay under advisement.

SO ORDERED.

SIGNED: January 28, 2025

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96704614
Filing Code Description: No Fee Documents
Filing Description:
Status as of 1/28/2025 3:58 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/28/2025 3:53:02 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/28/2025 3:53:02 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/28/2025 3:53:02 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/28/2025 3:53:02 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/28/2025 3:53:02 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96704614
Filing Code Description: No Fee Documents
Filing Description:
Status as of 1/28/2025 3:58 PM CST

Case Contacts

| Vanessa Gilmore | | vg@robertsmarkland.com | 1/28/2025 3:53:02 PM | SENT |
|---|---|---|---|---|
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:53:02 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/28/2025 3:53:02 PM | SENT |

# SUPPLEMENTAL APPENDIX 17

## <u>Verification of Appendix</u>

STATE OF TEXAS                    §
                                  §
COUNTY OF HARRIS          §

I, Bruce Baldree, am of sound mind and capable of making this verification.  The facts in this verification are within my personal knowledge and are true and correct.

I am an attorney duly licensed to practice law in the State of Texas and am a member of the law firm of Gibbs & Bruns, LLP, admitted to practice before this Court, and Counsel for Real Party in Interest, Lawrence Berry.  All of the documents included in Lawrence Berry's Supplemental Appendix are true and correct copies.

Executed in Harris County, State of Texas, on the 13th day of February, 2025.

_____
Bruce Baldree

_____
Notary Public, State of Texas



ROSAMARIA G. BRENNAN
Notary Public, State of Texas
Comm. Expires 03-02-2025
Notary ID 124221528

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosa Brennan on behalf of Barrett Reasoner
Bar No. 16641980
rbrennan@gibbsbruns.com
Envelope ID: 97343137
Filing Code Description: Response
Filing Description: Real Party In Interest A. Lawrence Berrys Response To Emergency Motion For Temporary Relief
Status as of 2/13/2025 11:59 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas AAllison | | doug@dallisonlaw.com | 2/13/2025 11:51:40 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Michael Absmeier | 24050195 | mabsmeier@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Barrett Reasoner | 16641980 | breasoner@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 2/13/2025 11:51:40 AM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 2/13/2025 11:51:40 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 2/13/2025 11:51:40 AM | SENT |
| Michelle Bultman | | MBultman@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 2/13/2025 11:51:40 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 2/13/2025 11:51:40 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 2/13/2025 11:51:40 AM | SENT |
| Michael JakeMcClellan | | jmcclellan@beckredden.com | 2/13/2025 11:51:40 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 2/13/2025 11:51:40 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 2/13/2025 11:51:40 AM | SENT |
| Vanessa AGilmore | | vg@robertsmarkland.com | 2/13/2025 11:51:40 AM | SENT |
| Hon. Sofia Adrogue | | BCDivision11A@txcourts.gov | 2/13/2025 11:51:40 AM | SENT |